# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| MONDIS TECHNOLOGY LTD., <br><br> Plaintiff, <br><br> v. <br><br> LG ELECTRONICS, INC. and <br> LG ELECTRONICS U.S.A., INC., <br><br> Defendants. | Civil Action No. 2:14-cv-00702-JRG <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

Defendants LG Electronics Inc. and LG Electronics U.S.A., Inc. (collectively, "LG") hereby move pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for District of New Jersey. LG's motion is supported by the facts and argument set forth below, and by accompanying declarations.

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | BACKGROUND AND STATEMENT OF FACTS | 1 |
| | A. The Parties and the Current Case | 1 |
| | B. The Prior Litigation | 2 |
| | C. The Patents-in-Suit | 2 |
| | D. The Technology at Issue | 3 |
| | E. The Reexaminations of the Patents-in-Suit | 3 |
| II. | RELEVANT CASE LAW AND AUTHORITY | 4 |
| III. | VENUE IS PROPER IN THE DISTRICT OF NEW JERSEY | 6 |
| IV. | THE PRIVATE INTEREST FACTORS CLEARLY FAVOR TRANSFER TO THE DISTRICT OF NEW JERSEY | 7 |
| | A. The Cost Of Attendance For Willing Witnesses Favors Transfer | 7 |
| | B. The Relative Ease of Access to Sources of Proof in the District of New Jersey Weighs Strongly in Favor of Transfer | 9 |
| | C. There Are Non-Party Witnesses Subject to Compulsory Process In New Jersey | 11 |
| | D. There Are No Practical Problems That Might Weigh Against Transfer | 12 |
| V. | THE PUBLIC INTEREST FACTORS FAVOR TRANSFER | 13 |
| | A. New Jersey Has a Significant Local Interest In Adjudicating This Matter, Whereas This District Does Not | 13 |
| | B. The New Jersey Courts, Like This Court, Facilitate Prompt Disposition Of Patent Cases | 14 |
| | C. There Are No Conflicts of Law and No Issues Of Governing Law With Which This Court Has Unique Familiarity | 15 |
| VI. | CONCLUSION | 15 |

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761 (E.D. Tex. 2009)..............................................8

*In re Acer Am. Corp.*, 626 F.3d 1252 (Fed. Cir. 2010) ...............................................................10

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009).........................................................*passim*

*In re Hoffmann-La Roche, Inc.*, 587 F.3d 1333 (Fed. Cir. 2009) ..........................................11, 13

*In re Horseshoe Entm't*, 337 F.3d 429 (5th Cir. 2003) ................................................................12

*In re Nintendo Co.*, 589 F.3d 1194 (Fed. Cir. 2009)...................................................... 5, 9, 10, 14

*In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008).............................................. 5, 6, 14

*In re Verizon Business Network Services*, 635 F.3d 559 (Fed. Cir. 2011).............................12, 13

*In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004) ....................................................... 5, 7, 13

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008)........................................... 5, 11, 14

*In re Volkswagen of Am., Inc.*, 566 F.3d 1349 (Fed. Cir. 2009)...................................................12

*In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010) ......................................................6

*Innovative Global Systems LLC v. OnStar LLC*, No. 6:10- cv-574,
   2012 U.S. Dist. Lexis 114504 (E.D. Tex. Feb. 14, 2012) ......................................................14

*Promote Innovation LLC v. Schering Corp.*, No. 2:10-cv-248,
   2011 WL 665817 (E.D. Tex. Feb. 14, 2011)............................................................................7

*QR Spex, Inc. v. Motorola*, 507 F. Supp. 2d 650 (E.D. Tex. 2007)..............................................15

*Refined Recommendation Corp. v. Netflix, Inc.*, No. 07-cv-04981 (DMC),
   2008 WL 474106 (D.N.J. Feb. 15, 2008)...............................................................................10

**STATUTES**

28 U.S.C. § 1391(b)(1)...................................................................................................................7

28 U.S.C. § 1391(c)(2)...................................................................................................................7

28 U.S.C. § 1391(c)(3)...................................................................................................................7

28 U.S.C. § 1404(a) ....................................................................................................................4, 5

This case should be transferred to New Jersey because Plaintiff Mondis Technology Ltd. ("Mondis") and Defendants LG Electronics ("LGE KR") and LG Electronics U.S.A., Inc. ("LGE USA") (collectively, "LG") have no significant connection to the Eastern District of Texas. Mondis is incorporated in England and has no offices in this district. Neither LGE KR nor LGE USA has its principal corporate office in the Eastern District of Texas.

In contrast, the District of New Jersey has substantial connections to LGE USA's facilities and expected sources of proof. LGE USA has its headquarters in the District of New Jersey, making that forum far more convenient for discovery and trial of this matter. In addition, many of LG's prospective witnesses are located in or near the District of New Jersey, and the other witnesses hail from locations for which the New Jersey forum is no less convenient than Marshall (in fact, it is more convenient). Taken together, the convenience of the prospective witnesses overwhelmingly favors transfer to the District of New Jersey. Accordingly, LG respectfully request a change of venue to that district.

## I.   BACKGROUND AND STATEMENT OF FACTS

### A.   The Parties and the Current Case

Mondis is an English company with its principal place of business in London, England. (Dkt. No. 1 ("Cmplt."), ¶ 3.) According to Mondis's own allegations, LGE USA is a Delaware corporation with its principal place of business in Englewood Cliffs, New Jersey. (*Id.* at ¶ 4.) Defendant LGE KR is a foreign company based in Seoul, Korea. (*Id.* at ¶ 3.)

Although Mondis filed its complaint against LG on June 21, 2014, it did not serve its complaint on LGE USA until October 16, 2014, nearly four months after filing its complaint and did not send a waiver of service to LGE KR until October 23, 2014. (Dkt. Nos. 7, 11.) On December 29, 2014, Mondis moved the Court to extend the deadline for its infringement contentions from January 6, 2015 to February 6, 2015. (Dkt. No. 14.) On January 6, 2015, the

1

Court partially granted Mondis's motion and extended the deadline for Mondis's infringement contentions to January 30, 2015. (Dkt. No. 15.) Accordingly, this case is still in its early stages and the Court has not invested a significant amount of time addressing issues raised in the case.

### B.  The Prior Litigation

Over six years before initiating the current litigation, Mondis filed a complaint against LGE KR, LGE USA, and other parties alleging infringement of the Patents-in-Suit as well as other patents. (Case No. 2:07-CV-565 ("the Prior Litigation"); *see* Cmplt., ¶¶ 15-17.) In that case, Mondis accused LG of infringing the Patents-in-Suit based on the sale of certain computer monitors. (Cmplt. at ¶ 15.) On September 17, 2009, prior to the close of pleadings in that case and prior to any claim construction discovery in that case, Mondis and LG reached a settlement in the Prior Litigation, (*Id.* at ¶ 18; *see* Case No. 2:07-CV-565, Dkt. No. 79), although the Prior Litigation continued with respect to other named defendants. The Prior Litigation was assigned to Judge Ward, who, with assistance from Magistrate Judge Everingham, presided over the Prior Litigation through all aspects of claim construction and through trial, as well as post-trial proceedings.[1] (*See, e.g.*, Case No. 2:07-CV-565, Dkt. Nos. 269, 585, 617, 658, 660, 662, 666, 697.) Following a jury trial, Judge Ward entered a final judgment with respect to the validity and invalidity of certain claims of the Patents-in-Suit. (Case No. 2:07-CV-565, Dkt. No. 666.).

### C.  The Patents-in-Suit

In its complaint, Mondis accuses LG of infringing five patents:  U.S. Patent Nos. 6,513,088 ("the '088 Patent"); 6,549,970 ("the '970 Patent"); 7,089,342 ("the '342 Patent"); 7,475,180 ("the '180 Patent"); and 6,639,588 ("the '588 Patent") (collectively, "the Patents-in-Suit"). (Cmplt., ¶¶ 10-14.) Four of these patents—the '088 Patent, '970 Patent, the '342 Patent,

---

[1] The Prior Litigation was eventually assigned to the present Court on December 29, 2011 with respect to any remaining issues. (Case No. 07-cv-565, Dkt. No. 705.)

2

and the '180 Patent—are related to one another and share the same named inventors: Ikuya Arai and Kouji Kitou, both of Yokohama, Japan. (*Id.* at ¶¶ 10-13.) The fifth patent—the '588 Patent—shares the same two inventors as the other patents, and further lists Yuji Sano of Zushi, Japan. (*Id.* at ¶ 14) All of the Patents-in-Suit were originally assigned to Hitachi, Ltd. ("Hitachi") (Dkt. Nos. 1-2, 1-3, 1-4, 1-5, and 1-6.) The U.S. subsidiary of Hitachi, Hitachi America, Ltd. ("Hitachi America"), is headquartered in Tarrytown, New York. (Ex. 1.) The Patents-in-Suit were prosecuted by Melvin Kraus (*see* Exs. 2-5) and Shrinath Malur (*see* Ex. 6), both of whom currently reside in northern Virginia. (Exs. 7, 8.)

### D. The Technology at Issue

Mondis accuses LG of infringing the Patents-in-Suit based on the sale of allegedly infringing televisions. (Cmplt. at ¶¶ 38, 46, 54, 61, 69.) Mondis premises its infringement claims in large part on the alleged inclusion of functionality covered by standards promulgated by the Video Electronics Standards Association ("VESA"). (*Id.* at ¶¶ 22, 26-28.) In particular, Mondis alleges that LG's televisions include certain standards related to "Plug & Play" technology including the VESA Enhanced Extended Display Identification Data Standard ("E-EDID") and VESA Enhanced Display Data Channel Standard ("E-DDC").[2] (*Id.* at ¶¶ 23-25.)

### E. The Reexaminations of the Patents-in-Suit

During the course of the Prior Litigation, one of the named defendants instituted *inter partes* reexamination ("IPR") proceedings against each of the Patents-in-Suit. (Reexamination Control Nos. 95/000,459; 95/000,457; 95/000,458; 95/000,480; 95/000,455 (collectively, "the IPRs").) As a result of the IPRs, the U.S. Patent and Trademark Office ("PTO"): (i) cancelled nearly all of the claims of the '088 Patent (Ex. 9); (ii) cancelled all but one of the nine claims of

---

[2] With respect to certain Patents-in-Suit, Mondis also contends infringement based on so-called "Smart TV" functionality. (*See, e.g.*, Cmplt. ¶¶ 38, 46, and 54.)

3

the '970 Patent challenged in the IPR (Ex. 10); (iii) rejected with finality nearly all of the claims of the '180 Patent and all but one of the claims of the '342 Patent (Exs. 11, 12); and (iv) recognized Mondis's disclaimer of all but one of the claims of the '588 Patent. (Ex. 13.) The PTO further rejected additional claims that were nevertheless withdrawn from the IPRs on the basis that they were addressed by the jury in the Prior Litigation (the "Withdrawn Claims").[3] (*See* Exs. 13, 14, 15.)

On May 13, 2014, two petitions for *ex parte* reexaminations ("EPR") were filed at the PTO against, *inter alia*, the Withdrawn Claims of the '342 Patent and the '180 Patent, (Reexam Control Nos. 90/013,238 and 90/013,237), based on the same grounds that the PTO had used to reject these claims before they were withdrawn from the IPRs. The PTO granted these petitions (Exs. 16, 17), and has since issued a non-final rejection of the sole remaining claim of the '342 Patent. (Ex. 18.) In addition, on November 3, 2014, four additional petitions for EPR were filed against the '088 Patent, the '970 Patent, the '180 Patent, and the '588 Patent. (Reexam Control Nos. 90/013,391; 90/013,388; 90/013,390; 90/013,392.) The PTO has since granted these petitions for reexamination as well.[4] (Exs. 19, 20, 21, 22.) As a result of the above EPRs, all remaining claims of the Patents-in-Suit—*i.e.*, those not already invalidated during the IPRs—are currently undergoing reexamination at the PTO.

## II.     RELEVANT CASE LAW AND AUTHORITY

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

---

[3] The "Withdrawn Claims" consist of claim 15 of the '342 Patent, claims 14 and 23 of the '180 Patent, and claim 1 of the '588 Patent.

[4] An additional EPR petition against the '342 Patent was filed on November 3, 2014, (Reexam Control No. 90/013,389), but the PTO denied this petition on the basis that it was duplicative in view of the EPR against the '342 Patent filed on May 13, 2014 (Reexam Control No. 90/013,238).

4

where it might have been brought." A motion to transfer venue should be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d 1194, 1197-98 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*) ("*Volkswagen II*"), *cert. denied*, 129 S. Ct. 1336 (2009).

A threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If the transferee district is a proper venue, then the court must weigh the relative conveniences of the current district against the transferee district. *Id.* In making the convenience determination, the Fifth Circuit considers several "private" and "public" interest factors, none of which are given dispositive weight. *Id.* The "private" interest factors include: "(1) the cost of attendance for willing witnesses; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process to secure the attendance of witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Nintendo*, 589 F.3d at 1198; *In re Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. The "public" interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *In re Nintendo*, 589 F.3d at 1198; *In re Genentech*, 566 F.3d at 1342; *In re TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

In weighing the above factors, a court should grant transfer when there are no relevant

witnesses or parties in the transferor forum, and where the defendants and other witnesses and material information reside in the transferee district. *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (directing court to transfer a patent case where the plaintiff had "no presence in Texas that should be given weight in the transfer analysis," and there were "substantial conveniences" in trying the case in the transferee district, given, among other factors, the presence of several witnesses in that district and the fact that the defendants had a principal place of business there); *see also In re TS Tech*, 551 F.3d at 1321 (Fed. Cir. 2008) (applying Fifth Circuit law and transferring case where none of the defendants had offices in the district, no identified witnesses resided in the district, no evidence was located in the district and a majority of witnesses, evidence and events had ties to the transferee forum or its neighboring state); *In re Genentech*, 566 F.3d at 1348 (applying Fifth Circuit law and ordering transfer where there were no witnesses or parties in the district, but a substantial number of witnesses with material information resided in the transferee district and several of the parties were headquartered in or near that forum). Consistent with the above case law, the present case warrants transfer because this action has no meaningful connection to this district and it would clearly be more convenient to litigate this case in a court closer to many of the parties, witnesses and sources of proof—the District of New Jersey.

### III.   VENUE IS PROPER IN THE DISTRICT OF NEW JERSEY

There is no question that this case could have been brought in the District of New Jersey. Based on Mondis's own allegations, both LGE KR and LGE USA are subject to personal jurisdiction in that venue. In particular, as recognized by Mondis, LGE USA has its headquarters in New Jersey, (Cmplt. at ¶ 4), and LGE KR is a foreign corporation that Mondis alleges sells products throughout the United States sells and distributes goods throughout the United States (which would include New Jersey) (*Id.* at ¶ 7.) On these same facts, venue is proper in the

District of New Jersey.[5] Because LGE USA is headquartered in New Jersey, it "resides" there for purposes of determining venue pursuant to 28 U.S.C. § 1391(c)(2). As a foreign corporation, LGE KR's location does not affect the fact that New Jersey is a proper venue for this case. *See* 28 U.S.C. § 1391(c)(3) ("a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants"). Thus, venue is proper in the District of New Jersey pursuant to at least 28 U.S.C. § 1391(b)(1).

### IV. THE PRIVATE INTEREST FACTORS CLEARLY FAVOR TRANSFER TO THE DISTRICT OF NEW JERSEY

The most significant private interest factors—the relative ease of access to sources of proof, the convenience of the parties, and the availability of compulsory process—all weigh in favor of transfer to New Jersey, and far outweigh any other tenuous arguments that the case should remain in this venue.

#### A. The Cost Of Attendance For Willing Witnesses Favors Transfer

"The convenience of the witnesses is probably the single most important factor in transfer analysis." *Promote Innovation LLC v. Schering Corp.*, No. 2:10-cv-248, 2011 WL 665817, at *3 (E.D. Tex. Feb. 14, 2011). As the Fifth Circuit has explained:

> [T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

*Volkswagen I*, 371 F.3d at 205. This factor also favors transfer when a "substantial number of material witnesses reside within the transferee venue," and no witnesses reside in the transferor

---

[5] In granting a motion to transfer in another case, this Court previously held that a patent litigation against both LGE KR and LGE USA alleging infringement of televisions could have properly been brought in the District of New Jersey. *Industrial Technology Research Institute v. LG Corp. et al.*, Case No. 6:10-cv-628; 2011 WL 10622246, at *4-6 (E.D. Tex. Nov. 29, 2011).

7

venue, regardless of whether the transferor venue would be more convenient for all of the witnesses. *In re Genentech,* 566 F.3d at 1344–45. The court must consider the convenience of both the party and non-party witnesses. *See Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765-66 (E.D. Tex. 2009). In this case, a transfer to the District of New Jersey would substantially reduce the cost and burden of attendance at trial for both party and non-party witnesses.

With regard to party witnesses, any party witnesses for Mondis located in London would undoubtedly have lower costs and shorter travel to New Jersey, as opposed to having to travel an additional 1,500 miles to the present forum. (Maas Decl. ¶¶ 29, 30; Exs. 23-27.) With respect to Defendant LGE USA, there are at least six specific witnesses—Timothy Alessi, Paul Spitale, David Vanderwaal, Stephen Coppola, Douglas Loretucci, and Matthew Durgin—who are believed to have information relevant to this litigation, and they are all based in New Jersey. (Alessi Decl., ¶ 8.) These witnesses are involved in marketing, market research, sales, and product planning with respect to the accused LG products. The teams lead by the above-identified individuals are located in LGE USA's Englewood Cliffs, New Jersey, offices and comprise over 25 LGE USA employees. (*Id.* at ¶ 9.) It would be far more inconvenient for these witnesses to have to travel to the Eastern District of Texas for trial, as opposed to the District of New Jersey. Moreover, out of the 750 employees for LGE USA, nearly half of them are located in the New Jersey corporate headquarters, including the individuals named above with specific information relevant to the litigation. (*Id.* at ¶ 5.) On the other hand LGE USA has *six* employees who reside within the Eastern District of Texas, and there is no reason to believe that any of these individuals has information or documentation relevant to the current litigation as their employment relates to LGE USA's commercial air conditioning, hospitality, and home appliance businesses. (*Id.* at ¶ 6.)

8

The District of New Jersey would also be more convenient for non-party witnesses. Both of the attorneys primarily responsible for prosecuting the Patents-in-Suit, Melvin Kraus and Shrinath Malur, currently reside in Northern Virginia. (Exs. 7, 8.). As set forward in LG's counterclaims, (Dkt. Nos. 19 and 20, ¶¶ 90-133), Mr. Kraus had extensive familiarity with invalidating prior art, which he did not disclose to the PTO during the prosecution of certain Patents-in-Suit. (*Id.*) Mr. Kraus's testimony, both by deposition and during any hearings on unenforceability, will be important to properly resolving this issue. Similarly, the U.S. subsidiary of Hitachi, the prior owner of the Patents-in-Suit, is located in Tarrytown, New York.[6] (Ex. 1.)

To the best of LG's knowledge, there are no Mondis or third-party witnesses or evidence located in this District. Mondis is a foreign corporation located in London, England. (Cmplt., ¶ 3.) And to the best of LG's knowledge, the named inventors all reside Japan. (*Id.* ¶ 4.) Indeed, LG is not aware of any potential witnesses who reside in the Eastern District of Texas. Because there are significant witnesses and evidence located in or near the District of New Jersey, and because no known witnesses or evidence are located within this District, transfer is warranted. *See In re Nintendo*, 589 F.3d at 1198 ("This court has held and holds again in this instance that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by plaintiff, the court should grant a Motion To Transfer.").

> **B.    The Relative Ease of Access to Sources of Proof in the District of New Jersey Weighs Strongly in Favor of Transfer**

This factor weighs in favor of transfer when the parties are located in the transferee forum and no parties are located in the original forum. *In re Acer Am. Corp.*, 626 F.3d 1252,

---

[6] Hitachi is expected to be particularly relevant to the current litigation because, as a member of VESA, Hitachi was required to disclose the existence of any patents relevant to standards promulgated by VESA. (Dkt. No. 20, ¶¶ 201-203.) Defendants expect to take significant discovery from Hitachi regarding whether it complied with these required disclosures.

9

1255 (Fed. Cir. 2010). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor [of] transfer to that location." *In re Nintendo*, 589 F.3d at 1199; *In re Genentech*, 566 F.3d at 1345; *Refined Recommendation Corp. v. Netflix, Inc.*, No. 07-cv-04981 (DMC), 2008 WL 474106, at *4 (D.N.J. Feb. 15, 2008) ("[A]s a general rule, the preferred forum is that which is the center of gravity of the accused activity."). Courts presume that such documents reside at a party's corporate headquarters. *See In re Acer*, 626 F.3d at 1256.

A significant portion of the relevant documents in this case will be found in the District of New Jersey, where LGE USA maintains its corporate headquarters. (Alessi Decl. ¶¶ 2, 4.) Relevant documents and evidence regarding the operation, structure, function, marketing, and sales, including financials, of the accused products are located there. (*Id.* ¶ 4.)

In addition there is significant third-party evidence that exists near the District of New Jersey. Again, any files and documents in the possession of the attorneys who prosecuted the Patents-in-Suit would be located closer to the District of New Jersey than to the Eastern District of Texas. (Exs. 7, 8.) Similarly, any files in the possession of Hitachi America are more easily accessible in the District of New Jersey. As the original owner, Hitachi may have relevant information and witnesses regarding the development and commercialization of the purported inventions. Additionally, as set forth in LG's counterclaims, LG believes that Hitachi was subject to non-discriminatory licensing obligations for the Patents-in-Suit and Hitachi's conduct and licensing policies will need to be investigated. (*See* Dkt. Nos. 19 and 20, ¶¶ 201-203.)

To the best of LG's knowledge, there are no documents or evidence located in the Eastern District of Texas. LG has no facilities in this District, nor do they have any employees in this District who are believed to be relevant to the litigation. (Alessi Decl. ¶ 6.) Mondis, a foreign

10

company located in London, is also unlikely to have any evidence located in this District. Because the majority of relevant documents and evidence are located in or near the District of New Jersey, sources of proof would be more readily accessible if the case were to be transferred.

### C. There Are Non-Party Witnesses Subject to Compulsory Process In New Jersey

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue. *See Volkswagen II*, 545 F.3d at 316. A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not. *Id.* The Federal Circuit has made it clear that "absolute" subpoena power does not require that all relevant nonparty witnesses reside within the subpoena power of the court. *In re Hoffmann-La Roche, Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009). Rather, "absolute" subpoena power requires merely that the court have the power to subpoena non-party witnesses for both depositions and trials. *Id.* at 1338.

In this case, there are at least two non-party corporate entities over which the District of New Jersey would have the power to compel testimony at trial: Hitachi America (located in Terrytown, New York (Ex. 1)) and IBM (located in Armonk, New York (Ex. 28)), both of which are less than 50 miles from the District Court in Newark, New Jersey. (Maas Decl. ¶¶ 32, 33; Exs. 29, 30.) Both of these companies were members of VESA during the early 1990s and it is believed that testimony from these organizations will be significant in authenticating key prior art references generated by VESA, including a certain VESA Display Definition Protocol (VDDP) Proposal Draft 5.05, the public availability of which will likely be a central issue in this case, just as it was in the Prior Litigation. (*See, e.g.*, Case No. 07-CV-565, Dkt. No. 662.)

In contrast to the District of New Jersey, there are no known non-party witnesses under the direct trial subpoena power of this Court. Thus, this factor weighs in favor of transfer.

11

**D.     There Are No Practical Problems That Might Weigh Against Transfer**

With respect to the final private factor, there are no practical problems that are so significant that they might weigh against transfer. The case is in its early stages, and no discovery has taken place. *Cf. In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (holding that this factor weighs against transfer when the Court is already familiar with the factual issues); *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) (holding that delay associated with transfer is relevant only "in rare and special circumstances" that are "established by clear and convincing evidence"). LG recognizes that this District was the forum for the Prior Litigation; however, claim construction and the trial were presided over by Judge Ward and Magistrate Judge Everingham, (*see, e.g.*, Case No. 2:07-CV-565, Dkt. Nos. 282, 585, 658, 660, 662, 666, 697), both of whom have since retired. Accordingly, there is no expectation of judicial economy by keeping this litigation in this venue.

Although the Prior Litigation was eventually transferred to this Court, there have been significant developments since the close of the Prior Litigation that would undermine any potential efficiencies. As noted above, each of the Patents-in-Suit has been the subject of extensive post-grant proceedings at the PTO, including both IPRs and EPRs. (Exs. 9-22.) The court in either venue would need to undertake new claim construction proceedings taking into account any narrowing statements made during these post-grant proceedings. Further, the court in either venue would need to become familiar with any other developments since the trial in the Prior Litigation concluded nearly four years ago.

In this regard, this case is similar to the one presented in *In re Verizon Business Network Services*, 635 F.3d 559 (Fed. Cir. 2011). In that case, the U.S. District Court for the Eastern District of Texas found that the transferee forum was more convenient for the parties and witnesses, but denied the motion to transfer on the basis that judicial economy favored retaining

the suit in the court that had five years earlier handled a lawsuit involving the same patent and had construed 25 of the patent's terms. *Id.* at 561. The Federal Circuit rejected the reasoning that denial of transfer was warranted based on the trial court's handling of the prior lawsuit. *Id.* at 562. Instead, the Federal Circuit found that "[t]he Eastern District of Texas would have to relearn a considerable amount based on the lapse in time between the two suits and would likely have to familiarize itself with reexamination materials that were not part of the record during the previous suit." *Id.* Just as in *In re Verizon*, any claims of judicial economy in this case are too tenuous to justify denying transfer given that the District of New Jersey is clearly a more convenient forum for the parties.

## V. THE PUBLIC INTEREST FACTORS FAVOR TRANSFER

The local interest that the District of New Jersey has in this case greatly favors transfer. The familiarity of both venues with the law that will govern this case and the absence of any conflict of laws are factors that neither weigh in favor of transfer nor against it. Because each of the public concerns in this case either weighs in favor of transfer or is neutral, the analysis of the public factors as a whole weighs in favor of transfer.

### A. New Jersey Has a Significant Local Interest In Adjudicating This Matter, Whereas This District Does Not

Because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation," a transferor district with no "factual connection" to the events of the case weighs in favor of transfer. *Volkswagen I*, 371 F.3d at 206. If there are significant connections between a venue and the events that gave rise to the suit, this factor weighs in favor of that venue. *In re Hoffman-La Roche*, 587 F.3d at 1338. The District of New Jersey has significant factual connections to this case because LGE USA is headquartered there and manages sales of the accused products from that location. (Alessi Decl. ¶¶ 2, 4, 7-9.)

13

By contrast, this District has no connection to the facts of this case other than the alleged sale of accused products in the district; however, the sale of the accused product in a district is not considered a local interest in any given district where, as here, that same argument "could apply virtually to any judicial district or division in the United States." *Volkswagen II*, 545 F.3d at 318. Moreover, the Federal Circuit has rejected any argument that citizens of the chosen forum have a "substantial interest" in adjudicating a case locally because some allegedly infringing products found their way into the district. *In re Nintendo*, 589 F.3d at 1198 (citing *Volkswagen II*, 545 F.3d at 317–18). Because the local interests in the District of New Jersey are far greater than in this district, this factor weighs heavily in favor of transfer. *See In re TS Tech*, 551 F.3d 1315, 1321 (Fed. Cir. 2009) (local interest factor favored the transferor venue when "the vast majority of identified witnesses, evidence, and events leading to [the] case" were located in and around that venue).

### B. The New Jersey Courts, Like This Court, Facilitate Prompt Disposition Of Patent Cases

In its § 1404(a) analysis, the court may consider how quickly a case will come to trial and be resolved. *In re Genentech*, 566 F.3d at 1347. However, this factor is the "most speculative," and in situations, such as here, where "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those factors." *Id*. This is especially true because, "as this Court has repeatedly found in the past, the parties' reliance on general civil statistics provides the court with little guidance as to the speed with which *patent* cases reach trial." *Innovative Global Sys. LLC v. OnStar LLC*, No. 6:10-cv-574, 2012 U.S. Dist. Lexis 114504, *25 (E.D. Tex. Feb. 14, 2012) (emphasis in original).

In any event, both the Eastern District of Texas and the District of New Jersey are busy districts with full dockets, yet both courts provide for efficient and prompt disposition in patent

14

cases. (*See* Ex. 31.) Both districts have detailed local patent rules and scheduling orders to avoid congestion and keep patent actions on track to timely resolution. (*See* Ex. 32.) Overall, and given the speculative nature of this factor, it is neutral to the transfer analysis.

### C. There Are No Conflicts of Law and No Issues Of Governing Law With Which This Court Has Unique Familiarity

The third and fourth public interest factors are both neutral here. This is a patent infringement case governed by federal law, so both districts are familiar with the law that will govern this case. For instance, as noted above, both districts have local rules that streamline patent cases. (*See* Ex. 32.) In addition, any appeal in this case would go to the Federal Circuit irrespective of where the case is tried, and thus there is no conflict at the appellate level. *See QR Spex, Inc. v. Motorola*, 507 F. Supp. 2d 650, 667 (E.D. Tex. 2007) ("the Federal Circuit will review any substantive issues arising in this case, regardless of which district court hears the case. In this respect this District will be no different from any other federal district court."). In addition, there are no state or foreign law claims asserted—this is a straightforward patent infringement case. Thus there are no issues of local law, or any conflict of law or foreign law issues, and therefore the remaining two public interest factors are neutral to the transfer analysis.

### VI. CONCLUSION

Because this case could have been brought in the District of New Jersey, and because the public factors and private factors overwhelmingly favor transfer to that venue, LG Electronics Inc. and LG Electronics U.S.A., Inc. respectfully request that this Court transfer this action to the District of New Jersey pursuant to 28 U.S.C. § 1404(a).

Dated: January 28, 2015                    Respectfully submitted,

                                           */s/ Jamie B. Beaber*
                                           Jamie B. Beaber (D.C. Bar No. 484186)

Michael Maas (D.C. Bar No. 493685)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
jbeaber@mayerbrown.com
mmaas@mayerbrown.com

Michael E. Jones
State Bar No. 10929400
Allen F. Gardner
State Bar No. 24043679
POTTER MINTON P.C.
110 N. College Avenue, Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846
mikejones@potterminton.com
allengardner@potterminton.com

**COUNSEL FOR DEFENDANTS
LG ELECTRONICS INC. AND
LG ELECTRONICS U.S.A., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 28th day of January, 2015, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

>          */s/ Jamie B. Beaber*
>          Jamie B. Beaber

## CERTIFICATE OF CONFERENCE

On January 21, 2015, pursuant to Local Rule CV-7(h), counsel for Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc., Michael Maas, and counsel for Plaintiff Mondis Technology Ltd., Jeffrey Plies and James Patrick Kelly, met and conferred by telephone. Counsel for Plaintiff indicated that Plaintiff would oppose Defendants' motion to transfer.

>          */s/ Jamie B. Beaber*
>          Jamie B. Beaber