## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONDIS TECHNOLOGY LTD., | Civil Action No.: 15-cv-4431 (SRC)(CLW) |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| LG ELECTRONICS, INC. and LG ELECTRONICS U.S.A., INC., | *Electronically Filed* |
| Defendants. | |

---

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANTS LG ELECTRONICS, INC. AND LG ELECTRONICS U.S.A., INC.'S
### MOTION FOR SUMMARY JUDGMENT FOR LACK OF WRITTEN DESCRIPTION

---

Liza M. Walsh
Selina M. Ellis
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, New Jersey 07102
(973) 757-1100

*Of Counsel:*

Jamie B. Beaber (admitted *pro hac vice*)
William J. Barrow (admitted *pro hac vice*)
Anita Y. Lam (admitted *pro hac vice*)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
(202) 263-3000

*Attorneys for Defendants
LG Electronics, Inc. and
LG Electronics U.S.A., Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

I.      INTRODUCTION ................................................................................ 1

II.     UNDISPUTED MATERIAL FACTS ................................................... 3

        A.      Prosecution of U.S. Patent No. 7,475,180 ............................. 3

        B.      Overview of U.S. Patent No. 7,475,180 ................................. 5

                1.      Specification ................................................................ 5

                2.      Asserted Claims .......................................................... 6

                3.      Claim Construction ..................................................... 7

        C.      Reexamination of the Asserted Patents ................................... 8

III.    GOVERNING LAW ............................................................................ 9

        A.      Summary Judgment Under Fed. R. Civ. P. 56 ...................... 9

        B.      Written Description ............................................................... 9

IV.     ARGUMENT ..................................................................................... 11

        A.      All uses of the word "type" in the specification are unrelated to "an
                identification number for identifying at least a type of said display unit" ........... 12

        B.      The specification of the '180 patent does not otherwise disclose or imply
                the use of an "identification number" that identifies a "type" of display ............ 14

                1.      First Embodiment ...................................................... 14

                2.      Second Embodiment .................................................. 16

                3.      Third Embodiment ..................................................... 17

                4.      Fourth, Fifth, and Sixth Embodiments ..................... 18

                5.      Seventh and Eighth Embodiments ............................ 21

        C.      Mondis conceded during reexamination that the specification does not
                disclose "an identification number for identifying at least a type of said
                display unit" ........................................................................... 22

        D.      Claims 14-16 lack adequate written description support as a matter of law ....... 24

V.      CONCLUSION .................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcon Research Ltd. v. BarrLabs., Inc.*,
  745 F.3d 1180 (Fed. Cir. 2014)..................................................................25

*Amgen Inc. v. Hoechst Marion Roussel*,
  314 F.3d 1313 (Fed. Cir. 2003)...........................................................11, 25

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..................................................................................9

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) (en banc)....................................... *passim*

*In re Barker*,
  559 F.2d 588 (CCPA 1977) .....................................................................10

*Biogen, Inc. v. Berlex Labs., Inc.*,
  318 F.3d 1132 (Fed. Cir. 2003)...............................................................23

*Capon v. Eshhar*,
  418 F.3d 1349 (Fed. Cir. 2005).................................................................10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)....................................................................................9

*Centocor Ortho Biotech, Inc. v. Abbott Labs.*,
  636 F.3d 1341 (Fed. Cir. 2011)...........................................................9, 24

*Cont'l Can Co. v. Monsanto, Co.*,
  948 F.2d 1264 (Fed. Cir. 1991)...........................................................10, 14

*Forest Labs., LLC v. Sigmapharm Labs., LLC*,
  2017 U.S. Dist. LEXIS 101653 (D. Del. 2017) ......................................25

*Lockwood v. Am. Airlines, Inc.*,
  107 F.3d 1565 (Fed. Cir. 1997)...............................................................10

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)....................................................................................9

*Moba, B.V. v. Diamond Automation, Inc.*,
  325 F.3d 1306 (Fed. Cir. 2003)...............................................................10

*PIN/NIP, Inc. v. Platte Chem. Co.*,
  304 F.3d 1235 (Fed. Cir. 2002)..................................................................9

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Regents of the Univ. of Cal. v. Eli Lilly*,
119 F.3d 1559 (Fed. Cir. 1997)...........................................................................10

*In re Robertson*,
169 F.3d 743 (Fed. Cir. 1999)........................................................................10, 14

*Stored Value Solutions, Inc. v. Card Activation Techs., Inc.*,
796 F. Supp. 2d 520 (D. Del. 2011).....................................................................24

*Stored Value Solutions, Inc. v. Card Activation Techs., Inc.*,
No. 11-1528, 2012 U.S. App. LEXIS 25174 (Fed. Cir. Dec. 12, 2012)................24

*TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*,
264 F.3d 1111 (Fed. Cir. 2001).............................................................................9

*Univ. of Rochester v. G.D. Searle & Co.*,
358 F.3d 916 (Fed. Cir. 2004)...............................................................................9

*Vas-Cath Inc. v. Mahurkar*,
935 F.2d 1555 (Fed. Cir. 1991).......................................................................10, 11

**Statutes**

35 U.S.C. § 102............................................................................................................4

35 U.S.C. § 103............................................................................................................4

35 U.S.C. § 112........................................................................................................9, 10

**Rules**

Fed. R. Civ. P. 56.........................................................................................................9

Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc. ("LGE") respectfully submit this memorandum of law in support of LGE's motion for summary judgment for lack of written description. For the reasons set forth below, LGE respectfully requests that summary judgment be entered in its favor.

## I.      INTRODUCTION

Mondis initially asserted eight claims from five patents against LGE. Now, only three claims of one patent remain—claims 14-16 of the '180 patent. The patentability of these three remaining claims is predicated on a limitation, added during prosecution, for which the specification provides no literal or inherent support. These last few claims are therefore invalid.

The '180 patent generally discloses a system and method for allowing an externally connected video source (such as a computer) to control a display device (such as a computer monitor). To do this, the '180 patent proposes incorporating information about the display (*e.g.*, information about the monitor) into the memory of the display device. This information about the display device can then be compared with information stored in the video source. Among other things, this display information, which is called "display unit information" in the asserted claims, may include an identification number.

When the asserted claims were originally submitted to the PTO, they only required that the identification number identify a particular display—for the ostensible purpose of distinguishing individual displays from each other. In order to overcome a PTO rejection, however, the applicants amended the claims to require that the identification number identify "at least a **type** of" display. Based on this amendment—requiring that the identification number identify a "type" of display rather than just the display itself—the PTO allowed the asserted claims to issue. Notably, the applicants cited no support in the specification for this claim amendment, and the PTO did not identify any such support in its subsequent response allowing

the claims. Nor could any such support have been identified, because the specification does **not** disclose an identification number that identifies a "type" of display.

There is no literal or express support for this claim limitation in the specification. The word "type" appears seven times in the specification, but never in relation to any "identification number," much less one that identifies a "type" of display.

This limitation is not inherently disclosed in the specification either. **None** of the eight embodiments disclosed in the specification address or otherwise require identifying a display according to its "type." Indeed, the specification fails to define the parameters for distinguishing one display "type" from another, or even the concept of distinguishing displays according to their "type."

In fact, Plaintiff Mondis Technology Ltd. ("Mondis") has already **conceded** that the specification lacks any support for this limitation. During reexamination of a related patent that shares an identical specification (the '342 patent), Mondis stated that the specification does **not** disclose an identification number that identifies a "type" of display, but instead only covers an identification number that identifies the display itself.

In sum, the asserted claims lack adequate written description support because the patent specification does not describe this aspect of the purported invention—the apparent novel feature of the claims per the prosecution history—sufficiently so that one of ordinary skill in the art would understand that the applicants actually possessed the subject matter claimed. In other words, there is no indication whatsoever in the patent that the applicants had actually invented a display that stores an identification number for identifying the "type" of display, or described it to the public as required by law.

For at least these reasons, and as explained in greater detail below, asserted claims 14-16 of the '180 patent are invalid for lack of adequate written description.

## II.     UNDISPUTED MATERIAL FACTS

### A.     Prosecution of U.S. Patent No. 7,475,180

It is undisputed that an identification number for identifying "at least a type" of display unit is an important limitation. As the prosecution history shows, it is a substantial reason for why the patent was allowed in the first place.

The application leading to the '180 patent was filed on June 4, 2002, as a continuation application in a string of patents that all claim priority to a Japanese application filed on February 10, 1993. The '180 patent's application was filed with original claims 1-26, which were identical to claims of a co-pending application (typical for continuation applications).

On August 14, 2003, the applicants filed an amendment cancelling original claims 1-26, and replacing them with new claims, including the claim that would ultimately issue as asserted independent claim 14 of the '180 patent. That claim recited:

> A display unit for displaying an image based on video signals inputted from an externally connected video source, comprising:
>
> > a video circuit adapted to display an image based on the video signals sent by the externally connected video source;
> >
> > a memory in which at least **display unit information** is stored, said display unit information **including an identification number for identifying said display unit** and characteristic information of said display unit; and
> >
> > a communication controller capable of bi-directionally communicating with said video source;
> >
> > wherein said communication controller is capable of communicating said display unit information other than said characteristic information to said video source.

Ex. A, Aug. 12, 2003 Amend. at 6-7 ('180 Patent FH) (emphases added).

On January 29, 2004, the PTO issued a Notice of Allowance, allowing all pending claims. Subsequently, the applicants filed string of Requests for Continued Examination (RCE) for purposes of submitting to the PTO, via Information Disclosure Statement (IDS), documents

3

from co-pending litigation involving related patents. Subsequently, on March 22, 2007, the PTO issued a non-final Office Action, rejecting (1) claims 40 and 42 (which would ultimately issue as asserted claims 14 and 16) under 35 U.S.C. § 102(b) as anticipated by U.S. Patent No. 5,276,458 ("Sawdon"), and (2) claim 41 (which would ultimately issue as asserted claim 15) under 35 U.S.C. § 103(a) as obvious over Sawdon in view of U.S. Patent No. 5,375,210 ("Monnes").

On April 30, 2007, applicants participated in an Examiner Interview, during which "Applicant propose[d] to more clearly specify identification number as a 'type' of display unit which examiner agree[d] [would] read over the previous art applied." Ex. B, Apr. 30, 2007 Interview Summary ('180 Patent FH).

On May 4, 2007, applicants filed a response to the March 22, 2007 Office Action in view of the foregoing Examiner Interview, in which they amended claim 40 (issued asserted independent claim 14) as follows:

> A display unit for displaying an image based on video signals inputted from an externally connected video source, comprising:
>
>> a video circuit adapted to display an image based on the video signals sent by the externally connected video source;
>>
>> a memory in which at least display unit information is stored, said display unit information including an identification number for identifying **at least a type of** said display unit and characteristic information of said display unit; and
>>
>> a communication controller capable of bi-directionally communicating with said video source;
>>
>> wherein said communication controller is capable of communicating said display unit information other than said characteristic information to said video source.

Ex. C, May 4, 2007 Amend. at 5-6 ('180 Patent FH) (emphasis added to amended language). In that response, the applicants explained:

> As noted in the Interview Summary, the Office Action is to be vacated and the Examiner agrees that the amendment, as presented herein, will read over the previous art applied regarding the claims. That is, applicants submit that <u>neither Sawdon nor Monnes</u> provide

4

any <u>disclosure or teaching</u> in the sense of 35 USC 102 or 35 USC 103 of the recited features of the independent and dependent claims that a <u>memory stores an identification number for identifying at least a type of the display</u> unit, irrespective of the Examiner's contentions concerning other features of the claims of this application.

*Id.* at 12 (underlining in original). In other words, applicants amended claim 40 (issued claim 14) to require that the claimed identification number identify "at least a type of" display—not just the display itself—for the express purpose of distinguishing the claims over the Sawdon and Monnes prior art references.

Notably, however, the applicants did not cite any support for this amendment in their response. *Id.* at 11-13. Nor did the Examiner identify any such support in the subsequent Notice of Allowance, even though the Examiner specifically noted that applicants' amendments were the reason for allowance:

> The following is an Examiner's statement of reasons for the indication of allowable subject matter: Claims 27, 40 [issued asserted independent claim 14], 43, 47, 49, 51-52 are allowable over the prior art of record because the Examiner found neither prior art cited in its entirety, nor based on the prior art, found any motivation to combine any of the said prior art[] which teach a display unit comprising a memory which stores an **<u>identification number for identifying at least a type of said display</u>** unit; a communication controller which sends the identification number stored in the memory to the video source and capable of bi-directionally communicating with the video source.

Ex. D, Oct. 22, 2007 Notice of Allowance at 2 ('180 Patent FH) (emphases added).

After the applicants filed a series of additional RCEs to submit more prior art and litigation-related documents to the PTO, applicants paid the issue fee, and the '180 patent issued on January 6, 2009.

### B.    Overview of U.S. Patent No. 7,475,180

#### 1.    Specification

The '180 patent is generally directed to a system and method for facilitating control of a display device (*e.g.*, a computer monitor) that is connected to and configured to receive video signals from an external video source (*e.g.*, a computer). *See* Ex. E, '180 Patent, Abstract.

5

According to the specification, the display device (*e.g.*, display device 6 in Figure 1) includes a memory which may store, among other things, one or more identification (or "ID") numbers.[1] *Id.* at Fig. 2 (depicting memory map of memory 9 from display device 6 of Fig. 1). These ID numbers may be compared against an ID number received from the externally connected computer. *Id.* at 5:38-42. If the ID number received from the computer matches the ID number stored in the memory of the display, the computer is permitted to control the display device using external control instructions, which may control various aspects of the display, including display size, position, brightness, and contrast. *Id.* at 5:43-47 and Fig. 3. If the numbers do not match, the computer cannot control the display.

### 2. Asserted Claims

Mondis asserts claims 14-16 in this case. Claim 14 is independent, and claims 15 and 16 depend therefrom. Claims 14-16 recite as follows:

14. A display unit for displaying an image based on video signals inputted from an externally connected video source, comprising:

a video circuit adapted to display an image based on the video signals sent by the externally connected video source;

a memory in which at least display unit information is stored, said display unit information including **an identification number for identifying <u>at least a type of</u> said display unit** and characteristic information of said display unit; and

a communication controller capable of bi-directionally communicating with said video source;

wherein said communication controller is capable of communicating said display unit information other than said characteristic information to said video source.

15. The display unit according to claim 14, wherein said display unit information is sent to said video source in response to power on of at least one of said display unit and said video source.

---

[1] "Identification number" and "ID number" are used interchangeably throughout the specification of the '180 patent.

16. The display unit according to claim 14, wherein said display unit receives a signal from said video source that is generated by using said identification number stored in said memory.

*Id.* at Claims 14-16 (emphases added to subject limitation). As discussed above, asserted claims

14-16 are the issued versions of claims 40-42 during prosecution of the '180 patent.

### 3.    Claim Construction

The parties presently dispute the meaning of six claim terms, as per the parties' claim

construction briefing:

- display unit information other than said characteristic information to said video source

- identification number

- display unit information including an identification number for identifying at least a type of said display unit and characteristic information of said display unit

- display unit information

- said display unit receives a signal from said video source that is generated by using said identification number stored in said memory

- a display unit for display an image based on video signals inputted from an externally connected video source, comprising

*See generally* Dkts. 174, 175. Though some of these terms overlap with the claim limitation at

issue here—"an identification number for identifying at least a type of said display unit"— this

motion does not rely on claim construction, and none of the disputed claim construction issues

pending before this Court bear any relevance here.

While the parties dispute whether "display unit information including an identification

number for identifying at least a type of said display unit and characteristic information of said

display unit" is indefinite, the basis for that dispute is not the meaning of the word "type."

Rather, the parties dispute whether the specification clarifies the grammatical ambiguity in the

term—*i.e.*, whether the identification number identifies (1) the type of display unit and

characteristics of same, or (2) only the type of display unit. Dkt. 175 at 13.

Further, the parties dispute whether the term "identification number" requires a uniqueness for distinguishing between individual displays—not the meaning of the word "type" and what (if any) support the specification has for the term. Dkt. 178 at 5-7.

### C.    Reexamination of the Asserted Patents

Mondis originally asserted five patents in this action. Each of those five patents has been through multiple rounds of reexamination, including U.S. Patent No. 7,089,342 ("the '342 patent"), all claims of which have been invalidated. To be clear, the '342 patent and the '180 patent share materially identical specifications. During reexamination of the '342 patent, Mondis clarified what the specification covers and what it does not cover with respect to the "identification number" term (though the claims of the patents are different, both claim sets recite an "identification number").

Specifically, in a December 2, 2014 Office Action, the Examiner stated:

> [T]he '342 patent discloses the identification number as being both an **identification number** of a **particular monitor type**; and an **identification number** of a **particular monitor** in which there are a plurality of monitors of the same type.

Ex. F, Dec. 2, 2014 OA at 8 (Reexam. 90/013,238) (emphases added). In a February 2, 2015 Office Action response, Mondis explained that the specification of the '342 patent does **not** cover an identification number that identifies a "type" of display. Specifically, Mondis stated:

> Patent Owner disagrees with the first part [an identification number of a particular monitor type] because **neither the specification nor the claim supports Examiner's reference to "type."**

Ex. G, Feb. 2, 2015 Resp. at 8 (Reexam. 90/013,238) (emphasis added).

Additionally, during reexamination of the '180 patent, Mondis confirmed that the specification does not define the word "type," underscoring the specification's deficiency regarding this limitation. Ex. H, Nov. 14, 2011 Resp. at 5 (Reexam. No. 95/000,480). The PTO

similarly acknowledged that "the '180 Patent…does not specially define the meaning of the term 'type,'" Ex. I, Oct. 14, 2011 OA at 47 (Reexam. 95/000,480).

## III.    GOVERNING LAW

### A.    Summary Judgment Under Fed. R. Civ. P. 56

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The initial burden belongs to the moving party to show that there is an absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The burden then shifts to the non-moving party to set forth specific facts demonstrating a genuine factual issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B.    Written Description

Whether a patent meets the written description requirement of 35 U.S.C. § 112, ¶ 1 is a question of fact; clear and convincing evidence is required to invalidate a patent. *Centocor Ortho Biotech, Inc. v. Abbott Labs.,* 636 F.3d 1341, 1347 (Fed. Cir. 2011); *Ariad Pharm., Inc. v. Eli Lilly & Co.,* 598 F.3d 1336, 1354-55 (Fed. Cir. 2010) (en banc). The written description inquiry is amenable to determination at the summary judgment stage and may be based "solely on the face of the patent specification." *Centocor,* 636 F.3d at 1347; *Univ. of Rochester v. G.D. Searle & Co.,* 358 F.3d 916, 927 (Fed. Cir. 2004); *PIN/NIP, Inc. v. Platte Chem. Co.,* 304 F.3d 1235, 1247–48 (Fed. Cir. 2002) (reversing the district court's denial of JMOL because no reasonable juror could have concluded that the asserted claim was supported by adequate written description); *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen.*

*Elec. Co.,* 264 F.3d 1111, 1119 (Fed. Cir. 2001) (affirming grant of summary judgment of invalidity under 35 U.S.C. § 112, ¶ 1 because "[n]o reasonable juror could find that [the patentee's] original disclosure was sufficiently detailed to enable one of skill in the art to recognize that [the patentee] invented what is claimed.").

To satisfy the written description requirement, an application must convey with reasonable clarity to those skilled in the art that, as of the earliest filing date, the inventor was in possession of the invention. *See, e.g., Moba, B.V. v. Diamond Automation, Inc.,* 325 F.3d 1306, 1319 (Fed. Cir. 2003); *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991). "[T]he 'essential goal' of the description of the invention requirement is to clearly convey the information that an applicant has invented the subject matter which is claimed." *In re Barker,* 559 F.2d 588, 592 n.4 (CCPA 1977). Another goal is to put the public on notice of what the applicant claims as the invention. *See Regents of the Univ. of Cal. v. Eli Lilly,* 119 F.3d 1559, 1566 (Fed. Cir. 1997). "The 'written description' requirement implements the principle that a patent must describe the technology that is sought to be patented; the requirement serves both to satisfy the inventor's obligation to disclose the technologic knowledge upon which the patent is based, and to demonstrate that the patentee was in possession of the invention that is claimed." *Capon v. Eshhar,* 418 F.3d 1349, 1357 (Fed. Cir. 2005). If a claim limitation is not explicitly described in the specification, to establish inherency, the specification "must make clear that the missing descriptive matter is ***necessarily present*** in the thing described in the reference, and that it would be so recognized by persons of ordinary skill." *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999) (emphasis added) (quoting *Cont'l Can Co. v. Monsanto, Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991)). To be clear, a description that merely renders the invention obvious does not satisfy the written description requirement. *Ariad,* 598 F.3d at 1352 (citing *Lockwood v. Am. Airlines, Inc.,* 107 F.3d 1565, 1571–72 (Fed. Cir. 1997)).

10

## IV.   ARGUMENT

The specification of the '180 patent fails to demonstrate that the inventors were in possession of the full scope of the claimed invention at the time of their application. *See Ariad*, 598 F.3d at 1351 ("the description must 'clearly allow persons of ordinary skill in the art to recognize [the inventor] invented what is claimed.'") (citing *Vas-Cath Inc.*, 935 F.2d at 1562-63). That the claims were amended during prosecution to specify that the identification number identifies "at least a type of" display unit"—as opposed to the display unit itself—to secure allowance of the claims over asserted prior art only underscores the point. *Amgen Inc. v. Hoechst Marion Roussel*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) ("The purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not.").

There is no explanation in the '180 patent, no indication at all in fact, that the applicants actually invented a display that stores an identification number that identifies a "type" of display, and a plain review of the '180 patent's specification demonstrates that there is no support for "an identification number for identifying **at least a type of** said display unit." *First,* **none** of the uses of the word "type" in the specification pertain to any identification number. *Second*, **none** of the eight embodiments disclosed in the specification include, require, or otherwise allude to any functionality for identifying a "type" of display, thereby precluding any argument that the limitation is inherently disclosed in the specification. *Third*, Mondis conceded during reexamination of the related '342 patent, which shares a common specification with the '180 patent, that the specification does **not** support an identification number that identifies a "type" of display. Based on the foregoing, the specification fails to convey to one of ordinary skill in the art the full scope of asserted claims 14-16, and there is no legally sufficient evidentiary bases for a reasonable jury to find otherwise.

11

## A.     All uses of the word "type" in the specification are unrelated to "an identification number for identifying at least a type of said display unit"

A written description analysis "requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Ariad*, 598 F.3d at 1351. Here, it is clear from such a review that the specification fails to use the word "type" in the same manner required by the asserted claims. As a result, the specification fails to provide any literal or express support for an "identification number" that identifies a "type" of display.

The word "type" appears seven times in the specification of the '180 patent. In **none** of these instances is the word "type" tied to any type of "identification number," much less used in the same context as claim 14. Five of these seven uses expressly pertain to the "various types of control" that a computer or processor may exercise over a display—not to the "type" of display or any "identification number." These five uses are reproduced below:

> The present invention relates to an information output system or display apparatus including a computer and an information output device such as a display device or a printer as a computer terminal and more particularly to an information output system or **display apparatus for performing various <u>types</u> of control** such as the information output method and allowing or not allowing of information output from the computer connected to the above information output device via a communication interface.

Ex. E, '180 Patent at 1:26-34 (emphases added).

> An object of the present invention is to provide an information output system wherein a **computer can exercise various <u>types</u> of control of an information output device** such as a display device.

*Id.* at 2:37-40 (emphases added).

> **The control processing means operates and generates control signals for exercising various <u>types</u> of control** for the information output device on the basis of control instructions from the second communication means and compares the identification number of the computer stored in the memory means with the identification number sent from the computer via the first and second communication means.

*Id.* at 3:4-11(emphases added).

> When **the second communication means** has a plurality of communication interfaces, it

can communicate with another plurality of information output devices and the computer and in the state that a plurality of similar information output devices are connected to the computer, **it can exercise various <u>types</u> of control** for the information output devices and can inform the computer of the status of each information output device.

*Id.* at 3:28-35 (emphases added).

According to the present invention, **a user of a computer can exercise various <u>types</u> of control for an information output device such as a display device** from the keyboard of the computer or by the software incorporated in the computer.

*Id.* at 10:21-24 (emphases added).

In each of the foregoing instances, the word "type" is used to refer to the "control" of the display device—no "memory," which stores the "display unit information" that includes the "identification number," is mentioned in any of the above contexts. Nor is the concept of identifying one "display unit" as distinct from another "display unit" disclosed in any of these instances.

The same goes for the two remaining uses of the word "type":

A microcomputer or a memory LSI is used to provide a most suitable **display image for each video signal as this <u>type</u> of display device**.

*Id.* at 1:41-43.

The computer 1 has a structure which is the same as the general structure of a conventional personal computer or work station and the **communication controller 5 controls a communication interface such as RS-232C which is installed in the standard <u>type</u>.**

*Id.* at 4:38-43 (emphases added). Though the former usage pertains to a "display device," unlike the previously discussed uses, it is generic and unrelated to any ostensible "identification number," "display unit information," or "memory" within the display. Similarly, the latter usage appears to pertain to control of a display or communications controller, and regardless is not tied to any "identification number," and certainly not one that identifies a "type" of display.

Thus, a plain review of the '180 patent establishes that the specification does not provide

13

written description support for "an identification number for identifying **at least a type** of said display unit." *Ariad*, 598 F.3d at 1348 ("the [written description] analysis compares the claims with the invention disclosed in the specification, and if the claimed invention does not appear in the specification ... the claim ... fails regardless of whether one of skill in the art could make or use the claimed invention.").

### B.    The specification of the '180 patent does not otherwise disclose or imply the use of an "identification number" that identifies a "type" of display

Similarly, the specification fails to provide any inherent support for an "identification number" that identifies a "type" of display. *In re Robertson*, 169 F.3d at 745 (quoting *Cont'l Can Co.*, 948 F.2d at 1268) (holding that to establish inherency, the specification "must make clear that the missing descriptive matter is *necessarily present* in the thing described in the reference, and that it would be so recognized by persons of ordinary skill."). The specification discloses a total of eight embodiments. Yet an identification number for identifying a display according to its "type" is not necessary, implied, or even alluded to in any of these eight embodiments.

#### 1.    First Embodiment

The first embodiment is discussed in the context of Figures 1-3. Figure 1, shown below, depicts a block diagram of an exemplary system, including a computer 1 and a display device 6.



FIG. 1

Ex. E, '180 patent at Fig. 1. The display device 6 includes a memory 9, which stores a list of

registered ID numbers, per the memory map depicted in Fig. 2:



*Id.* at Fig. 2. According to the flow diagram depicted in Figure 3, the display device receives an

"ID number" from a computer (at Step 3), and then compares that ID number with a registered

ID number (at Step 4). *Id.* at 5:35-42.

*Id.* at Fig. 3. If there is a match (at Step 5), then the display device may be controlled by the

computer via "control instructions." *Id.* at 5:43-47. If there is no match (at Step 6), the display

15

device may not be controlled by control instructions received from the computer. *Id.* at 5:47-52.

The specification also discloses a reverse scenario, in which the ID number is sent from the display device to the computer for the comparison step, but here still neither the ID number sent to the computer nor that which is registered therein is disclosed as fulfilling the function of identifying a "type" of display device—or a "type" of anything for that matter. *Id.* at 5:61-6:4.

In either scenario for this embodiment, the specification does not disclose whether the ID number stored in the display device identifies the "type" of display device, the display device itself, or any other aspect of the display. The claimed "identification number for identifying at least a type of said display" is simply not disclosed with respect to this embodiment—nor is it necessary for implementing this embodiment.

### 2. Second Embodiment

The second embodiment is discussed in the context of Figure 4, which per below, depicts a display device 6A in communication with a computer 1 (similar to Figure 1):



*Id.* at Fig. 4. According to the specification, an ID number is sent from computer 1 to the microcomputer 7 of display device 6A via communication controller 8, where the

16

microcomputer 7 compares the received ID number with the ID number stored in memory 9 of the display device 6A. *Id.* at 6:48-52. As with the first embodiment, if the ID number stored in the memory 9 of the display device 6A matches the ID number received from the computer 1, the microcomputer 7 of the display device may accept control instructions from computer 1. *Id.* at 6:52-55.

As with the first embodiment, although there is a comparison of the ID numbers stored in the computer and the display device, and control of the display by the computer is only permitted if there is a match, the specification does not disclose whether the ID number stored in the display identifies the display itself, the "type" of display, or something else. Nor is an ID number that identifies the "type" of display necessary for implementing this embodiment.

### 3.   Third Embodiment

The third embodiment is discussed in the context of Figure 5, shown below:



*Id.* at Fig. 5. Notably, this is the only embodiment involving a plurality of display devices. Here, display devices 6B, 6C, and 6D are assigned ID numbers 1, 2, and 3, respectively. With respect to operation, the specification states that "when controlling the display device 6B from the computer 1, the ID number is sent to the line C1 and the display device 6B is controlled

17

appropriately from the computer 1." *Id.* at 7:25-29. Similarly, "when controlling the display device 6C, the ID number 2 is sent from the computer 1 in the same way" and "the display device 6C can be controlled appropriately from computer 1." *Id.* at 7:29-33.

Nowhere in the context of this embodiment does the specification disclose that the ID numbers may be used for identifying the "type" of display. In fact, the specification does not even disclose that display devices 6B, 6C, and 6D are of different "types." The implication is the opposite because these displays have the "same structure":

> In the drawing**, reference numerals 6B, 6C, and 6D indicate display devices having the <u>same structure</u>**, V1, V2, and V3 lines for video signals and synchronizing signals, C1, C2, and C3 communication lines for, for example, RS-232C, and 1 the aforementioned computer.

*Id.* at 7:13-18 (emphases added). The specification reinforces this in the context of Figure 6, noting again that 6C and 6D have the same structure as 6B:

> **FIG. 6 is a block diagram showing the internal structure of the display device 6B shown in FIG. 5.** In the drawing, a reference numeral **25** indicates a communication controller having two communication ports and **26** a divider of video signals and synchronizing signals. The communication controller **25** sends or receives data to or from the computer **1** in the same way as the communication controller **8** of the display device **6** shown in FIG. 1 and also divides the communication lines and relays other display devices. On the other hand, the divider **26** divides video signals or synchronizing signals sent from the computer **1** or signal source to other display devices. **By using <u>such a structure</u>, a plurality of display devices can be connected to a computer as shown in FIG. 5.**

*Id.* at 7:42-55, Fig. 6 (emphases added). If 6A, 6B, and 6C share the same "structure" (and are thus of the same "type"), then the ID numbers certainly cannot serve to identify or distinguish the display devices on that basis. Therefore, an ID number that identifies the "type" of display cannot be necessary for implementing this embodiment.

### 4.     Fourth, Fifth, and Sixth Embodiments

The fourth, fifth, and sixth embodiments make no reference whatsoever to an ID number of any sort, much less a scenario in which an identification number is stored in the memory of a

display device for identifying a "type" of display. Indeed, each of these embodiments pertains to the determination of the operational status of the display device—*i.e.*, whether it is normal or faulty.

Fourth Embodiment

The fourth embodiment (discussed with reference to Figures 7 and 8, below) is directed to a display device 6E in communication with a computer 1B, in which the computer 1B is capable of detecting faulty operation of the display device 6E. *Id.* at 8:45-47.



*Id.* at Fig. 7. Specifically, at Step 12, the "computer 1B calls the display device 6E," and if "no response is received, the computer 1B judges that at the display device 6E is faulty." *Id.* at 8:4-10. If "the communication succeeds, "the microcomputer 7 fetches information of the operation status of the deflection circuit 10 or video circuit 11 of the display device 6E [at Step14]," and if the microcomputer 7 judges that the fetched value is indicative of a faulty operation status at Step 15, the value is judged to be an error and an error message is generated at Step 16. *Id.* at

19

8:11-25. Alternatively, if the operation of the display device is determined to be normal at Step 15, the computer is permitted to control the display device, per Step 17.

At no point in the summary of this embodiment, or in the Figure 8 flowchart, is an ID number referenced, much less an identification number for identifying a "type" of display.

<u>Fifth Embodiment</u>

The specification states that the fifth embodiment "obtains the same effect" of the fourth embodiment, and that its operation "is basically the same as that shown in FIG. 7." *Id.* at 8:50-52, 58-59. Specifically, the specification states that "[w]hen an error occurs, the microcomputer 7 transmits an indication code informing the occurrence of an error to the computer 1B via the communication line and informs the user." *Id.* at 8:61-64.

Thus, there is no disclosure in the summary of this embodiment of an ID number, much less an identification number for identifying a "type" of display.

<u>Sixth Embodiment</u>

Similarly, the specification states that the sixth embodiment "obtains the same effect" as the fifth embodiment. *Id.* at 9:5-6. With reference to Figure 10, the specification states:

> [W]hen an error occurs in the internal circuit of the display device 6E, the voltage detected by the ADC 27 or 28 is digitized and processed by the microcomputer 7 as faulty voltage occurrence information and information informing an error is transmitted to the computer 1C via the communication controller 8. In the computer 1C, CPU2 decodes the transmitted faulty information. **When CPU 2 identifies the faulty part of the display device 6E**, it allows the audio control circuit 31 to operate as an audio signal **and informs the user of the fault by an audio message from the speaker 32** on one hand. On the other hand, **CPU 2 controls the liquid crystal display controller 35 so as to display characters or graphics on the liquid crystal display panel 34. By doing this, the user of the display device 6E can be informed of an error or fault of the display device 6E** and can maintain the system easily.

*Id.* at 9:13-27 (emphases added).

Thus the sixth embodiment also pertains to verifying whether the operational status of the display device is normal or faulty—not to an identification number, much less an identification

20

number that identifies a "type" of display.

### 5.      Seventh and Eighth Embodiments

The seventh and eighth embodiments focus on the computer's control of the display device, and also make no mention of any identification number, much less such a number for identifying a "type" of display.

<u>Seventh Embodiment</u>

Specifically, the seventh embodiment, which is discussed with reference to the block diagram in Figure 11, addresses a scenario in which the control instruction from the computer "relates to control of the power supply"—for example, stopping the supply of power to the video circuit within the display device. *Id.* at 9:45-51. Accordingly, "when the computer 1 is not in operation for a predetermined period, the operation power supply for the display device 6 can be automatically put into the off state." *Id.* at 52-55.

No identification number is mentioned, much less an identification number for identifying a "type" of display.

<u>Eighth Embodiment</u>

Lastly, the eighth embodiment discusses a display setup similar to that shown in Fig. 1, but with the display controller contained within the display device as opposed to the computer. This display controller (display controller 37 from Figure 12) thus functions in the same way as the display device shown in Figure 1. *Id.* at 10:7-17.

No identification number is specifically discussed in the context of this embodiment, and certainly not an identification number for identifying a "type" of display.

### C. Mondis conceded during reexamination that the specification does not disclose "an identification number for identifying at least a type of said display unit"

In addition to the clear deficiencies above with respect to the '180 patent disclosure, Mondis has already conceded that the specification does not contain any support for "an identification number for identifying **at least a type of** said display unit." Nor does the '180 patent provide any definition for the term "type," special or otherwise.

This case started with five related patents, one of which was U.S. Patent No. 7,089,342 ("the '342 patent"). The '342 patent contains a materially identical specification to the '180 patent, though the two patents recite slightly different claims. During reexamination of the '342 patent (*i.e.*, before all claims of the '342 patent were invalidated), Mondis presented arguments to the PTO to distinguish its claims over prior art. In doing so, Mondis provided its own characterization of the specification—apart from the claims.

Specifically, in a December 2, 2014 Office Action, the Examiner found that the specification of "the '342 patent discloses the identification number as being both an identification number of a particular monitor type; and an identification number of a particular monitor in which there are a plurality of monitors of the same type." Ex. F, Dec. 2, 2014 OA at 8 (Reexam. 90/013,238). In response, Mondis stated that it "disagrees with the first part"—that is, an identification number of a particular monitor type—"because **neither the specification nor the claim supports Examiner's reference to 'type.'**" Ex. G, Feb. 2, 2015 Resp. at 8 (Reexam. 90/013,238). Mondis also explained that "[n]umbers that identify a display type or describe the display's technical capabilities, as opposed to identifying the display unit itself, would not further the goal of reducing unintended or unauthorized control because all displays of a given type would be controlled by receiving the same signal." *Id.* Thus, when it suited Mondis's interests, Mondis characterized the commonly shared specification as not covering an

identification number that identifies a "type" of display—the very same limitation at issue here. As per the summary of the specification provided above, Mondis was correct in this characterization. There is no literal or inherent support for an identification number that identifies a "type" of display in the specification, and Mondis is aware of this fatal deficiency with respect to the asserted claims of the '180 patent as per its prior arguments from reexamination.

Additionally, during reexamination of the '180 patent, both Mondis and the PTO confirmed that the specification does not define the word "type," further underscoring the specification's deficiency regarding this limitation. For example, in distinguishing the claimed display "type" from prior art, Mondis acknowledged that the specification does "not specifically define 'type.'" Ex. H, Nov. 14, 2011 Resp. at 5 (Reexam. No. 95/000,480). The PTO also acknowledged that "the '180 Patent…does not specially define the meaning of the term 'type'" Ex. I, Oct. 14, 2011 OA at 47 (Reexam. 95/000,480). The foregoing also confirms that the '180 patent does not define the word "type" or ascribe to it any particular meaning apart from its ordinary use. In other words, the claimed identification number for identifying a "type" of display must do **at least** that—identify a type of display (in addition to distinguishing between individual displays).

Mondis's own interpretation of its specification, while presumably beneficial in the context of the reexamination of the '342 patent, is fatal to asserted claims 14-16 of the '180 patent, as issued. *See Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132, 1139 (Fed. Cir. 2003) (finding that applicant's statements from the prosecution of the parent application limited the claims in the child application and any correction of the mischaracterization of prior art did "not change the ***content of the specification*** or its ***description of the invention***.") (emphases added).

23

### D.  Claims 14-16 lack adequate written description support as a matter of law

Support for an identification number stored in a memory of a display device for identifying a "type" of display is utterly absent from the specification and thus cannot allow a reasonable jury to determine that claims 14-16 of the '180 patent are supported by a written description that would convey with reasonable clarity to those skilled in the art that the patentee was in possession of the invention. *See Centocor,* 636 F.3d at 1348. This conclusion is proper at the summary judgment stage and is based on the face of the patent specification. *Id*. at 1347.

The *Stored Value* case and its affirmation at the Federal Circuit is instructive. In that case, the patent owner amended its claims during an *ex parte* reexamination so that its independent claims required three separate and distinct authorization codes to be entered. *Stored Value Solutions, Inc. v. Card Activation Techs., Inc.*, 796 F. Supp. 2d 520, 539 (D. Del. 2011). The Court reviewed each of the five preferred embodiments disclosed in the patent-at-issue, and concluded that the specification did not disclose "any method that includes all three of the code entering steps or any one method that includes all three of the code entering steps and the sales transaction data confirmation step." *Id*. at 543-546. These three code-entering steps were crucial for allowance in both the previous reexamination and a later reexamination. *Id*. at 546-547. In the end, the Court concluded that the claims were invalid because "the written description in the '859 patent does not describe the methods claimed in independent claims 20 and 29 sufficiently to allow a reasonable jury to determine that those claims are supported by a written description that would 'convey with reasonable clarity to those skilled in the art that, as of the filing date sought, [the patentee] was in possession of the invention.'" *Id*. at 547 (citing *Centocor,* 636 F.3d at 1348) (internal quotation marks omitted). The Federal Circuit agreed with the district court's conclusion. *Stored Value Solutions, Inc. v. Card Activation Techs., Inc.*, No. 11-1528, 2012 U.S. App. LEXIS 25174, at *20-21 (Fed. Cir. Dec. 12, 2012) (confirming invalidity of the claims

24

because "there is no method in the specification that recites all three steps" and "[e]ach authorization code is an important claim limitation, and the presence of multiple authorization codes in claims 20 and 29 was essential to those claims surviving reexamination.").

Here, the situation is strikingly similar. It is self-evident from a plain reading of the '180 patent that the specification is devoid of any disclosure of an identification number stored in a memory of a display device for identifying a "type" of display. As detailed above, the specification lacks both literal support for this limitation, as well as implicit support in the form of an example or embodiment in which such a scenario is necessarily true. That the foregoing limitation was not part of the original application, and only added during prosecution in order to secure allowance of the claims over asserted prior art only underscores the point. *Amgen*, 314 F.3d at 1330 ("The purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not."). Simply put, a person of ordinary skill in the art would not "recognize that what was claimed corresponds to what was described." *Forest Labs., LLC v. Sigmapharm Labs.*, LLC, 2017 U.S. Dist. LEXIS 101653 (D. Del. 2017) (quoting *Alcon Research Ltd. v. BarrLabs., Inc.*, 745 F.3d 1180, 1191 (Fed. Cir. 2014)). Coupled with Mondis's clear concession with respect to the '180 patent specification—that it does not cover an identification number that identifies a "type" of display—there can be no genuine issue of material fact as to the sufficiency of the '180 patent disclosure.

## V.   CONCLUSION

For the foregoing reasons, LGE respectfully requests that that the Court enter summary judgment in favor of LGE and find that asserted claims 14-16 are invalid for lack of written description support.

Dated:  July 21, 2017

WALSH PIZZI O'REILLY FALANGA LLP


_s/ Liza M. Walsh_
Liza M. Walsh
Selina M. Ellis
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, New Jersey 07102
Telephone: (973) 757-1100
Facsimile: (973) 757-1090
lwalsh@walsh.law
sellis@walsh.law

_Of Counsel:_

Jamie B. Beaber (admitted _pro hac vice_)
William J. Barrow (admitted _pro hac vice_)
Anita Y. Lam (admitted _pro hac vice_)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
jbeaber@mayerbrown.com
wbarrow@mayerbrown.com
alam@mayerbrown.com

_Attorneys for Defendants_
_LG Electronics, Inc. and_
_LG Electronics U.S.A., Inc._