# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONDIS TECHNOLOGY LTD., | Civil Action No.: 15-cv-4431 (SRC)(CLW) |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| LG ELECTRONICS, INC. and LG ELECTRONICS U.S.A., INC., | *Electronically Filed* |
| Defendants. | |

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS LG ELECTRONICS, INC. AND LG ELECTRONICS U.S.A., INC.'S MOTION FOR SUMMARY JUDGMENT FOR LACK OF WRITTEN DESCRIPTION

Liza M. Walsh
Selina M. Ellis
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, New Jersey 07102
(973) 757-1100

*Of Counsel:*
Jamie B. Beaber (admitted *pro hac vice*)
William J. Barrow (admitted *pro hac vice*)
Anita Y. Lam (admitted *pro hac vice*)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
(202) 263-3000

*Attorneys for Defendants
LG Electronics, Inc. and
LG Electronics U.S.A., Inc.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I. ARGUMENT ................................................................................................................ 1

    A. LGE does not need expert testimony to prevail on its motion .............................. 1

    B. Mondis's expert declaration fails to establish a genuine issue of material fact ........................................................................................................................ 2

        1. Mondis's characterization of the '180 patent specification as describing "different 'types' of displays" is unsupported .......................... 3

        2. The '180 patent specification does not describe the use of different input signals for different display "types" .................................................. 3

        3. Mondis's characterization of the '180 patent as addressing compatibility concerns caused by different "types" of displays and signals is not supported by the disclosure on which it relies ...................... 4

        4. Mondis's conclusion that a person of ordinary skill in the art would have understood the specification's "identification number" to be a display "type" ID is incorrect ..................................................................... 5

    C. Mondis's response to LGE's analysis fails to establish literal, implicit, or inherent support for the display "type" ID number ............................................... 6

        1. Mondis's citations to the "Summary of the Invention" do not disclose or suggest a display "type" ID number ........................................ 6

        2. None of the uses of "identification number" in the "Summary of the Invention" pertain to or suggest identifying a "type" of display ......... 7

        3. The specification only discloses "identification numbers" that identify particular displays having the same structure .............................. 8

    D. Mondis has no credible means of explaining or refuting its concession that the specification does not support the display "type" ID limitation ...................... 9

    E. Mondis's characterization of the prosecution history is inaccurate ..................... 10

II. CONCLUSION .......................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AK Steel Corp. v. Sollac*,
    344 F.3d 1234 (Fed. Cir. 2003)..................................................................................................11

*Carrier Vibrating Equipment, Inc. v. General Kinematics Corp.*,
    2012 WL 4483805, at *7 (N.D. Ill. Sept. 27, 2012) ..................................................................11

*Cisco Sys. v. Cirrex Sys., LLC*,
    856 F.3d 997 (Fed. Cir. 2017)....................................................................................................2

*ICN Photonics, Ltd. v. Cynosure, Inc.*,
    73 Fed. Appx. 425 (Fed. Cir. 2003) (unpublished)..................................................................11

*Lockwood v. Am. Airlines, Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997)...................................................................................................1

*Maytag Corp. v. Electrolux Home Prods. Inc.*,
    448 F. Supp. 2d 1034 (N.D. Iowa 2006)..........................................................................6, 8, 9

*PIN/NIP, Inc. v. Platte Chem. Co.*,
    304 F.3d 1235 (Fed. Cir. 2002)....................................................................................................2

*Rivera v. International Trade Commission*
    857 F.3d 1315 (Fed. Cir. 2017)...............................................................................................1, 51

*Univ. of Rochester v. G.D. Searle & Co.*,
    358 F.3d 916 (Fed. Cir. 2004)....................................................................................................2

**Statutes, Rules and Regulations**

35 U.S.C. § 112................................................................................................................10, 11

Mondis has failed to establish any genuine issue of material fact as to whether the asserted claims are adequately supported by the specification. Faced with LGE's compelling arguments in favor of summary judgment, Mondis spends the first five pages of its brief raising tangential issues, and complaining that the instant defense was not raised in prior litigation. These contentions are no basis to deny LGE's motion and have no bearing on validity.

When Mondis does turn to substance, its arguments run afoul of well-established law and rely on misstatements of fact. For example, just a few months ago, in *Rivera v. International Trade Commission*, the Federal Circuit reiterated its longstanding rule that the knowledge of ordinary artisans may **not** be used to fill claim limitations that are missing from the specification, "even if those limitations would be rendered obvious by the disclosure in the specification."[1] Yet, Mondis's primary substantive argument is that the knowledge of ordinary artisans should fill the claim limitations missing from the '180 specification—precisely what the Federal Circuit has held cannot be done. Mondis also effectively concedes the specification lacks support for the subject claim limitation, and it relies on unrelated patents (which disclose others' inventions, not those of the inventors here) and speculation to supply the missing subject matter. The asserted claims are not adequately supported by the specification, and none of Mondis's arguments indicate otherwise. Accordingly, LGE respectfully requests that its motion be granted.

I.  ARGUMENT

  A.  LGE does not need expert testimony to prevail on its motion

As a preliminary matter, Mondis devotes nearly four pages of its Opposition Brief to discussing a "missing" expert declaration. Courts routinely grant summary judgment motions for lack of written description without expert testimony from the movant or otherwise when the non-

---

[1] 857 F.3d 1315 (Fed. Cir. 2017) (citing *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571 (Fed. Cir. 1997)).

movant has submitted uncontested expert testimony. In fact, the Federal Circuit has explained repeatedly that "a patent can be held invalid for failure to meet the written description requirement, based solely on the language of the patent specification." *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 927 (Fed. Cir. 2004) (citing *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1246 (Fed. Cir. Sept. 2002). *See also Cisco Sys. v. Cirrex Sys., LLC,* 856 F.3d 997, 1009 (Fed. Cir. 2017) ("We also agree with Cisco that the claims are directed to subject matter that is indisputably missing from the…specification."). This argument is thus unavailing.

    **B.**  **Mondis's expert declaration fails to establish a genuine issue of material fact**

Mondis's expert declaration fails to establish a genuine issue of material fact and is ultimately self-defeating. All but conceding the specification's lack of literal support for the subject claim limitation, Mondis relies on the declaration of its expert, Joseph Lamm, and unrelated prior art to contend that a person of ordinary skill in the art (PHOSITA), upon reading the specification, would have understood that the applicants invented a display that stores an "identification number" that identifies a "type" of display (a display "type" ID number). As the specification contains no disclosure leading directly to this conclusion, Mondis is forced to first establish that a PHOSITA would have understood the specification to disclose: (1) different "types" of displays; (2) that different display "types" require different input signals; and (3) the need to resolve compatibility issues caused by different display and signal "types." Based on these tenuous assumptions, Mondis then concludes that a PHOSITA would have understood the specification to require a display "type" ID number.

Mondis's attempted proof fails for two reasons. *First*, the preliminary contentions are largely unsupported and constitute little more than an attempt by Mondis to recast the '180 patent using select citations from the specification and unrelated prior art. *Second*, at best, Mondis has established that the claimed invention would have been obvious to a PHOSITA,

2

which is insufficient as a matter of law.

### 1. Mondis's characterization of the '180 patent specification as describing "different 'types' of displays" is unsupported

Mondis's contention that the '180 patent describes "different types of displays" is not supported by the disclosure on which it relies. *First*, Mondis cites column 1, lines 42-42 from the "Background of the Invention," which relates specifically to prior art, not the claimed invention:

> A microcomputer or a memory LSI is used to provide a most suitable display image for each video signal as this **type** of display device. Such a prior art is indicated in Japanese Patent Application Laid-Open No. 1-321475.

'180 Patent at 1:42-43 (emphasis added). To be clear, and as explained in LGE's Opening Brief (Dkt. 215 at 13), this is the **only** instance in which the specification uses the word "type" in the context of a display. Extrapolating from this isolated statement that a PHOSITA would have interpreted the specification as "**describ[ing]** different 'types' of displays" is unreasonable.

*Second*, though Mr. Lamm is correct that the specification references a "cathode-ray tube (hereinafter called a CDT (color display tube))" display and a "liquid crystal display" (LCD), these two "types" of displays are discussed in different contexts and **never** to distinguish "types" of displays to ensure compatibility. Mr. Lamm acknowledges as much: "the LCD display…is a secondary display that is part of the display unit and is used to display error and fault information." Lamm Dec. at ¶ 17 (citing '180 Patent at 8:65-9:3); *see also* '180 Patent at Figs. 9 (LCD 34). In other words, the LCD is not the **claimed** display.

### 2. The '180 patent specification does not describe the use of different input signals for different display "types"

Mondis's contention that a PHOSITA would have "understood that displays of different types need different kinds of input signals in order to properly display an image" is also unsupported. *See* Dkt. 221 at 15. Indeed, the crux of Mondis's reasoning for this proposition is predicated on two unrelated prior art patents—U.S. Patent Nos. 5,222,212 and 6,118,413—not

3

the '180 patent. The disclosure from the '180 patent Mondis cites mentions no such requirement and is irrelevant to the claimed invention.

Mondis again relies on the disclosure regarding LCD display 34 from Fig. 9, explaining "[t]he fact that the controller driving the LCD screen is expressly named an 'LCD controller' indicates that it is specifically configured to output signals compatible with LCD-type displays." *Id.* at 16. From this, Mondis infers that "the '180 specification makes clear that the inventors understood that different display types, such as CRT and LCD, required different drive signals to display an image." *Id.* Notwithstanding the logical leap necessary to arrive at this conclusion, as noted previously, the LCD display in Fig. 9 is **not** the display recited in claim 14, or any other claim of the '180 patent. It does not store, receive, or communicate an "identification number," much less one that identifies a "type" of display. Rather, LCD display 34 is a secondary display that shows fault and error information. *See* '180 Patent at 8:65-9:1. The LCD display is not disclosed as being capable of displaying the actual video image.

### 3. Mondis's characterization of the '180 patent as addressing compatibility concerns caused by different "types" of displays and signals is not supported by the disclosure on which it relies

Despite the foregoing issues, Mondis contends, incorrectly, that it would have been "clear to a PHOSITA that the '180 specification described this potential compatibility problem and was directed at a solution." Dkt. 221 at 16. Yet again, Mondis relies on LCD 34 and Fig. 9, arguing that "[b]y illustrating the two different display types being driven by different types of controllers, the inventors demonstrated that they were cognizant that cathode ray tube type displays and LCD type displays required different kinds of signals…." *Id.* at 17. Yet again, Mondis fails to mention that the LCD display is a secondary display for showing fault and error information, and not the **claimed** display.

4

### 4. Mondis's conclusion that a person of ordinary skill in the art would have understood the specification's "identification number" to be a display "type" ID is incorrect

Based on the above assumptions, Mondis concludes that a PHOSITA would have necessarily recognized the specification's ID number as identifying a "type" of display, not just the display itself. This conclusion is factually and legally incorrect.

The specification never discusses a display "type" ID number, much less enabling communication with different "types" of displays based on one. Mondis's use of prior art to fill this gap is unavailing. At most, Mondis's attempted proof establishes that a PHOSITA would have found it obvious to use a display "type" ID number. That is not enough. "The knowledge of ordinary artisans may be used to inform what is actually in the specification…but not to teach limitations that are not in the specification, even if those limitations would be rendered obvious by the disclosure in the specification." *Rivera,* 857 F.3d at 1322.

*Rivera* is analogous. There, the central issue was whether the specification's disclosure of a "pod" supported a claimed "container…adapted to hold brewing material." *Id.* at 1319. The ITC held there was no written description support because the specification "did not disclose a container that itself was a pod or that contained **an integrated filter**." *Id.* (emphasis added). On appeal, Rivera argued that a PHOSITA could have supplemented the specification to provide adequate support. Specifically, Rivera argued that a PHOSITA would have recognized the need for some type of filter in the cartridge; a PHOSITA would have been aware of the availability of an integrated filter; and nothing in the patent limited the use of the filter. *Id.* at 1322. Based on this, Rivera argued that the specification adequately supported the integrated filter. The Federal Circuit disagreed, noting that "[t]he specification here does not teach a container with an integrated filter, and so, does not provide written description support for such a container, even if that type of container might be rendered obvious by the specification" and "nothing in

5

the…patent disclosure indicates the possibility of a cartridge with an integrated filter." *Id.*

Mondis presents a similar argument to that rejected in *Rivera*, namely, that the '180 patent specification contains adequate support for the display "type" ID number because a PHOSITA would have been aware of different types of displays, signals, and related compatibility issues. But there is no disclosure in the '180 patent that indicates even the possibility of a display "type" ID number. Mondis cannot proffer conclusory statements from an expert to fill undisclosed gaps that are neither essential nor implied.[2]

### C. Mondis's response to LGE's analysis fails to establish literal, implicit, or inherent support for the display "type" ID number

Mondis chastises LGE for "focus[ing] on individual preferred embodiments" in a misguided attempt to cast the "Summary of the Invention" as supporting the display "type" ID limitation. As an initial matter, LGE's Opening Brief appropriately walks through every aspect of the '180 patent disclosure, including **all** eight embodiments disclosed in the specification (*i.e.*, not just "individual preferred embodiments") **and** every instance in which the word "type" is used. LGE's analysis is comprehensive, whereas Mondis relies on speculation. Mondis's analysis of the "Summary of the Invention" is no exception.

#### 1. Mondis's citations to the "Summary of the Invention" do not disclose or suggest a display "type" ID number

Mondis's argument that the "Summary of the Invention" explains what the "Description of the Embodiments" does not—the display "type" ID number—is not supported by the disclosure. Mondis argues "that at least one of the exemplary embodiments, as well as the Summary of the Invention, would have been understood by one of ordinary skill to imply the use

---

[2] *See Maytag Corp. v. Electrolux Home Prods. Inc.,* 448 F. Supp. 2d 1034, 1073-74 (N.D. Iowa 2006) ("the test…is…whether 'one skilled in the art would clearly understand that it was not only important, but essential to [the patentee's] invention, for the limitation in question to be present.'").

of a display type ID." Dkt. 221 at 22 (citing Lamm Dec. at ¶¶ 30-32). Yet, the disclosure on which Mondis relies, column 5, lines 16-17, does not even suggest a display "type" ID number:

> Furthermore, the aforementioned communication function is used for adjustment at a factory. In this case, necessary information is all written into the **memory 9 in the display device 6**."

'180 Patent at 5:15-17 (emphasis added). *See also id.* at Fig. 2. Memory 9 is depicted in Fig. 2 as storing "Registered ID Numbers" and other irrelevant data—not a display "type" ID number.

Nevertheless, based on the above and the "compatibility objective of the '180 patent and the description of different display types," Mondis contends that a PHOSITA "would have understood the memory to include a display type ID so that compatible signals could be generated for each type of connected display." Dkt. 221 at 23. In other words, Mondis argues that this brief excerpt effectively discloses using a display "type" ID number—the purported novel feature of the invention based on the prosecution history.

### 2. None of the uses of "identification number" in the "Summary of the Invention" pertain to or suggest identifying a "type" of display

In any event, the "Summary of the Invention" does **not** otherwise disclose or suggest an identification number for identifying "at least a type of" display. The term "identification number" appears seven times in the "Summary of the Invention." '180 Patent at 2:53; 2:55-56; 3:8-9; 3:10; 3:14-15; 3:16; 3:19. The first two instances pertain merely to the storage of the "identification number" in memory. *Id.* at 2:53; 2:55-56. The next two pertain to the comparison of "identification numbers" stored in a computer and those stored in an information output device (*e.g.*, a display), and ensuing control of the output device if there is a match. *Id.* at 3:8-9; 3:10. The last three pertain to comparing the "identification numbers" stored in the computer and information output device, and ensuing communication if there is a match. *Id.* at 3:14-15; 3:16; 3:19. None of these uses pertains to or suggests a display "type" ID number.

7

Thus, Mondis's argument that the invention summary "would have indicated to a PHOSITA at the time that the ID number enables such communication by indicating to the computer the type of display, so that compatible signals could be generated by the computer" is conclusory and based on nothing discernible from the specification. *See Maytag*, 448 F. Supp. 2d at 1076 (rejecting "unsupported expert opinions that [would] be of no assistance to the trier of fact" as creating genuine issue of material fact); *see also* Dkt. 221 at 23 (citing Lamm Dec. ¶ 30).

### 3. The specification only discloses "identification numbers" that identify <u>particular</u> displays having the same structure

As explained in LGE's Opening Brief (Dkt. 215 at 17-18), the specification expressly covers an embodiment in which the ID number identifies individual displays. There is no embodiment in which the ID number identifies a display "type." Mondis's position that a person of ordinary skill in the art would find that the specification was confined to functionality that is neither disclosed or suggested is untenable.[3]

Only the specification's third embodiment involves a plurality of displays. *See* '180 Patent at 7:13-18, Figs. 5 and 6. There, the three displays, 6B, 6C, and 6D, are assigned ID numbers 1, 2, and 3, respectively. These displays are described as "having the **<u>same structure</u>**"—not as different "types." *Id.* at 7:14-15 (emphasis added). For these identification numbers to serve any purpose, they must do more than simply identify the "type" of display— they must identify the particular, specific displays themselves, which is precisely what the claims required before they were amended. By comparison, there is no disclosure or suggestion of identifying displays by their "type"—via an "identification number" or any other means.

---

[3] *See Maytag*, 448 F. Supp. 2d at 1073-74 ("the test…is…whether 'one skilled in the art would clearly understand that it was not only important, but essential to [the patentee's] invention, for the limitation in question to be present.'").

8

### D. Mondis has no credible means of explaining or refuting its concession that the specification does not support the display "type" ID limitation

Mondis seeks to overcome its concession regarding the display "type" ID limitation, but its explanation is unavailing. As an initial matter, Mondis does not dispute that the '180 and '342 patents share materially identical specifications. Dkt. 222 at ¶ 27. Thus, the central question is whether Mondis argued during reexamination that the '342 patent specification fails to support an identification number that identifies a "type" of display. If so, Mondis has conceded that claims 14-16 lack adequate written description support. The only plausible interpretation of the pertinent documents is that Mondis made such a concession.

*First*, it is irrelevant that Mondis's interpretation of the specification was in reference to a claim limitation. Mondis explained the bounds of what the **specification** covers. Mondis was careful to note that the Examiner's reference to "type"— namely, "an identification number of a particular monitor type; and an identification number of a particular monitor in which there are a plurality of monitors of the same type"—is neither supported by the "**specification** nor the claim." Dkt. 215, Ex. F, Dec. 2, 2014 OA at 8. In other words, Mondis was clear that the **specification** does not support a display "type" ID number.

*Second,* Mondis's attempt to limit its concession to the specific disclosure relied upon by the Examiner ('342 patent at 6:1-11) is belied by Mondis's own words. Mondis did not confine its argument to a particular context: "Patent Owner disagrees with the first part because neither the specification nor the claim supports Examiner's reference to 'type.'" *Id.* Though Mondis addressed the disclosure cited by the Examiner in the next paragraph of its response, Mondis concluded that paragraph by addressing a different part of the specification (unaddressed by the Examiner) to provide a general characterization of the '342 patent disclosure:

> [T]he passage relied upon by the Examiner immediately follows the discussion of preventing "careless control" **('342, 5:64-65)**, which as explained above necessitates that

9

>the identification number not simply identify the type of monitor, but that it identify a particular unit. In other words, in an office or other situation where there may be many monitors of the same type, the goal of preventing careless control can only be achieved where you can distinguish between individual **units** of the same type, and **not just types** of units.

*Id.* at 9 (emphases added).

*Third*, Mondis's statement that "written description support was not at issue at all" is misplaced. Mondis challenged the Examiner's interpretation of the '342 patent specification—*i.e.,* that the '342 patent supports an identification number that identifies a particular monitor "type." That a written description rejection was not pending is irrelevant, particularly as 35 U.S.C. § 112 challenges are not permitted during reexamination.

*Finally*, Mondis does not contest that the '180 patent specification fails to provide a definition for the word "type"—ordinary, special, or otherwise—but at the same time argues that the specification discloses many different "types" of displays. This argument is misleading. The specification discloses a primary display that happens to be a CDT display and a secondary display which happens to be an LCD display. The specification does not refer to these as different "types," or otherwise describe functionality in which one is distinguished over another.

### E. Mondis's characterization of the prosecution history is inaccurate

Mondis's attempt to spin the prosecution history in its favor is not credible. Mondis does not dispute that (1) the applicants and the Examiner failed to identify any support within the specification for an "identification number for identifying **at least a type of**...display," or (2) the corresponding amendment served as a reason for allowance.[4] Instead, Mondis argues that

---

[4] *See* Dkt. 222 at 4 ("Not disputed that applicants did not identify any support within the specification for this amendment in their May 4, 2007 written response."); *id.* ("Not disputed that the Examiner did not identify support within the specification for the May 4, 2007 amendment in the written Notice of Allowance."); *id.* at 5 ("Mondis does not dispute that the amendment served as a reason for allowance…").

10

because the limitation was added via amendment following an Examiner Interview, the claims are entitled to a stronger presumption of validity. This position is belied by controlling precedent.

The Federal Circuit has "dispel[led] the notion that the failure of the PTO to issue a new matter rejection automatically creates an 'especially weighty presumption' of compliance with the written description requirement." *ICN Photonics, Ltd. v. Cynosure, Inc.*, 73 Fed. Appx. 425, 430 (Fed. Cir. 2003) (unpublished); *cf. AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1245 (Fed. Cir. 2003) ("[W]e dispel the notion that the failure of the PTO to issue an enablement rejection automatically creates 'an especially weighty presumption' of compliance with 35 U.S.C. § 112."). For example, in *Carrier Vibrating Equipment, Inc. v. General Kinematics Corp.*, the court rejected the plaintiff's argument that the PTO's allowance of two claims added during prosecution necessarily meant that the claims were supported by the specification. 2012 WL 4483805, at *7 (N.D. Ill. Sept. 27, 2012) (relying on *ICN Photonics* and *AK Steel*). The court explained that "because compliance with § 112 is a factually intensive inquiry…the amount of deference that the PTO examiner's action deserves must be evaluated on a case-by-case basis." *Id.* In this instance, the court concluded that because the plaintiff's expert admitted that the PTO allowed the added claims "without comment" there was "no reason for the Court to conclude that the PTO examiner's decision deserves any more deference than the typical presumption of validity that must be overcome by clear and convincing evidence." *Id.*

This Court is confronted with a similar situation. During prosecution, the applicants amended claim 14 to require that the identification number identify "at least a type of" display—not just the display itself. In that amendment, and as conceded by Mondis, the applicants did not identify support for the new limitation. Nor did the Examiner identify any support for the limitation in any subsequent papers. In short, the prosecution history does not contain any document explaining where this limitation is supported in the specification. In view of Mondis's

11

above concession and subsequent failure to identify any support in the specification for the subject limitation, this Court should not afford the patent a "enhanced" presumption of validity.[5]

## II. CONCLUSION

For the foregoing reasons, LGE respectfully requests that the Court enter summary judgment in its favor and find asserted claims 14-16 invalid for lack of written description.

Dated:  September 7, 2017

*s/ Liza M. Walsh*
Liza M. Walsh
Selina M. Ellis
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, New Jersey 07102
(973) 757-1100

*Of Counsel:*
Jamie B. Beaber (admitted *pro hac vice*)
William J. Barrow (admitted *pro hac vice*)
Anita Y. Lam (admitted *pro hac vice*)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
(202) 263-3000

*Attorneys for Defendants
LG Electronics, Inc. and
LG Electronics U.S.A., Inc.*

---

[5] Regardless, Mondis appears to acknowledge in its Opposition Brief that LGE's burden of persuasion on summary judgment—clear and convincing evidence—remains unchanged. *See generally* Dkt. 221.