UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONDIS TECHNOLOGY LTD.,<br><br>       Plaintiff,<br>v.<br><br>LG ELECTRONICS, INC. and<br>LG ELECTRONICS U.S.A., INC.,<br><br>       Defendants. | Civil Action No.: 15-CV-4431 (SRC) (CLW)<br><br>**OPINION & ORDER** |

**WALDOR, United States Magistrate Judge**

This matter comes before the court upon a motion by Movant, Mondis Technology Ltd. ("Mondis"), for a protective order and to quash subpoena Defendants, LG Electronics, Inc. and LG Electronics U.S.A., Inc. ("LG"), served upon Mondis' trial-counsel Jeffery Plies ("Mr. Plies"). The Court heard oral argument on this matter on August 4, 2017 and, for the reasons set forth below, the Court denies the motion.

**I. Background**

On June 21, 2014, Plaintiff, Mondis, filed its Complaint in the underlying litigation against Defendants, LG, in the Eastern District of Texas for patent infringement on five patents, including U.S. Patent No. 7,475,180 (the "180 patent"). (*See* Docket No. 2:17-cv-2531, Quash Brief, ECF No. 1 (henceforth "Quash Brief"), at 1; *see also* Docket No. 2:17-cv-2531, Opp. Brief, ECF No. 5 (henceforth "Opp. Brief"), at 3). However, on January 28, 2015, LG moved to transfer the case to the District of New Jersey and in June of that year the case was transferred. (*See* Docket No. 2:15-cv-4431, Motion to Change Venue, ECF No. 24).

On May 12, 2014 and November 3, 2014, LG filed separate petitions for *ex parte* reexamination at the Patent Office ("PTO") against the originally asserted patents, which resulted

1

in the cancellation of the asserted claims of all but the '180 patent. (Quash Brief, at 1; Opp. Brief, at 3).

In response to LG's petitions for *ex parte* reexaminations, Mondis' attorney, Scott Warren, filed an office action response on May 11, 2015, which relied on a Declaration from Mondis Director Michael Spiro. (Opp. Brief, at 3). The office action response stated: "[s]ignificantly, the '180 patent has been licensed to all of the world's major manufacturers of display units" (*Id.*) The original statement in the declaration of Mr. Spiro says: "[a]ll of the world's major display makers have now taken licenses for the Patents." (Quash Brief, at 2). LG alleges that Mondis' statements to the PTO were demonstrably false as Mondis had acknowledged in the underlying litigation that several manufacturers of display units had not licensed the asserted patents. (Opp. Brief, at 3). LG brought this to Mondis' attention on July 24, 2015. (*Id.*) In an attempt to fix this misrepresentation made by Mr. Spiro, Mondis submitted a supplemental declaration stating that "all of the world's major computer monitor makers – *i.e.*, those with more than 5% global market share" had taken a license. (*Id.* at 4.) This declaration was submitted as part of an Information Disclosure Statement (IDS) that consisted of more than 1,500 pages. (*Id.*)

On October 31, 2016, LG filed an Amended Answer alleging as both an affirmative defense and a counterclaim that Mondis had committed inequitable conduct at the PTO during reexamination of the '180 patent. (Opp. Brief, at 4) The District of New Jersey recognized that additional discovery would be needed on the new inequitable conduct allegations. (*Id.*). As a result, LG sent letters to Dechert LLP, the law firm representing Mondis, listing 24 Dechert attorneys and patent agents it intended to subpoena and depose. (Quash Brief, at 3). LG alleges that in requesting that Mondis identify the role of the 24 attorneys/agents of record, it was their hope to minimize any potential interference for Mondis and its attorneys and to avoid being overly

burdensome. (Opp. Brief, at 4). Mondis responded to those letters by stating that "proper procedure would be to proceed with [Mr. Spiro's] deposition first and then evaluate whether any relevant non-privileged information remained that would warrant the depositions of Dechert attorneys." (Quash Brief, at 3). LG refused Mondis' proposal and Mondis identified four past and present Dechert attorneys who performed work on the reexamination involved in LG's inequitable conduct claim. (*Id.*) Mondis stated its position that deposing Mr. Plies, the presently co-lead trial counsel for Mondis, who has represented Mondis regarding the '180 patent for the past eight years, would be improper. (*Id.*)

On February 2-3, 2017, LG served deposition subpoenas on the four Dechert attorneys: Vincent Gallo, Derek Brader, Scott Warren and Jeffery Plies. (*Id.*) On February 7 and 10, 2017, Mondis and LG met and conferred regarding the subpoenas. (*Id.*) Mondis identified the PTO submissions that Derek Brader worked on; confirming that he did not have any knowledge relevant to the new allegations. LG withdrew that subpoena. (Opp. Brief, at 5). With respect to Mr. Warren, Mondis permitted LG to question him to the extent he could answer any non-privileged questions. (Quash Brief, at 4). During the meet and confer Mondis reiterated that it was improper for LG to depose Mr. Plies, the co-lead trial counsel for Mondis on the case at hand. (*Id.*).

To date, LG has taken the depositions of Mr. Spiro, Mr. Warren, and Mr. Gallo. (Docket No. 2:15-cv-4431, ECF No. 201, at 6). The issue stands as to whether or not LG should be allowed to depose Mr. Plies. Mondis moved to quash the subpoena served on Mr. Plies in the Eastern District of Texas on February 16, 2017. That action was moved to the District of New Jersey and eventually both matters were consolidated under the current Docket Number 15-cv-4431.

**II.     Legal Standard**

Under Rule 26, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also In re Ex Parte Global Energy Horizons Corp.*, 647 F. App'x 83, 86 (3d Cir. 2016) (courts only allow "discovery [that] appears reasonably calculated to lead to the discovery of admissible evidence"). The movant bears the burden of persuasion in a motion to quash a subpoena and for a protective order. *Jones v. Hirschfeld*, 219 F.R.D. 71, 74-75 (S.D.N.Y 2003); *see also Sea Tow Intern., Inc. v. Pontin*, 246 F.R.D. 421, 424 (E.D.N.Y. 2007); *see also Memory Bowl v. North Pointe Ins. Co.*, 280 F.R.D. 181, 185 (D.N.J. 2012) (stating that the party seeking a protective order usually bears the burden of persuasion). If the subpoena falls outside the scope of permissible discovery, "requires disclosure of privileged or other protected matter," or "subjects a person to undue burden," the Court has the authority to quash or modify it upon a timely motion by the party served. Fed. R. Civ. P. 45(d)(3).

LG's inequitable conduct claim is based on Mr. Spiro's allegedly false statements in his declaration and the related office action response filed with the PTO. (Opp. Brief, at 1-2). Mr. Plies as the attorney who assisted Mr. Spiro in drafting the statement necessarily has some relevant knowledge under Rule 26, but there is an added layer of analysis given that LG is seeking to take the deposition of an attorney. Although there is no prohibition against deposing adverse counsel regarding relevant and non-privileged material, courts take great care when receiving these requests. *Younes v. 7-Eleven, Inc.*, No. 13-3500, 2015 WL 12843884, at *2 (D.N.J. Mar. 11, 2015); *see also In re Matter of Subpoenas Served on Collins*, No. 14-934, 2014 WL 12586370, at *3 (W.D. Tex. Nov. 7, 2014) (stating that federal courts generally dislike the practice of deposing a party's attorney).

4

This District, like many others, uses the *Shelton* factors when considering whether an attorney should be deposed. There are three factors that must be satisfied when determining whether to depose opposing counsel: "(1) no other means exist to obtain the information, (2) the information sought is relevant and non-privileged, and (3) the information sought is crucial to the preparation of the case." *Stepanski v. Sun Microsystems, Inc.*, No. 10-2700, 2011 WL 8990579, at *15 (D.N.J. Dec. 9, 2011), *report and recommendation adopted*, No. 10-2700, 2012 WL 3945911 (D.N.J. Sept. 10, 2012) (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)).

## II. Discussion

The Federal Circuit has held that a patent is unenforceable when an inequitable conduct claim is present. *Genal Stap, Inc. v. Dar*, No. 2004-1691, 2006 WL 525794, at *2 (E.D.N.Y. Mar. 3, 2006). Inequitable conduct requires a showing that "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009). A breach of this duty constitutes inequitable conduct. *Auxilium Pharmaceuticals, Inc. v. Watson Laboratories, Inc.*, No. 12-3084, 2013 WL 5503209, at *2 (D.N.J. Oct. 2, 2013). An inequitable conduct claim must be pled with extreme particularity such as identifying who, what, where, when, and how of the material misrepresentation and alleging sufficient facts that allow the courts to infer that the party held the requisite state of mind. *Id.* at *3.

The Court considers each *Shelton* factors within the context of proving an inequitable conduct claim. Specifically, the present motion turns on whether: (1) the information that LG

5

seeks from Mr. Plies can be obtained through other means, (2) the information is relevant and non-privileged, and (3) the information is crucial to the case.

### A. *There are No Other Means to Obtain the Information*

Mondis is arguing that there are other sources available for LG to obtain this information. (Quash Brief, at 13). However, there is no case law indicating that LG must exhaust every available option before requesting the deposition of Mr. Plies. *See Alcon Laboratories, Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 341-43 (S.D.N.Y. 2002) (court held that respondent did not need to exhaust every available avenue for testimony when the information was exclusively with one individual). Furthermore, LG has already attempted other methods to obtain information such as interrogatories and letters to Mondis directly. (Opp. Brief, at 13). LG also deposed Mr. Warren and Mr. Gallo, who confirmed Mr. Plies was the only attorney that worked on preparing both declarations concerning the false statement. (Docket No. 2:15-cv-4431, ECF No. 198, at 6).

Similarly, in *Alcon* the court denied the movant's motion for a protective order and an order quashing the subpoena served on lead trial counsel for the movant. Respondent subpoenaed counsel for a deposition on issues concerning the inventorship of the disputed patent and representations made to the PTO. *Alcon*, 255 F. Supp. 2d at 342. Counsel's name was the one that showed up on the patent application so, the court determined that it was likely the case that counsel was the only and best source for much of the information sought. *Id.* at 343. In this instance, Mr. Gallo stated in his deposition that Mr. Plies was the only attorney involved in drafting the supplemental Spiro declaration, correcting the alleged false statement. (Docket No. 2:15-cv-4431, ECF No. 198, at 6.) Therefore, Mr. Plies would be the best source for the information that LG is seeking regarding the '180 patent and the declaration by Mr. Spiro.

B.  *The Information is Relevant and Non-Privileged*

Patent prosecutions present a different set of difficulties regarding the application of attorney-client privilege because of the technical nature of much of the communications and each decision is considered on a case-by-case basis. *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 184 (D.N.J. 2003); *TransWeb, LLC v. 3M Innovative Properties Co.*, No. 10-4413, 2012 WL 2878076, at *5 (D.N.J. Apr. 12, 2012), *report and recommendation adopted as modified*, No. 10-4413, 2012 WL 2878075 (D.N.J. July 13, 2012). "Federal Circuit law governs with respect to issues unique to substantive patent law, including whether particular materials are discoverable." *In re Gabapentin Patent Litig.*, 214 F.R.D. at 182. Attorney-client privilege applies to documents if the overall purpose of the documents indicates that it is a request of legal advice or services. *TransWeb, LLC*, 2012 WL 2878076, at *5; *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000).

The work-product doctrine, often analyzed in tandem with attorney-client privilege, protects "materials prepared by an attorney (or his agent) in anticipation of litigation or for use at trial." *In re Gabapentin Patent Litig.*, 214 F.R.D. at 182. Federal Rule 26(b)(3) codifies the protection indicating "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." The Rule carves out an exception to this protection "depending on the nature and availability of the information sought and upon a showing of the adversary's need." *In re Gabapentin Patent Litig.*, 214 F.R.D. at 183.

The party asserting the protection bears the burden of showing the documents were prepared in anticipation of litigation. *Id.* Courts in the Third Circuit have used a two-part test in making these determinations: (1) was the document prepared in anticipation of litigation; and (2)

was "the material produced because of the prospect of litigation and for no other purpose." *Id.* at 184. For example, documents "created for other purposes that prove useful in subsequent litigation are not attorney work product." *Id.* Even when a showing is made of anticipated litigation whether the document is protected by the work product privilege "depends primarily on the reason or purpose for the documents' production." *Id.* And even when work product protections apply, courts "may nevertheless order factual material produced 'upon a showing of substantial need and inability to obtain the equivalent without undue hardship.'" *In re Gabapentin Patent Litig.*, 214 F.R.D. at 183 (citing *Upjohn Co. v. United States,* 449 U.S. 383, 400 (1981)).

This balance is particularly challenging in patent cases were inequitable conduct claims have been alleged. "[M]ultiple jurisdictions recognize that mental impressions of the prosecuting patent attorney are not only relevant, but possibly crucial, to an inequitable conduct defense in subsequent litigation over that patent." *V. Mane Fils, S.A. v. Int'l Flavors & Fragrances Inc.,* No. 06-2304, 2008 WL 3887621, at *3 (D.N.J. Aug. 20, 2008). Often in these instances the court will allow the deposition with the possibility of the attorney claiming privilege with respect to certain questions. Courts have found that "a blanket prohibition on a deposition is inappropriate, especially considering that patent prosecutors are regularly deposed in subsequent patent litigation." *Id.* at *4. Excusing a witness from being deposed at all requires the court to "rule in a vacuum . . . that every question to be asked will seek to elicit privileged information" as such courts have found that "absent extraordinary circumstances, an order prohibiting the taking of a deposition altogether would likely be in error." *Frieman v. USAir Group*, 1994 WL 675221, at *6 (E.D. Pa. Nov. 23, 1994) (internal citations omitted).

The affirmative defense of inequitable conduct makes counsel's "mental impressions during the reexamination proceedings an issue in this litigation." *Environ Prod., Inc. v. Total*

*Containment, Inc.*, No. 95-4467, 1996 WL 494132, at *4 (E.D. Pa. Aug. 22, 1996) (allowing trial counsel to be deposed when he was the one who handled the reexamination proceedings in question). "A party is entitled to discover relevant, non-privileged information from any individual with access to such information, even when that individual is the opposing party's trial counsel." *Id.* Courts have found that "impressions protected by the work-product doctrine may be" discoverable when relevant and the need is compelling, finding a compelling need exists "whenever information is in the exclusive control of the party from whom discovery is sought." *Id.*

Mondis claims that the deposition of Mr. Plies could involve "substantial non-discoverable and privileged information." (Opp. Brief, at 11). While this may be true, it is unreasonable to conclude that all of Mr. Plies' testimony would be privileged. Mondis' argument that Mr. Plies' mental impressions are protected is flawed and as indicated by the deposition of Mr. Gallo, Mr. Plies is the only individual who can attest to certain information regarding the inequitable conduct claim. If certain questions are asked that are privileged, Mr. Plies will be free to object. *V. Mane Fils, S.A.*, 2008 WL 3887621 at *4.

C.   *The Deposition of Mr. Plies is Crucial to the Inequitable Conduct Claim*

The final *Shelton* factor, similar to the work product analysis, considers how crucial Mr. Plies deposition is to the inequitable conduct claim. As indicated, an inequitable conduct claim requires proof of both materiality and an intent to deceive the PTO. *Exergen,* 575 F.3d at 1327.

Under the materiality prong, the party seeking an inequitable conduct claim must show but-for materiality. *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011). LG must show that but-for the allegedly false statement in the declaration, the patent claims would not have been confirmed by the PTO. *Id.* The court can infer an intent to deceive the PTO

when there has been a "pattern of lack of candor," such as when the individual repeatedly makes knowingly false factual representations. *Regeneron Pharmaceuticals, Inc. v. Merus B.V.*, 155 F. Supp. 3d 530, 561 (S.D.N.Y. 2015). Although the facts of the case here do not demonstrate a pattern of lack of candor as there has only been one misrepresentation, a court has found that a false affidavit raises strong inference of intent to deceive. (Opp. Brief, at 8); *Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1345 (Fed. Cir. 2013). Because Mr. Plies was the only attorney working on both declarations, he is the best source for information and his deposition is the only way to discover his mental impressions relevant to the inequitable conduct claim.

## III. Conclusion

LG is able to satisfy the three-prong doctrine that the court utilizes when determining whether opposing counsel should be deposed or not. LG used other means to try and find the information pertaining to the inequitable conduct claim regarding the alleged false statement in Mr. Spiro's declaration and is still left with unanswered questions. Since Mr. Plies is the best source of information, his mental impressions are not only crucial, but also relevant and non-privileged. As case law indicates, the work product doctrine does not preclude Mr. Plies from being deposed in the first instance. If certain questions during his deposition are deemed privileged, Mr. Plies will have the opportunity to object at that time, but in inequitable conduct cases courts are more willing to allow the deposition of trial counsel when he is the sole source of relevant information. For the foregoing reasons, the motion for a protective order and to quash the subpoena served upon Mr. Plies by LG is denied.

*s/Cathy L. Waldor*
Dated: September 19, 2017　　　　**CATHY L. WALDOR**
**United States Magistrate Judge**