# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

MONDIS TECHNOLOGY LTD.,

        Plaintiff,

v.

LG ELECTRONICS INC. and
LG ELECTRONICS U.S.A., INC.,

        Defendants.

Civil Action No. 15-04431(SRC/CLW)

*Electronically Filed*

**<u>REDACTED VERSION</u>**

---

## **MEMORANDUM IN SUPPORT OF THE LG DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION <u>BASED ON MONDIS'S LACK OF PRUDENTIAL STANDING</u>**

*Of Counsel:*

Michael J. McKeon (*pro hac vice*)
Christian A. Chu (*pro hac vice*)
R. Andrew Schwentker (*pro hac vice*)
Jared Hartzman (*pro hac vice*)
Ryan Teel (*pro hac vice*)
FISH & RICHARDSON P.C.
1000 Maine Ave. SW, Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Liza M. Walsh
Selina M. Ellis
WALSH PIZZI O'REILLY
FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, NJ 07102
Phone: (973) 757-1100
Fax: (973) 757-1090

*Attorneys for Defendants*
*LG Electronics Inc. and*
*LG Electronics U.S.A., Inc.*

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................1

II.     FACTUAL BACKGROUND ...............................................................2

    A.      Nature and Stage of the Proceeding ......................................2

    B.      The October 30, 2007 Mondis-Hitachi Transaction ............................2

        1.      The Patent Sale Portion of the PSAL Agreement.....................3

        2.      The Patent License Agreement in Annex 4 ...............................4

        3.      Subsequent Amendments to Annex 4's PLA ............................9

III.    LEGAL STANDARDS FOR A RULE 12(B)(1) MOTION.........................11

IV.     ARGUMENTS .................................................................................12

    A.      Overview of the Law of Standing ......................................12

    B.      Subject Matter Jurisdiction Cannot Be Waived.................................14

    C.      Labeling a Contract an "Assignment" or a "Patent Sale" Does not
        Confer Legal Title and Standing ......................................15

        1.      Controlling Law Eschews Labels to Focus on the Rights
            Actually Transferred ...........................................15

        2.      Mondis Lacks Legal Title to the '180 Patent............................20

    D.      Mondis Cannot Sue Alone Because It Lacks All Substantial Rights .25

        1.      Mondis Does Not Satisfy the "All Substantial Rights" Test ....25

            a)      The "licensee's purported right to bring suit, together
                with . . . any right to sue purportedly retained by the
                licensor" ......................................26

            b)      The "transfer of the exclusive right to make, use, and sell
                 products or services under the patent"............................27

            c)      The "scope of the licensee's right to sublicense"...........28

            d)      The "right of the licensor to receive a portion of the
                 recovery in infringement suits brought by the licensee"30

            e)      The "duration of the license rights granted to the
                 licensee" and the "nature of license provisions regarding
                 the reversion of rights" ................................31

f)    The "ability of the licensor to supervise and control the licensee's activities" ........................................................32

g)    The "obligation of the licensor to continue paying patent maintenance fees" ..........................................................32

h)    The "nature of any limits on the licensee's right to assign its interests in the patent" ...............................................33

i)    All of the *Mann* Factors Indicate that Mondis Lacks All Substantial Rights ...........................................................34

2.    Mondis Cannot Meet the "All Substantial Rights" Test by Claiming an Exclusive Right to Sue and License LG .............34

V.    CONCLUSION ..............................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A123 Sys., Inc. v. Hydro-Quebec*,
  626 F.3d 1213 (Fed. Cir. 2010) ..................................................13, 16

*Abbott Labs. v. Diamedix Corp.*,
  47 F.3d 1128 (Fed. Cir. 1995) ....................................................*passim*

*Abraxis Bioscience, Inc. v. Navinta LLC*,
  625 F.3d 1359 (Fed. Cir. 2010) ..........................................................11

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
  2016 WL 3186890 (D. Del. Jun. 3, 2016) ..................................*passim*

*Alfred E. Mann Found. for Scientific Research v. Cochlear, Ltd.*,
  604 F.3d 1354 (Fed. Cir. 2010) ..................................................*passim*

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
  434 F.3d 1336 (Fed. Cir. 2006) ..........................................................14

*Clouding IP, LLC v. Google Inc.*,
  61 F. Supp. 3d 421 (D. Del. 2014).............................................*passim*

*Crown Die & Tool Co. v. Nye Tool & Machine Works*,
  261 U.S. 24 (1923)......................................................................*passim*

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
  655 F.3d 1337 (Fed. Cir. 2011) ..........................................................30

*Diamond Coating Techs., LLC v. Hyundai Motor Am.*,
  2015 WL 2088892 (C.D. Cal. Apr. 1, 2015)..............................17, 31

*Diamond Coating Techs., LLC v. Hyundai Motor Am.*,
  823 F.3d 615 (Fed. Cir. 2016) .............................17, 18, 21, 23

*Evident Corp. v. Church & Dwight Co.*,
  399 F.3d 1310 (Fed. Cir. 2005) ..................................................12, 15

*Fairchild Semiconductor Corp. v. Power Integrations*,
  630 F. Supp. 2d 365 (D. Del. 2007)......................................37, 38, 39

iii

*Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*,
　　357 F.3d 1266 (Fed. Cir. 2004) ........................................................28

*FW/PBS, Inc. v. Dallas*,
　　493 U.S. 215 (1990)...........................................................................14

*Gotha v. United States*,
　　115 F.3d 176 (3d Cir. 1997) ..............................................................11

*Gould Elecs., Inc. v. United States*,
　　220 F.3d 169 (3d Cir. 2000) ..............................................................11

*Greenfield v. Philles Records, Inc.*,
　　98 N.Y.2d 562 (N.Y. 2002) ...............................................................21

*Hohn v. United States*,
　　524 U.S. 236 (1998)...........................................................................16

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
　　248 F.3d 1333 (Fed. Cir. 2001) ...................................................13, 34

*King Pharmas., Inc. v. Teva Pharmas. USA, Inc.*,
　　No. 05-3855, 2006 WL 3933091 (D.N.J. Jan. 22, 2007) .............20, 21

*Lans v. Dig. Equipment Corp.*,
　　252 F.3d 1320 (Fed. Cir. 2001) .........................................................13

*Mentor H/S, Inc. v. Med. Device All., Inc.*,
　　240 F.3d 1016 (Fed. Cir. 2001) .................................13, 15, 27, 30

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
　　549 F.2d 884 (3d Cir. 1977) ..........................................................5, 12

*Moyer v. United States*,
　　190 F.3d 1314 (Fed. Cir. 1999) .........................................................12

*Prima Tek II, L.L.C. v. A-Roo Co.*,
　　222 F.3d 1372 (Fed. Cir. 2000) ..................................................*passim*

*Propat Int'l Corp. v. Rpost, Inc.*,
　　473 F.3d 1187 (Fed. Cir. 2007) ...............................25, 30, 31, 33

iv

*Rite-Hite Corp. v. Kelley Co., Inc.*,
    56 F.3d 1538 (Fed. Cir. 1995) (en banc) ..................................................14, 25

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
    427 F.3d 971 (Fed. Cir. 2005) .........................................................29, 33, 37, 38

*Toshiba Corp. v. Wistron Corp.*,
    270 F.R.D. 538 (C.D. Cal. 2010) ........................................................38, 39, 40

*Toxgon Corp. v. BNFL, Inc.*,
    312 F.3d 1379 (Fed. Cir. 2002) ........................................................................11

*United States v. Hays*,
    515 U.S. 737 (1995)..........................................................................................14

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*,
    944 F.2d 870 (Fed. Cir. 1991) .........................................................15, 16, 31, 32

*W.W.W. Assocs. v. Giancontieri*,
    77 N.Y.2d 157 (N.Y. 1990) ..............................................................................21

*Waterman v. Mackenzie*,
    138 U.S. 252 (1891)..........................................................................................16

*Zucker v. Waldmann*,
    9 N.Y.S.3d 596 (N.Y. Supr. Ct. 2015)..............................................................22

## Statutes

35 U.S.C. § 281 .......................................................................................................13

## I.   INTRODUCTION

In 2007, Mondis and Hitachi entered into a transaction that purported to "assign" certain patents, including the '180 patent-in-suit, to Mondis.  But as part of this transaction, ███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████   When all of the factors enumerated by the Federal Circuit are considered, Mondis lacks substantial rights in the patent and thus lacks standing to sue in its own name.  Because Mondis is nothing more than a licensee without

standing to sue alone, this present lawsuit must be dismissed for lack of subject matter jurisdiction.

## II.    FACTUAL BACKGROUND

### A.    Nature and Stage of the Proceeding

This is a patent infringement case between plaintiff Mondis Technology Ltd. ("Mondis") and defendants LG Electronics Inc. and LG Electronics U.S.A., Inc. (together "LG") with respect to certain LG televisions.  Of the five originally asserted patents, only independent claim 14 and dependent claims 15 and 16 of U.S. Patent No. 7,475,180 ("the '180 patent") remain.

On September 20, 2018, as part of a meet and confer between the parties related to the preparation of the pretrial order, Mondis asked whether LG planned to challenge Mondis's standing in the case.  After examining the relevant facts and laws, LG's current counsel identified a significant standing problem in this case.  On October 2, 2018, LG notified Mondis about this concern by identifying this issue in the draft pretrial order, and adding a proposed pretrial motion challenging standing among the motions that LG contemplated submitting under the Court's schedule for filing pretrial motions.  In the pretrial order submitted to Magistrate Judge Waldor on October 24, 2018, the parties addressed the timing of this standing motion and agreed LG would file it earlier than other pretrial motions.

### B.    The October 30, 2007 Mondis-Hitachi Transaction

On October 30, 2007, Hitachi and Mondis entered into a thirty-page

agreement titled "Patent Sale, Assignment and License Agreement" (the "PSAL Agreement"). [



### 1.    The Patent Sale Portion of the PSAL Agreement





---

[2] All emphases have been added unless otherwise noted.





████████████████████████████████████████████

██████████████████████████████████

Mondis has not provided any other document purporting to qualify or amend the PLA or any rights under that agreement.  [Ex. F (Mondis's Resp. to Interrog. 3) (identifying all "patent assignments, related agreements and other documents related to the transfer of the Patents-in-Suit from Hitachi to Mondis").]

## III.   LEGAL STANDARDS FOR A RULE 12(B)(1) MOTION

Federal Rule of Civil Procedure 12(b)(1) addresses dismissal for lack of subject matter jurisdiction.  Although Federal Circuit law governs the standing inquiry, *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010), the procedural aspects of Rule 12(b)(1) are not unique to patent law and are thus governed by Third Circuit law in this case.  *See Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1380 (Fed. Cir. 2002).

Motions invoking Rule 12(b)(1) may present a facial or factual challenge to subject matter jurisdiction.  *See Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  In reviewing a factual challenge, the Court may consider evidence outside the pleadings "to resolve factual issues bearing on jurisdiction." *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  In a Rule 12(b)(1) factual challenge, "no presumptive truthfulness attaches to plaintiff's allegations,

11

and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891; *see also Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999) ("Fact-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged.").

As the plaintiff, Mondis bears "the burden of proof that jurisdiction does in fact exist." *Mortensen*, 549 F.2d at 891.   Moreover, "[t]his 12(b)(1) factual evaluation may occur at any stage of the proceedings, from the time the answer has been served until after the trial has been completed." *Id.* at 891-92.

## IV.   ARGUMENTS

### A.   Overview of the Law of Standing

"The doctrine of standing limits federal judicial power and has both constitutional and prudential components." *Evident Corp. v. Church & Dwight Co*., 399 F.3d 1310, 1313-14 (Fed. Cir. 2005) (quoting *Media Techs. Licensing, LLC. v. Upper Deck Co*., 334 F.3d 1366, 1369 (Fed. Cir. 2003)).   In this motion, LG does not dispute that Mondis has constitutional standing.   Mondis, however, lacks prudential standing.

"Prudential standing requires, among other things, that a 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Lans v. Dig. Equipment Corp*., 252

F.3d 1320, 1328 (Fed. Cir. 2001) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

"[U]nlike an assignee that may sue in its own name, an exclusive licensee having fewer than all substantial patent rights . . . that seeks to enforce its rights in a patent generally must sue jointly with the patent owner." *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1347-48 (Fed. Cir. 2001); *see also Mentor H/S, Inc. v. Med. Device All., Inc.*, 240 F.3d 1016, 1018 (Fed. Cir. 2001) ("Standing to bring a patent infringement suit is circumscribed by 35 U.S.C. § 281, which provides that '[a] patentee shall have remedy by civil action for infringement of his patent.' Thus, the rule that an exclusive licensee who does not have all substantial rights in a patent must join the patent owner is derived from the statute that defines what parties have standing to sue for patent infringement." (internal citations omitted)). "In determining ownership for purposes of standing, labels given by the parties do not control. Rather, the court must determine whether the party alleging effective ownership has in fact received all substantial rights from the patent owner." *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1218 (Fed. Cir. 2010).

Several policy concerns underlie this prudential standing requirement with respect to patents. One policy consideration is to prevent "multiple lawsuits on the same patent against the same accused infringer." *Aspex Eyewear, Inc. v. Miracle*

13

*Optics, Inc.*, 434 F.3d 1336, 1343 (Fed. Cir. 2006). "[A]nother policy consideration is to prevent a party with lesser rights from bringing a lawsuit that may put the licensed patent at risk of being held invalid or unenforceable in an action that did not involve the patentee." *Id.*

Whether a plaintiff has standing to sue is a matter of law for the court. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) (en banc).

## B.    Subject Matter Jurisdiction Cannot Be Waived

LG recognizes that it is filing this motion to dismiss at a late stage of the case. As explained above, LG only recently discovered this problem following a meet and confer discussion in late September 2018 pertaining to the preparation of the draft pretrial order. LG placed Mondis on notice as soon as LG had completed its analysis and had ascertained that a standing problem exists.

Although this challenge is filed at a late stage of this proceeding, standing is a basic question of jurisdiction and lack of such jurisdiction is a defense that cannot be waived. *See United States v. Hays*, 515 U.S. 737, 742 (1995) ("The question of standing is not subject to waiver, however.").

As such, lack of standing may be raised at any time, even for the first time on appeal. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230-231 (1990) (addressing standing *sua sponte* for the first time, "[a]lthough neither side raises the issue here" and "even if the parties fail to raise the issue before us"); *Mentor H/S*, 240 F.3d 1016 (likewise

addressing a licensee's standing *sua sponte* where no party "had raised the standing issue, either before us or in the district court").   In fact, the Federal Circuit has addressed a prudential standing challenge raised for the first time in a second appeal from the same case, even though the standing issue was not presented below or in the previous appeal.   *Evident Corp.*, 399 F.3d at 1313-14 ("While Peroxydent's standing argument was not raised below, the issue has been raised on appeal and it must be addressed here because it is jurisdictional.").   A challenge to standing may thus be raised at any time, even at the current stage of this case.   *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 873 (Fed. Cir. 1991) (noting that the challenge to standing was properly made, although first raised in a pretrial motion).

## C.   Labeling a Contract an "Assignment" or a "Patent Sale" Does not Confer Legal Title and Standing

### 1.   Controlling Law Eschews Labels to Focus on the Rights Actually Transferred

The courts have interpreted the Patent Act "to require that a suit for infringement ordinarily be brought by a party holding legal title to the patent." *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1130 (Fed. Cir. 1995).   Under controlling precedent, legal title to the patent – and thus standing – does not turn on the labels given to a legal instrument. *A123 Sys.*, 626 F.3d at 1218 ("In determining ownership for purposes of standing, labels given by the parties do not control.").   As

the Supreme Court framed the question over a century ago, "[w]hether a transfer of a particular right or interest under a patent is an assignment or a license ***does not depend upon the name by which it calls itself***, ***but upon the legal effect*** of its provisions." *Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891).  On this point, the Federal Circuit explained that, "[t]o determine whether a provision in an agreement constitutes an assignment or a license, one must ascertain the intention of the parties and examine the substance of what was granted." *Vaupel*, 944 F.2d at 874.  Thus, the courts have for a long time eschewed labels and looked at the substance of the underlying transaction to determine who has legal title to a patent.

For example, almost a century ago, the Supreme Court formulated this principle in ruling that a contract titled "assignment" did not transfer sufficient rights for a plaintiff to have standing.  *Crown Die & Tool Co. v. Nye Tool & Machine Works*, 261 U.S. 24 (1923).[4]  In that case, the original patentee, Reed, executed a document called an "assignment" that granted to the plaintiff, Nye, in exchange for the payment of $1,000, the exclusive right to sue the defendant, Crown Die, but kept for Reed the right to practice the patent and sue other defendants.  *Id.* at 24-26.  Because Reed only granted to Nye "the right to sue certain named infringers," the Supreme Court held that "the attempted assignment in this case carried no part of

---

[4] Regardless of age, precedent of the Supreme Court is binding until the Court overrules it.  *Hohn v. United States*, 524 U.S. 236, 252-53 (1998) (stating that "[o]ur decisions remain binding precedent until we see fit to reconsider them").

the title to the patent or interest in it and therefore conferred no right to sue for damages for infringement of the patent after the execution of the instrument." *Id.* at 39.

The Federal Circuit routinely applies this principle by looking at the substance of the underlying transaction instead of any labels. *See, e.g.*, *Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 618 (Fed. Cir. 2016). In *Diamond*, plaintiff Diamond and non-party Sanyo signed a "Patent Assignment and Transfer Agreement" that purportedly granted to Diamond "legal title [to] the patents-in-suit." *Id.* (alteration in original). Even though the agreement was labeled an assignment and included the term "transfer,"[5] the Federal Circuit rejected the labels and looked at the substance of what the agreement transferred: "We have not allowed labels to control by treating bare formalities of 'title' transfer as sufficient to determine that an 'assignment' of the entire exclusive right has occurred." *Id.* ("[W]e have explained that, '[t]o determine whether a provision in an agreement constitutes an assignment or license, one must . . . examine the substance of what was granted'" (quoting *Vaupel*, 944 F.2d at 874)). Analyzing the Sanyo-Diamond

---

[5] The Diamond-Sanyo agreement supposedly granted to Diamond "all of Sanyo's right, title and interest." *Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 2015 WL 2088892, at *4 n.1 (C.D. Cal. Apr. 1, 2015) ("Plaintiff also argues that it is undisputed that DCT acquired 'all of Sanyo's right, title and interest' to the patents-in-suit and thus DCT has standing. This Court cannot agree, as Sanyo retains substantial rights to the patents."), *aff'd*, *Diamond*, 823 F.3d 615.

agreement, the Federal Circuit ruled that Diamond did not hold all substantial rights in the patents-in-suit because Sanyo retained the right to "make, use, or sell the patented invention," and because Sanyo kept control over Diamond's ability to license and litigate. *Id.* at 619-20.

District courts have also faithfully followed the rule of *Crown Die*. For example, the District of Delaware applied this principle in a pair of factually analogous cases involving purported assignments and sale agreements subject to certain retained rights. *See Acceleration Bay LLC v. Activision Blizzard, Inc.*, 2016 WL 3186890 (D. Del. Jun. 3, 2016); *Clouding IP, LLC v. Google Inc.*, 61 F. Supp. 3d 421 (D. Del. 2014). In both cases, the courts concluded that the contracts did not grant legal title and thus found a lack of standing.

In *Clouding IP*, plaintiff Clouding had entered into a Patent Purchase Agreement and Patent Assignment Agreement with non-party Symantec whereby Symantec transferred the patents-in-suit subject to certain retained rights, in exchange for guaranteed payments and a percentage of future revenues from patent licensing and enforcement. *Id.* at 426-27. In assessing whether standing existed, the court first rejected Clouding's reliance on the label of the contract. *Id.* at 430 ("Clouding presupposes that it has 'legal title' based on the label given to the Agreement and certain provisions therein. Clouding misapprehends the controlling inquiry."). The court instead analyzed the language of the contracts to ascertain the

18

actual rights granted, and noted that the contractual conveyance was expressly conditioned on Symantec's retained license, which "encumbered [plaintiff's] right to sell or assign the patents, grant an exclusive license, indulge infringement, allow the patent to lapse, and dictate the terms of licenses." *Id.* at 431-32. For this reason, the court concluded that Symantec did not convey title to the patent, so that "Clouding does not hold formal legal title." *Id.* at 432.

In a second case two years later, the District of Delaware found that, for the purpose of standing, there was no distinction between rights retained by the transferor and rights granted back to the transferor, such that either provision can defeat standing. *Acceleration Bay*, 2016 WL 3186890. In that case, plaintiff, Acceleration Bay LLC ("AB"), "claim[ed] to own these patents by way of a purchase agreement with the Boeing Intellectual Property Licensing Company." *Id.* at *1. Although Boeing nominally assigned "all right, title and interest in and to" the patents-in-suit to AB, the transfer was subject to pre-existing licenses and to a "license" back to Boeing. *Id.* at *2. The purported license-back to Boeing included a non-exclusive right to practice the patents, along with the "sole right to sublicense and enforce the patents" in a defined field of use. *Id.* Because the nominal assignment was conditioned on the terms of the license-back to Boeing, the court held that AB did not have legal title to the patents and was at most an exclusive licensee. *Id.* The court also rejected AB's argument that it merely granted a small

package of rights back to Boeing, explaining that "I do not think there is a material distinction between a right retained and a right granted back" because "[t]he labels ascribed to those retained rights have no bearing on" the analysis of the rights allocated under the agreement between AB and Boeing. *Id.* AB thus did not have legal title to the patents.[6]

Judges in this District have also applied this principle by looking beyond the labels of a contract. *See, e.g., King Pharms., Inc. v. Teva Pharmas. USA, Inc*., No. 05-3855, 2006 WL 3933091, at *3-6 (D.N.J. Jan. 22, 2007) (ruling that an Asset Transfer Agreement and a Patent Assignment did not, despite their names, transfer all substantial rights in the patent).

### 2.    Mondis Lacks Legal Title to the '180 Patent

In this case, Mondis cannot rest on the labels and titles of its agreements with Hitachi, even if they use the terms "assignment," "patent sale," or the phrase "right, title and interest." *See Crown Die*, 261 U.S. at 24-26 and 39 (rejecting reliance on "assignment" label); *Diamond Coating*, 823 F.3d at 618 (finding that agreement titled "Patent Assignment and Transfer Agreement" did not convey all substantial rights); *Clouding IP*, 61 F. Supp. 3d at 430 (finding that titles of "Patent Purchase

---

[6] In both cases, after finding that the plaintiffs lacked legal title, the court then assessed whether the plaintiffs had "all substantial rights" to sue on their own, and concluded in both instances that they could not do so. *Acceleration Bay*, 2016 WL 3186890, at *3-5; *Clouding IP*, 61 F. Supp. 3d at 432-36.

Agreement" and "Patent Assignment Agreement" were mere labels which do not control the inquiry); *Acceleration Bay*, 2016 WL 3186890, at *2 (finding that purported conveyance of "all rights, title and interest'" with licensed-back rights did not transfer legal title in the patents); *King Pharmas.,* 2006 WL 3933091, at *4 (ruling that contracts titled Asset Transfer Agreement and a Patent Assignment did not transfer all substantial rights).

Instead, the law requires an analysis of the effect of the PSAL Agreement (including its PLA in Annex 4) on the allocation of rights.  Under New York law,

████████████████████████████████████

████████ "[t]he best evidence of what the parties to a written agreement intend is what they say in their writing." *Greenfield v. Philles Records, Inc*., 98 N.Y.2d 562, 569 (N.Y. 2002) (internal quotation marks omitted).  Thus, where the language of a contract is unambiguous on its face, it must be enforced according to the plain meaning of its terms. *Id.*; *W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 160 (N.Y. 1990) ("[C]lear, complete writings should generally be enforced according to their terms . . . .").  Even in the absence of an integration clause, extrinsic evidence is impermissible unless a term in the contract is plainly ambiguous by being subject to

---

[7] The Federal Circuit "treat[s] an agreement granting patent rights as a contract and interpret[s] its terms consistent with the choice of law provision in the agreement in question." *Diamond Coating*, 823 F.3d 615, 618 (Fed. Cir. 2016) (applying New York law to interpret purported patent assignment agreement).

multiple interpretations. *Zucker v. Waldmann*, 9 N.Y.S.3d 596, 596 (N.Y. Supr. Ct. 2015).

An analysis of the PSAL Agreement demonstrates that Mondis does not have legal title to the '180 patent.  As with *Acceleration Bay* and *Clouding IP*,  *See, e.g.*, *Crown Die,* 261 U.S. at 24-26 and 39 (noting original assignee's retention of right to practice patent and sue

other companies); *Diamond Coating*, 823 F.3d at 619-21 (finding no transfer of title where transferor retained "a right and license to make, use, and sell products covered by the patents-in-suit," as well as "significant control over Diamond's enforcement and litigation activities"); *Abbott*, 47 F.3d at 1132 (finding no standing because the transferor retained the right to make and use, for its own benefit, products embodying the inventions claimed in the patents, as well as the right to sell such products to end users); *Acceleration Bay*, 2016 WL 3186890, at *2 (concluding no transfer of title because Boeing retained the right to practice the patents and the right to sublicense and enforce the patents within a particular field).

*Prima Tek II, L.L.C. v. A-Roo Co.,* 222 F.3d 1372, 1378-80 (Fed. Cir. 2000) (finding no standing because "[a]bsent the right to exclude others from making, using and selling the patented inventions, Prima Tek I's asserted role as 'effective patentee' is doubtful").

Further, unlike a patentee with unfettered discretion to dispose of his property, the contractual restrictions and obligations on Mondis further confirm its lack of ownership. ███████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████.

Under the law, there can only be one legal title holder for a patent, and only that holder can sue on its own. *Alfred E. Mann Found. for Scientific Research v. Cochlear, Ltd.*, 604 F.3d 1354, 1359 (Fed. Cir. 2010) (ruling that "a patent may not have multiple separate owners for purposes of determining standing to sue"). Here,

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

. *See Rite-Hite*, 56 F.3d at 1551-52.

### D.    Mondis Cannot Sue Alone Because It Lacks All Substantial Rights

### 1.    Mondis Does Not Satisfy the "All Substantial Rights" Test

Even if a plaintiff is not the legal title holder of a patent, the law allows an exclusive licensee to sue on its own if it possesses all substantial rights sufficient for standing. *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007). Although the Federal Circuit has not provided an exhaustive list of such substantial rights, it has enumerated certain factors to consider:

1. "the nature and scope of the exclusive licensee's purported right to bring suit, together with the nature and scope of any right to sue purportedly retained by the licensor";

2. "transfer of the exclusive right to make, use, and sell products or services under the patent is vitally important to an assignment";

3. "the scope of the licensee's right to sublicense";

4. "the right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee";

5. "the nature of license provisions regarding the reversion of rights to the licensor following breaches of the license agreement";

6. "the duration of the license rights granted to the licensee";

7. "the ability of the licensor to supervise and control the licensee's activities";

8. "the obligation of the licensor to continue paying patent maintenance fees"; and

9. "the nature of any limits on the licensee's right to assign its interests in the patent."

*Alfred E. Mann*, 604 F.3d at 1360-61.[8]  A consideration of these factors shows that Mondis lacks all substantial rights and thus lacks standing.

> **a)      The "licensee's purported right to bring suit, together with . . . any right to sue purportedly retained by the licensor"**

When "the licensor retains a right to sue accused infringers, that right often precludes a finding that all substantial rights were transferred to the licensee." *Alfred E. Mann*, 604 F.3d at 1361.  Here, Hitachi retained significant rights to sue.

As the Federal Circuit explained, "the nature and scope of the licensor's retained right to sue accused infringers is ***the most important factor*** in determining whether an exclusive license transfers sufficient rights to render the licensee the owner of the patent." *Id.*  For example, in *Abbott*, licensor Diamedix could request that Abbott bring suit against an infringer, but could also file suit on its own if Abbott declined. *Abbott*, 47 F.3d at 1132.  In finding that Abbott lacked prudential standing, the Federal Circuit ruled that, "although Abbott has the option to initiate suit for infringement, it does not enjoy the right to indulge infringements, which normally accompanies a complete conveyance of the right to sue." *Id.*

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

---

[8] In examining these rights, Mondis would be the "licensee" because it lacks legal title to the '180 patent. *See* Part IV.C, *supra*.



As in *Abbott*, this fact counsels against finding that Mondis received all substantial rights.

*Mentor H/S*, 240 F.3d at 1018 ("Here, in light of [licensor] Sonique's substantial retained rights, particularly its initial right and obligation to sue for infringement, we conclude that [licensee] Mentor did not receive all substantial rights in the patent.").

> b) **The "transfer of the exclusive right to make, use, and sell products or services under the patent"**

"In evaluating whether a particular license agreement transfers all substantial rights in a patent to the licensee, we pay particular attention to whether the agreement conveys ***in full*** the right to exclude others from making, using and selling the

patented invention in the exclusive territory."  *Prima Tek II*, 222 F.3d at 1379 (emphasis in original).  In *Abbott Labs.*, 47 F.3d at 1132, the Federal Circuit focused on licensor Diamedix's retention of the right to make and use products practicing the patent, the right to sell such products to end-users and third parties with pre-existing relationships, and "prior licenses" previously granted by the licensor.  Under these facts, the court concluded that Abbott did not receive sufficient substantial rights to convey standing.  *Id.*; *see also Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*, 357 F.3d 1266, 1269 (Fed. Cir. 2004) (dismissing for lack of standing because a "licensor's retention of a limited right to develop and market the patented invention indicates that the licensee failed to acquire all substantial rights").

Likewise here, 

*Alfred E. Mann*, 604 F.3d at 1360.

This factor therefore points away from Mondis having all substantial rights.

### c)   The "scope of the licensee's right to sublicense"

 *See Delano Farms Co. v. Cal.*

*Table Grape Comm'n*, 655 F.3d 1337, 1342 (Fed. Cir. 2011) ("When a licensing

agreement restrains or controls the licensee's sublicensing power, the licensor is

generally regarded as having retained substantial control over patent enforcement,

and the agreement is not treated as having given the licensee all substantial rights in

the patent."); *Mentor H/S*, 240 F.3d at 1018 (finding lack of standing where "[licensee] Mentor only can sue for infringement in the event [licensor] Sonique fails to do so").

> **d)     The "right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee"**

The right of the licensor to "receive a portion of the recovery in infringement suits" is also pertinent to the "all substantial rights" inquiry. *Alfred E. Mann*, 604 F.3d at 1361. ████████████████████████████████████

████████████████████████████████████████

████████████

Under similar facts, the courts have found a lack of standing. For example, in *Propat*, the Federal Circuit affirmed a finding of no standing where the underlying agreement gave to the plaintiff the responsibility to license the patent to third parties, to enforce the licensing agreement, and to sue infringers, with the title holder Authentix receiving a defined percentage share of the proceeds of any licensing royalties and any judgment or settlement arising out of litigation. *Propat*, 473 F.3d at 1190-91. This right to a percentage of the proceeds undercut a claim of substantial rights: "[T]he fact that Authentix retains a substantial share of the proceeds is consistent with Authentix's retaining ownership rights in the patent, while allocating to [plaintiff] Propat the duty to provide licensing and enforcement services." *Id.* at 1191.

As in *Propat*, ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████ *See id; Diamond Coating*, 2015 WL 2088892, at \*5 ("Here,

Sanyo retains a 50% interest in the outcome of this litigation.  The Court has no

difficulty concluding that this portion of the proceeds is substantial . . . This factor

supports a finding of lack of prudential standing."), *aff'd, Diamond,* 823 F.3d 615.

e)   **The "duration of the license rights granted to the licensee" and the "nature of license provisions regarding the reversion of rights"**

████████████████████████████████████████████████████

███████████████ ███████████████████████████████████

████████████████████████████████████████ *See Vaupel*,

944 F.2d at 875 (explaining that a patent "is, in effect, a bundle of rights which may

be divided and assigned, or retained in whole or part").  ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

31

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Hence, these factors also weigh against Mondis.

        **f)**     **The "ability of the licensor to supervise and control the licensee's activities"**

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████

        **g)**     **The "obligation of the licensor to continue paying patent maintenance fees"**

████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████

**h)** **The "nature of any limits on the licensee's right to assign its interests in the patent"**

"Just as the right to alienate personal property is an essential indicia of ownership, the right to further assign patent rights is implicit in any true assignment." *Sicom*, 427 F.3d at 979. ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

33

26281 (§ 6.1), 26300 (§ 7.5).]  As the Federal Circuit ruled, "limits on the assignment of rights are a factor weighing in favor of finding a transfer of fewer than all substantial rights[.]"  *Intellectual Prop. Dev.*, 248 F.3d at 1345.   These encumbrances point away from Mondis having all substantial rights.

### i)   All of the *Mann* Factors Indicate that Mondis Lacks All Substantial Rights

As discussed above, all of the factors listed by the Federal Circuit point away from Mondis having all substantial rights for the purpose of standing. ████████

████████████████████████████████████

████████████████████████████████████ *See Alfred E. Mann*, 604 F.3d at 1361 ("Where the licensor retains a right to sue accused infringers, that right often precludes a finding that all substantial rights were transferred to the licensee.").  Rather, the analysis ████████████

████████████████████████████████████

████████████████████████████

### 2.   Mondis Cannot Meet the "All Substantial Rights" Test by ████████████████

Mondis cannot create standing by arguing that, ████████████████

████████████████████████████████████

████████████████████████ Precedent does not permit this end-run around prudential standing.

The Supreme Court made this point clear nearly a century ago when patentee Reed granted a purported "assignment" to Nye to sue, exclude, and collect damages specifically from defendant Crown Die, while Reed retained the right to sue others. *Crown Die*, 261 U.S. at 26 (reciting the purported assignment).  The high court disapproved of this practice and held that there was no standing to sue:

> These cases do not present the same facts as the one before us; but they indicate clearly what view the courts deciding them would have taken of an effort like that in the case at bar to divide up the monopoly of patent property so that the patentee retains the right to make, use and vend, but ***gives to many different individuals the right to sue certain named infringers***, respectively, and that with the sole motive of harassing them such as is avowed in the recitals of the instrument before us.  ***If held legal, it would give the patentee an opportunity without expense to himself to stir up litigation by third persons that is certainly contrary to the purpose and spirit of the statutory provisions*** for the assigning of patents.

*Id.* at 38-39.  Here, 

Expanding on *Crown Die*, the Federal Circuit has held that a licensee could not circumvent the standing rule by relying on a contractual arrangement with the

patent owner. *Prima Tek II,* 222 F.3d at 1381.  In *Prima Tek II*, the plaintiff argued that its case did not implicate the policy concerns of duplicative litigation against a given defendant because the missing patent holder agreed to be bound by all judgments involving the plaintiff.  The Federal Circuit rejected this argument, because prudential "[s]tanding to sue for infringement ***depends entirely on the putative plaintiff's proprietary interest*** in the patent, ***<u>not</u> on any contractual arrangements among the parties regarding who may sue*** and who will be bound by judgments." *Id.*  In other words, substantial property rights in a patent – not contractual allocation of the rights to sue – determine prudential standing.

As the court further explained, "a contract cannot change the statutory requirement for suit to be brought by the patentee," such that "[a] patentee may not give a right to sue to a party who has no proprietary interest in the patent." *Id.* (quoting *Ortho Pharm. Corp. v. Genetics, Inst., Inc.*, 52 F.3d 1026, 1034 (Fed. Cir. 1995)).  On this basis, the court found that plaintiff lacked standing. *Id.*  "To hold otherwise would be to allow a patent owner to effectively grant a 'hunting license,' solely for the purpose of litigation, in the form of a *pro forma* exclusive license, e.g., covering only a minuscule territory." *Id.* (italics in original).

The Federal Circuit expanded this principle a few years later in *Sicom*, 427 F.3d at 979.  There, the plaintiff had the exclusive right to sue for commercial infringement, while the patentee kept the right to sue for non-commercial

36

infringement.  Because it was only suing for commercial infringement in that case, plaintiff Sicom asserted that the court "should not consider risks that are outside the scope of the facts in this case." *Id.*  After rejecting this argument as "unpersuasive," the Federal Circuit looked beyond the specific facts of the case, noted that plaintiff Sicom only had an exclusive right to sue a specific class of defendants, and deemed such a right insufficient for prudential standing. *Id.*

Like the Federal Circuit, district courts have also followed *Crown Die* and disapproved of contractual arrangements where a plaintiff receives a primary or exclusive right to sue a specific defendant.  For example, in *Fairchild Semiconductor Corp. v. Power Integrations*, 630 F. Supp. 2d 365 (D. Del. 2007), the plaintiff entered into an agreement with patentee Intersil that gave Fairchild, in exchange for $1.5 million and 50% of net recovery, the "sole and exclusive right, exclusive even as to Intersil, to enforce the Patents" against defendant Power Integrations "in any U.S. federal court or before the International Trade Commission." *Id.* at 367.  Under their contract, Fairchild and Intersil "agree that only Fairchild shall have the authority to threaten, commence, maintain or settle any claim, suit or proceeding based upon Infringements of the Patents . . . by [Power Integrations]." *Id.* (bracketed text in original).  Further, Intersil agreed to "reasonably cooperate with Fairchild" and to be "joined as a party" if necessary. *Id.* ████████████████████████

███████████ the District of Delaware held that, because "the right to sue others still

resides with Intersil," "Fairchild is a bare licensee with the right to sue a specific entity." *Id.* at 371. That arrangement, in the district court's view, violated the holding of *Crown Die* and precedent from the Federal Circuit. *Id.* The district court also analogized the facts before it to those in *Sicom*, where "the right to sue a potential subset of infringers was insufficient to confer standing." *Id.* As a result, the court found a lack of standing and dismissed the complaint. *Id.* at 373.

As another district court made clear, having the exclusive contractual right to sue one defendant or the world, without all substantial property rights, is insufficient to confer prudential standing. *See Toshiba Corp. v. Wistron Corp.*, 270 F.R.D. 538 (C.D. Cal. 2010) (granting motion to dismiss for lack of prudential standing). In *Toshiba,* co-assignee Wistron contractually had "the 'sole discretion and exclusive right' to enforce the patents and exclusively control enforcement actions subject to a good faith consideration of [co-assignee] Acer's interests." *Id.* at 540. In addition to "the exclusive right to license the patents," Wistron also had the right to make, sell, and use the inventions. *Id.* Despite Wistron holding these exclusive rights, the court ruled that Wistron lacked all substantial rights because, *inter alia*, Acer had "the unfettered ability to practice the invention," and "retained the right to an equal share of the royalties from Wistron's licensing efforts." *Id.* at 542-43. Thus, even though there was no risk of multiple lawsuits against Toshiba since Wistron had the exclusive rights to sue and license, Wistron did not have all substantial rights to

confer prudential standing.  *Id.* at 542 ("In this case, though the rights granted to Wistron are significant, this Court agrees with Toshiba because Acer retained significant rights under the patent, preventing Wistron from acquiring all substantial rights.").

As a result, without holding all substantial rights in the '180 patent, Mondis lacks prudential standing.

39

## V.    CONCLUSION

For the above reasons, LG respectfully requests that the Court grant LG's motion to dismiss for lack of subject matter jurisdiction.


Dated: October 25, 2018                 Respectfully submitted,


                                        *s/ Liza M. Walsh*
                                        Liza M. Walsh
                                        Selina M. Ellis
                                        WALSH PIZZI O'REILLY
                                        FALANGA LLP
                                        One Riverfront Plaza
                                        1037 Raymond Blvd., Suite 600
                                        Newark, NJ 07102
                                        Phone: (973) 757-1100
                                        Fax: (973) 757-1090

                                        *Of Counsel:*

                                        Michael J. McKeon (*pro hac vice*)
                                        Christian A. Chu (*pro hac vice*)
                                        R. Andrew Schwentker (*pro hac vice*)
                                        Jared Hartzman (*pro hac vice*)
                                        Ryan Teel (*pro hac vice*)
                                        FISH & RICHARDSON P.C.
                                        1000 Maine Ave. SW, Suite 1000
                                        Washington, D.C. 20024
                                        Telephone: (202) 783-5070
                                        Facsimile: (202) 783-2331

                                        *Attorneys for Defendants*
                                        *LG Electronics Inc. and*
                                        *LG Electronics U.S.A., Inc.*