# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONDIS TECHNOLOGY LTD., <br><br> Plaintiff, <br><br> v. <br><br> LG ELECTRONICS, INC. and LG ELECTRONICS U.S.A., INC., <br><br> Defendants. | Civil Action No.: 2:15-cv-04431 (SRC)(CLW) <br><br> *Electronically Filed* <br><br>  <br><br> **ORAL ARGUMENT REQUESTED** |

## PLAINTIFF MONDIS TECHNOLOGY LTD.'S
## BRIEF IN OPPOSITION TO LG'S MOTION TO DISMISS
## FOR LACK OF SUBJECT MATTER JURISDICTION

*Of Counsel*

Jeffrey B. Plies (*pro hac vice*)
jeff.plies@dechert.com
DECHERT LLP
300 W. 6th Street, Suite 2010
Austin, TX 78701
Telephone: (512) 394-3000
jeffrey.plies@dechert.com

Robert D. Rhoad
DECHERT LLP
100 Overlook Center, 2nd Floor
Princeton, NJ  08540
(609) 306-4775
robert.rhoad@dechert.com

Martin J. Black
Brian M. Goldberg
Jeffrey S. Edwards (*pro hac vice*)
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000
martin.black@dechert.com
brian.goldberg@dechert.com
jeffrey.edwards@dechert.com

*Attorneys for Plaintiff Mondis Technology Ltd.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

I.   FACTUAL AND PROCEDURAL BACKGROUND ...................................2

    A.   LG Has Been Aware of the Facts Regarding Mondis'
        Acquisition of the Hitachi Patents for 10 Years ...............................2

    B.   The '180 Patent ................................................................................4

    C.   ████████████████████████████ ........................5

        1.   The Assignment ......................................................................6

        2.   ████████████████████ .........................7

            a.   ██████████████ .................................8

            b.   ██████████ .........................................8

            c.   ███████████████████ .......10

ARGUMENT ....................................................................................................11

II.   LEGAL STANDARDS .............................................................................11

    A.   Constitutional Standing ...................................................................11

    B.   Prudential Standing .........................................................................12

III.   MONDIS HAS CONSTITUTIONAL STANDING, AS LG
      CONCEDES ...........................................................................................14

IV.   LG'S ATTACK ON PRUDENTIAL STANDING HAS NO MERIT ........14

    A.   As Statutory Patentee, Mondis had the Right to Sue for
        Infringement ....................................................................................14

    B.   LG Waived the Right to Challenge Mondis' Prudential
        Standing ...........................................................................................16

    C.   Mondis Had All Substantial Rights In the '180 Patent On the
        Day of Suit ......................................................................................19

        1.   Mondis Took a Complete and Effective Assignment ..............20

        2.   LG's *Mann* Analysis is Flawed ..............................................23

i

# TABLE OF CONTENTS
## (continued)

Page

a.  LG Br. pp. 26-28: "The 'licensee's purported right to bring suit, together with … any right to sue purportedly retained by the licensor'"...........................25

b.  LG Br. pp. 27-28: "The 'transfer of the exclusive right to make, use, and sell products or services under the patent'" ..........................................................27

(1)  Hitachi's post-PSALA rights ...............................27

(2)  Mondis' post-PSALA rights................................29

c.  LG Br. pp. 28-30: "The 'scope of the licensee's right to sublicense'"......................................................31

d.  LG Brief pp. 30-31: "The 'right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee'" ......................................34

e.  LG Br. pp. 31-32: "The 'duration of the license rights granted to the licensee' and the 'nature of license provisions regarding the reversion of rights'" ............................................................35

f.  LG Br. p. 32: "The 'ability of the licensor to supervise and control the licensee's activities'"............36

g.  LG Br. pp. 32-33: "The 'obligation of the licensor to continue paying patent maintenance fees'"...............37

h.  LG Br. pp. 33-34: "The 'nature of any limits on the licensee's right to assign its interests in the patent'" ........................................................38

V.  PRUDENTIAL STANDING DEFECTS ARE CURABLE, AND MONDIS SHOULD BE PERMITTED TO JOIN ANY NECESSARY PARTY ........................................................................39

CONCLUSION ...................................................................40

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Diamedix Corp.*,
   47 F.3d 1128 (Fed. Cir. 1995) ................................................................28, 30, 31

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
   Civ. Action Nos. 15-228-RGA, 15-282-RGA, 15-311-RGA,
   2016 WL 3186890 (D. Del. June 30, 2016) ................................................22, 39

*Adaptix, Inc. v. T-Mobile USA, Inc.*,
   No. 6:13cv49 and 6:13cv50, 2012 WL 12607777
   (E.D. Tex. Nov. 5, 2014) ...................................................................................24

*Alfred E. Mann Found. For Scientific Research v. Cochlear Corp.*,
   604 F.3d 1354 (Fed. Cir. 2010) ..........................................................12, 23, 39

*Alvarado Ortho. Res., L.P. v. Linvatec Corp.*,
   No. 11-CV-246-IEG (RBB), 2013 WL 2351814
   (S.D. Cal. May 24, 2013).....................................................................................25

*Amgen, Inc. v. Ariad Pharma., Inc.*,
   513 F. Supp. 2d 34 (D. Del. 2007).....................................................................12

*Applied Interact, LLC v. Vermont Teddy Bear Co.*,
   No. 04 Civ. 8713 HB, 2005 WL 1785115 (S.D.N.Y. July 28, 2005) ...............25

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
   434 F.3d 1336 (Fed. Cir. 2006) ...................................................................30, 39

*Astra Aktiebolag v. Andrx Pharma., Inc.*,
   222 F. Supp. 2d 423 (S.D.N.Y. 2002) ..............................................................23

*Au New Haven, LLC v. TKK Corp.*,
   210 F. Supp. 3d 549 (S.D.N.Y. 2016) ..............................................................38

*Clouding IP, LLC v. Google Inc.*,
   61 F. Supp. 3d 421 (D. Del. 2014)...............................................................21, 22

*Crown Die & Tool Co. v. Nye Tool & Mach. Works*,
   261 U.S. 24 (1923)...............................................................................................29

*Delano Farms Co. v. California Table Grade Com'n*,
   655 F.3d 1337 (Fed. Cir. 2011) ...........................................................................32

*Diamond Coating Techs., LLC v. Hyundai Motor America*,
   823 F.3d 615 (Fed. Cir. 2016) ......................................................8, 28, 29, 30, 36

*Diamond Coating Techs., LLC v. Hyundai Motor America*,
   Nos. 8:13-cv-01480-MRP, 8:13-cv-01481-MRP (DFM),
   2015 WL 2088892 (C.D. Cal. Apr. 1, 2015) ......................................................39

*Extreme Networks, Inc. v. Enterasys Networks, Inc.*,
   07-cv-229-bbc, 2012 WL 12862828
   (W.D. Wisc. July 11, 2012) ...............................................................................17

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
   630 F. Supp. 2d 365 (D. Del. 2007)...................................................................29

*Gilda Indus., Inc. v. United States*,
   446 F.3d 1271 (Fed. Cir. 2006) ............................................................. 13-15, 17

*Grocery Mfrs. Ass'n v. EPA*,
   693 F.3d 169 (D.C. Cir. 2012 .............................................................................15

*Independent Wireless Telegraph Co. v. Radio Corp. of America*,
   269 U.S. 459 (1926)....................................................................................12, 13

*Innovus Prime, LLC v. Panasonic Corp.*,
   Case No. C-12-00660-RMW, 2013 WL 3354390
   (N.D. Cal. July 2, 2013)..................................................................................8, 9

*Insituform Techs, Inc. v. Cat Contracting, Inc.*,
   385 F.3d 1360 (Fed. Cir. 2004) .........................................................................13

*Int'l Gamco, Inc. v. Multimedia Games, Inc.*,
   504 F.3d 1273 (Fed. Cir. 2007) .........................................................................22

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
   248 F.3d 1333 (Fed. Cir. 2001) .........................................................11, 12, 13, 32

*InternetAd Sys., LLC v. Opodo Ltd.*,
   481 F. Supp. 2d 596 (N.D. Tex. 2007) ........................................................30, 31

iv

*IPXPharma LLC v. Millenium Pharma. Inc.*,
    No. 3:14-cv-1545, 2014 WL 6977662
    (M.D. Tenn. Dec. 9, 2014) ...................................................................21

*Keranos, LLC v. Silicon Storage Tech., Inc.*,
    797 F.3d 1025 (Fed. Cir. 2015) .........................................................16

*King Pharma., Inc. v. Teva Pharma. USA, Inc.*,
    Civ. Action No. 05-3855 (JAP),
    2006 WL 3933091 (D.N.J. Jan. 22, 2007) ..........................................22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ...............................................1, 2, 11, 14, 15, 17

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .....................................................................11, 19

*Luminara Worldwide LLC v. Liown Elecs. Co. Ltd.*,
    814 F.3d 1343 (Fed. Cir. 2016) ................................ 12, 13, 27, 28, 31, 34, 37, 38

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
    240 F.3d 1016 (Fed. Cir. 2001) .........................................................17

*Mobilemedia Ideas, LLC v. Research In Motion Ltd.*,
    Civ. No. 3:11-cv-2353-N,
    2013 WL 12124319 (N.D. Tex. June 18, 2013) .............................24, 30

*Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 830 (1989) ......................19

*Patent Harbor, LLC v. Twentieth Century Fox Home Entertainment*,
    Civ. Action No. 6:10-cv-607, 2012 WL 12842300
    (E.D. Tex. Aug. 17, 2012) ............................................24, 27, 32, 37

*Princeton Dig. Image Corp. v. Hewlett-Packard*,
    Nos. 12 Civ 779 (RJS), 12 Civ. 6973 (RJS),
    12 Civ 6974 (RJS), 2013 WL 1454945
    (S.D.N.Y. Mar. 21, 2013) ............................................20, 21, 24, 25, 32

*Propat Int'l Corp. v. RPost, Inc.*,
    473 F.3d 1187 (Fed. Cir. 2007) ...............................................25, 32, 34, 35

*Rude v. Westcott*, 130 U.S. 152 (1889) ................................................34

*Sanofi, S.A. v. Med-Tech Vet. Prods., Inc.*,
  565 F.Supp. 931 (D.N.J. 1983) ............................................................................8

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
  402 F.3d 1198 (Fed. Cir. 2005) .......................................................................13

*Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971
  (Fed. Cir. 2005)................................................................................................27

*SiRF Tech., Inc. v. Int'l Trade Com'n*,
  601 F.3d 1319 (Fed. Cir. 2010) .......................................................................23

*Speedplay Inc. v. Bebop, Inc.*,
  211 F.3d 1245 (Fed. Cir. 2000) ..............................................22, 24, 37, 38, 39

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013)....................................15

*State Contracting and Engineering Corp. v. Condotte America Inc.*,
  346 F.3d 1057 (Fed. Cir. 2003) .......................................................................20

*STC.UNM v. Intel Corp.*,
  754 F.3d 940 (Fed. Cir. 2014) .........................................................................29

*Stoops v. Wells Fargo Bank, N.A.*,
  Civil Action No. 3:15-83,
  2016 WL 4275828 (W.D. Pa. Aug. 12, 2016)........................................13, 14, 17

*Toshiba Corp. v. Wistron Corp.*,
  270 F.R.D. 538 (C.D. Cal. 2010)................................................................29, 30

*U.S. v. Hays*, 515 U.S. 737, 742 (1995).................................................................16

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*,
  944 F.2d 870 (Fed. Cir. 1991) ...................................................................32, 34

*Waterman v. Mackenzie,* 138 U.S. 252, 255 (1891) ...............................................20

## STATUTES

35 U.S.C. § 100 ...................................................................................*passim*

35 U.S.C. § 154 ...................................................................................*passim*

35 U.S.C. § 281 ...........................................................................................11

35 U.S.C. § 287 ...........................................................................................7, 26, 27

**OTHER AUTHORITIES**

Fed. R. Civ. P. 17 ..........................................................................................40

Fed. R. Civ. P. 19 ..........................................................1, 2, 12, 23, 39, 40

Fed. R. Civ. P. 21 ..........................................................................................40

S. Todd Brown, *The Story of Prudential Standing,*
    42 Hastings Const. L.Q. 95 (2014) ......................................................15

Ernest A. Young, *Prudential Standing after Lexmark International,*
    *Inc. v. Static Control Components, Inc.*,
    10 Duke J. Const. L. & Pub. Pol'y 149 (2014) ..................................15

## **INTRODUCTION**

LG's motion is yet another in a long series of delay maneuvers.  It comes on the eve of trial – eleven years after litigation between the parties on these patents began, nine years after LG settled ██████████████████████████████ ███████████, ████████████████████████████████████████████ ██████████████████████████, and over four years after the filing of this case. Yet, the motion presents nothing that could not have been asserted a decade ago, or since.  LG misstates relevant facts and law, omits its specific notice, ignores that the patent-in-suit issued directly to Mondis, and that █████████████████████ █████████████████.  LG's motion should be seen for what it is, and dismissed without slowing the timing for trial.

The plaintiff in a patent infringement case must have "constitutional standing" under Article III of the Constitution and under § 100(d) of the Patent Act.  LG concedes that Mondis has constitutional standing.  LG Brief at p. 12. Accordingly, there is no weighty constitutional issue for the Court to consider, but only whether there is a necessary but absent party.  Such proper party questions are rightly addressed early, not in the run up to trial, under Fed. R. Civ. P. 19, and here the argument has been waived.

LG tries to cast the issue as one of "prudential standing", a doctrine which the Supreme Court has criticized severely. *Lexmark Int'l, Inc. v. Static Control*

1

*Components, Inc.*, 572 U.S. 118 (2014) (questioning prudential standing doctrine and finding it inapplicable to Lanham Act cases).  But even on its own terms, LG's standing analysis is deeply flawed.  Standing is tested on the date of suit, and here the patent in suit *expired four months before the filing of suit.* ███████ █ ████████████████████████████ Mondis is the only proper plaintiff even under LG's contorted interpretation of the agreements.  LG's standing motion should be seen for what it is, a last attempt to delay and derail the trial.  Mondis respectfully requests that the Court deny the motion and set the case down for trial as soon as possible.  In the alternative, the Court should require LG to identify any absent party under Fed. R. Civ. P. 19, so that Mondis can obtain joinder of that party.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   LG HAS BEEN AWARE OF THE FACTS REGARDING MONDIS' ACQUISITION OF THE HITACHI PATENTS FOR 10 YEARS

LG says it was unaware of the standing defense until Mondis raised it during negotiations over the pretrial order.  LG Brief, pp. 2, 14.  That is patently false.

Mondis first sued LG on its DDC patents in 2007, adding U.S. Patent No. 7,475,180 (the "'180 patent") in early 2009.  D.I. 1 (12/31/2007) and 103

---

[1] Hitachi Ltd. was the Hitachi party to the 2007 patent sale. ███████████████ █████████████████████████ As used herein, "Hitachi" refers to Hitachi, Ltd. and/or, where the context admits, its successors.

2

(3/9/2009), Case No. 2:07-cv-00565 (E.D. Tex.) ("565 Case").  LG specifically

asserted a standing defense in the 565 Case but never pursued it.  Ex. 1 to

Declaration of Jeffrey Edwards ("Edwards Decl."), ¶ 98.  Nor did LG's

codefendants in the case, which proceeded to trial and judgment in favor of

Mondis.  ███████████████████████.  Ex. 2.  When Mondis

sued LG in this case, LG again asserted a standing defense and failed to pursue it.

D.I. 20 (1/21/2015, ¶ 155).

In early 2015, Mondis produced the ownership documents on which LG's

motion relies.  Edwards Decl., ¶¶ 20-21.  Mondis identified the documents to LG

in a June 2015 interrogatory answer.  LG Brief, p. 11 (citing LG MTD Ex. F);

Edwards Decl., ¶¶ 20-21.  Despite this knowledge, LG did nothing to pursue a

standing defense until it had obtained a transfer of the case from the Eastern

District of Texas, obtained a lengthy stay in the District of New Jersey, exhausted

its efforts to invalidate the '180 patent in serial PTO reexaminations, the parties

were on the verge of getting a trial date in this case, and the summary judgment

motion deadline had passed.  Only then, did LG spring its motion.

The pretext for LG's dilatory conduct is that Mondis allegedly raised the

issue during negotiations over the pretrial order.  LG Brief, p. 2.  In fact, Mondis

made the unremarkable request that LG stipulate Mondis owned the patent in suit.

LG waffled, and when Mondis asked why, LG provided no answer and then stated

it was going to challenge standing.  Edwards Decl., ¶ 22.  At the final pretrial

conference, Magistrate Judge Waldor warned LG about gamesmanship, and LG

decided to file the motion anyway.

LG's story flies in the face of the facts.  O

In the intervening five and a half years, LG has not raised

even a scintilla of doubt about this "crystal clear" conclusion, which LG suddenly

ignores on the eve of trial.  Far from presenting any true issue, LG through its

conduct has waived, or in any event is now estopped from even making, the (false)

assertions on which its motion is premised.

**B.  THE '180 PATENT**

The United States Patent Office issued the '180 patent directly to Mondis on

January 6, 2009.  Thus, from issuance, Mondis was, and is, the patentee of the '180

patent under 35 U.S.C. § 100(d) ("The word 'patentee' includes … the patentee to

whom the patent was issued").  The patent has never been assigned or transferred

and expired on February 3, 2014, 20 years from the date of the first U.S.

application in the chain. Ex. 5 ('180 patent showing 2/3/1994 filing of priority U.S.

application); 35 U.S.C. § 154(a)(2) (patent term 20 years from U.S. priority

application).  Importantly, this is not a case – like virtually all of the cases LG cites

– implicating the second prong of § 100(d) which defines the "patentee" to include

successors in interest.

### C.   THE PATENT, SALE, ASSIGNMENT AND LICENSE AGREEMENT

In the late 1990s, Hitachi had begun a program to license two patent families

known as the "DDC patents" to computer monitor manufacturers and sellers.  LG

MTD Ex. A, Ex. 2 (licenses).  Beginning in 2003, Hitachi was assisted in these

efforts by a licensing agent, Elonex UK and later Inpro, offshoots of former U.K.

computer manufacturer Elonex, led by Michael Spiro.  ████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████.

5

### 1.     The Assignment



H█████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

█████████████████

        █████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████▪ ████████████████████████████████

████████████████████████████████████████

███████████████████████████████

        ▪        ████████████████████████

        ████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

───────────────────

▪████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████



*Sanofi, S.A. v. Med-Tech Vet. Prods., Inc.*, 565 F.Supp. 931, 940 (D.N.J. 1983); *Innovus Prime, LLC v. Panasonic Corp.*,

Case No. C-12-00660-RMW, 2013 WL 3354390, *7 (N.D. Cal. July 2, 2013)

(citing cases). ██████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████

           █████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

           ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



c.

███████████████████████████

███████

## ARGUMENT

## II.   LEGAL STANDARDS

The standing doctrine arises from the case-or-controversy clause of Article III, § 2 of the Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). Standing is tested on the date of suit. *Id.* at 570 n. 4. While courts have sometimes differentiated between constitutional and prudential standing, as discussed more fully below, the Supreme Court has criticized prudential standing, casting doubt on the viability of the doctrine. *Lexmark*, 572 U.S. 118.

### A.   CONSTITUTIONAL STANDING

Constitutional standing requires: (1) injury in fact of a legally protected interest that is concrete and particularized and actual or imminent; (2) causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury would be redressed by a favorable decision. *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1346 (Fed. Cir. 2001), *quoting Lujan,* 504 U.S. at 560-61. Article III standing may exist due to a statutory grant of the right to sue, here, the Patent Act. *IP Prop. Dev.*, 248 F.3d at 1346.

Under the Patent Act, the right to sue for infringement is vested in the patentee: "A patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281. The "patentee" includes (a) "the patentee to whom the

11

patent was issued" as well as (b) "successors in title to the patentee." 35 U.S.C.

§ 100(d). As the Supreme Court has recognized, others with some, but fewer than

all, substantial patent rights, may also have constitutional standing. *Intellectual*

*Prop. Dev.* 248 F.3d at 1346 (constitutional standing not limited to § 100(d)

patentees and successors but also others, including exclusive licensees), citing

*Independent Wireless Telegraph Co. v. Radio Corp. of America*, 269 U.S. 459, 469

(1926)).

### B.   PRUDENTIAL STANDING

The Federal Circuit has also imposed a "prudential standing" requirement,

which divides plaintiffs into three categories: (1) those who can sue on their own,

(2) those who can sue along with another party, and (3) those who have no right to

participate in a suit. *Alfred E. Mann Found. For Scientific Research v. Cochlear*

*Corp.*, 604 F.3d 1354, 1358-60 (Fed. Cir. 2010).

A party with all substantial patent rights may sue by itself. *Alfred E. Mann*

*Found.*, 604 F.3d at 1359-60. A party with some, but not all, of the exclusive

rights granted to a patentee under 35 U.S.C. § 154 has prudential standing where it

joins the patentee, voluntarily or involuntarily, or where the other party is not

indispensable under Rule 19 of the Federal Rules. *Luminara Worldwide LLC v.*

*Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1349-50 (Fed. Cir. 2016); *Amgen, Inc. v.*

*Ariad Pharma., Inc.*, 513 F. Supp. 2d 34, 45 (D. Del. 2007) (licensee with fewer

than all substantial rights had standing where patent owners were not indispensable).  The reason for this prudential standing requirement is two-fold: (1) to protect infringers from multiple lawsuits on the same patent, and (2) to protect the absent party's patent interests.  *Luminara,* 814 F.3d at 1350.

While a defect in constitutional standing requires dismissal, defects in prudential standing are curable at any stage, including on appeal. *Independent Wireless*, 269 U.S. at 475 (aff'g involuntary joinder of patentee to exclusive licensee's lawsuit); *Intellectual Prop. Dev.*, 248 F.3d at 1348 & n. 15 (lack of prudential standing could be cured by joinder of other party, even on appeal); *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1204 (Fed. Cir. 2005) (holding plaintiff's mid-suit loss of prudential standing from assigning patent was cured by reacquisition during suit), *citing Insituform Techs, Inc. v. Cat Contracting, Inc.*, 385 F.3d 1360, 1371-72 (Fed. Cir. 2004) (holding district court's joinder of affiliate two years after first trial was not an abuse of discretion).

And while constitutional standing may be raised at any time, many circuit courts, including the Federal Circuit, have held that prudential standing may be waived where a party fails to raise it diligently.  *Gilda Indus., Inc. v. United States*, 446 F.3d 1271, 1280 (Fed. Cir. 2006) (in non-patent case, finding that argument that plaintiff lacked prudential standing under "zone of interests" test was waived for failure to raise it in brief; prudential standing is not jurisdictional); *Stoops v.*

13

*Wells Fargo Bank, N.A.*, Civil Action No. 3:15-83, 2016 WL 4275828, *4 (W.D. Pa. Aug. 12, 2016) (noting that "the First, Fourth, Fifth, Seventh, Ninth, Tenth, Eleventh, and Federal Circuits have held that prudential standing is not jurisdictional and is subject to waiver", *citing Gilda,* among other cases*;* noting Third Circuit has not decided the issue).

### III.   MONDIS HAS CONSTITUTIONAL STANDING, AS LG CONCEDES

LG concedes, as it must, that Mondis has constitutional standing to sue: "In this motion, LG does not dispute that Mondis has constitutional standing." LG Br. at 12. Accordingly, there is no dispute that Mondis is a proper party and that the Court had jurisdiction to entertain the suit. Thus, the only effects of granting the motion would be (1) to add an additional party and (2) delay the proceedings.

### IV.   LG'S ATTACK ON PRUDENTIAL STANDING HAS NO MERIT

LG's prudential standing attack fails for at least four reasons: (1) under *Lexmark*, "prudential" concerns cannot override the Patent Act's text, which defines Mondis as the patentee, (2) LG waived its prudential standing challenge by waiting 10 years to raise it, (3) Mondis had prudential standing on the date of suit, and (4) in any case, dismissal is inappropriate, as Mondis can cure the asserted defect.

#### A.   AS STATUTORY PATENTEE, MONDIS HAD THE RIGHT TO SUE FOR INFRINGEMENT

In *Lexmark*, a unanimous Supreme Court described use of the label

"prudential standing" to be "misleading".  572 U.S. at 125 (holding prudential

standing inapplicable to Lanham Act claim).  The Court noted that a court's

declination of jurisdiction on "prudential" grounds "is in some tension with our

recent reaffirmation of the principle that 'a federal court's obligation to hear and

decides cases within its jurisdiction 'is virtually unflagging.'"  *Id.* at 126, *quoting*

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013).  The Court

reaffirmed that courts must "apply traditional principles of statutory interpretation"

and that "a court ... cannot limit a cause of action that Congress has created merely

because 'prudence' dictates."  *Lexmark*, 572 U.S. at 128.  Now-Justice Kavanaugh

has also called "prudential standing" non-jurisdictional.  *Grocery Mfrs. Ass'n v.*

*EPA,* 693 F.3d 169, 184-85 (D.C. Cir. 2012) (dissenting) (under Supreme Court

and circuit precedent, including Federal Circuit *Gilda* opinion*,* prudential standing

was waived where appellee failed to raise it).  *Lexmark* has been the subject of

much discussion, and commentators have taken the view that it is a major

departure from prior law.  See S. Todd Brown, *The Story of Prudential Standing*,

42 Hastings Const. L.Q. 95 (2014); Ernest A. Young, *Prudential Standing after*

*Lexmark International, Inc. v. Static Control Components, Inc.*, 10 Duke J. Const.

L. & Pub. Pol'y 149 (2014).

     The Federal Circuit has not addressed the intersection of *Lexmark* and its

patent standing jurisprudence.  The Court need not do so here, other than to take

account of the fundamental principle that under either the Lanham or Patent Acts, the statutory text matters. Pursuant to 35 U.S.C. § 100(d), the "patentee" is the person or entity to whom the patent issued, *i.e.* Mondis. This statutory grant of the right to sue cannot be overruled on vague prudential grounds. That is particularly true here, where there is no purpose to be served by joinder. To rule for LG would vitiate the text of the Patent Act, conflict with *Lexmark*, and violate the separation of powers doctrine.

LG's failure to address the statutory text of the first prong of § 100(d) is fatal. The vast majority of the cases LG cites apply the *Mann* factors or similar considerations to determine whether a licensee had sufficient rights to be considered the successor under the second prong of § 100(d). If all "substantial rights" are conveyed, then an exclusive licensee is deemed the effective patentee. *Keranos, LLC v. Silicon Storage Tech., Inc.,* 797 F.3d 1025, 1031 (Fed. Cir. 2015). Here, Mondis does not need to rely on the "successor" prong of § 100(d) because it held title from the date of issuance. Mondis and Hitachi arranged their affairs so that legal title to the '180 patent would be awarded by the Patent Office to Mondis, which has the legal right to enforce the patent.

**B. LG WAIVED THE RIGHT TO CHALLENGE MONDIS' PRUDENTIAL STANDING**

LG argues that because "standing" is jurisdictional, it cannot be waived. LG. Br. at 14 (citing *U.S. v. Hays*, 515 U.S. 737, 742 (1995)). But as the Supreme

16

Court observed in *Lexmark,* "prudential standing" is not true standing.  572 U.S. at 125-26.  Indeed, LG fails to inform the Court that eight circuits have expressly held that prudential standing concerns can be waived.  *Stoops,* 2016 WL 4275828 at *4.  The Federal Circuit follows that rule, holding that prudential standing is not jurisdictional and is subject to waiver.  *Gilda Indus.,* 446 F.3d at 1280.  While *Gilda* was not a patent case, the force of the Court's holding is equally applicable in all realms of its jurisdiction.

To ensure that joinder is raised promptly, courts impose a timeliness rule on prudential standing motions.  In *Extreme Networks*, a patent case, the district court, reviewing Supreme Court law and the *Mentor H/S* Federal Circuit decision, concluded that prudential standing can be waived.  Faced with much less egregious conduct than here, the court invoked waiver to deny a standing challenge raised on the eve of trial.  *Extreme Networks, Inc. v. Enterasys Networks, Inc.*, 07-cv-229-bc, 2012 WL 12862828, *2  (W.D. Wisc. July 11, 2012) (denying, as waived and on merits, motion to dismiss filed more than four years after case filed and on eve of trial), discussing *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016 (Fed. Cir. 2001).

Here, LG affirmatively pleaded – twice, once in the 565 Case and once here – that Mondis lacked standing to sue but LG never pursued or developed the defense.  ████████████████████████████████████

P. Then, Mondis produced its

ownership documents in early 2015 in this case, even citing them in the 2015

interrogatory answer that LG's motion relies on.  Edwards Decl., ¶¶ 20-21.  Yet,

despite LG's assertion on January 21, 2015, of a standing defense, LG raised no

standing defense by the Court's June 6, 2018 dispositive motion deadline, and only

made its motion as a last-gasp effort after losing every dispositive motion.

LG now claims that it only discovered the defense during the pretrial order

process, but it must have had a Rule 11 basis for asserting lack of standing in two

answers.  LG's attempt to lay the blame for the late filing of this motion on Mondis

is astonishing.[7]  The motion is late, tactical and filled with falsehoods.  There could

hardly be a better case for waiver.

---

[7] Perhaps, LG's tardiness can be explained by the fact that throughout the case, LG
has sought advantage by calling Mondis a "patent troll", even indicating that it
intends to make that argument to the jury at trial.  Adding Hitachi as a party would
have destroyed LG's ability to make that inappropriate argument.

### C.   MONDIS HAD ALL SUBSTANTIAL RIGHTS IN THE '180 PATENT ON THE DAY OF SUIT

LG oddly argues that Mondis, which plainly holds legal title, should be defined as a licensee, not the patent owner.  LG Brief, p. 26 n. 8.  LG then applies the *Mann* factors to evaluate whether Mondis has "all substantial rights".  There are multiple flaws in LG's approach.

First, t *See* Section IV.C.1 below.

Second, the "all substantial rights" analysis applies to determine whether an entity is a successor under the second prong of § 100(d).  Thus, virtually all of LG's cases involve successorship.  Here, Mondis is the patentee by virtue of the fact that the Patent Office issued the patent directly to Mondis.  LG is wrong to declare Mondis a licensee and then apply the *Mann* factors.

Third, it is fundamental that standing must be tested on the date of suit. *Lujan,* 504 U.S. at 569-70 n. 4 ("'The existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed.' Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 830 (1989)." (emphasis in original).  Here, that date is June 21, 2014.  While LG is well aware of this proposition – it is referred to in numerous cases LG cites in its brief – LG simply ignores the rule. The failure to account for the fact that the '180 patent expired on February 3, 2014,

19

four months before suit, is fatal to LG's motion.

### 1. Mondis Took a Complete and Effective Assignment



Courts have found that such language constitutes a complete assignment of the exclusive patent rights under § 154 of the Patent Act. *State Contracting and Engineering Corp. v. Condotte America Inc.*, 346 F.3d 1057, 1063 (Fed. Cir. 2003) (holding that provision "entire right title and interest in the inventions" constituted an assignment of the patents including the exclusive right to make, use and sell the inventions), *citing Waterman v. Mackenzie,* 138 U.S. 252, 255 (1891); *Princeton Dig. Image Corp. v. Hewlett-Packard*, Nos. 12 Civ. 779 (RJS), 12 Civ. 6973 (RJS), 12 Civ. 6974 (RJS), 2013 WL 1454945, *4 (S.D.N.Y. Mar. 21, 2013) (language transferring "all of [patentee's] right, title, and interest" in patents "undeniably" conveyed patents' title).

███████████████████████████████

> This interpretation twists the Agreement's plain language and ignores the parties' evident intent to enter into a sale… Indeed, it is not clear why [the assignor] and [assignee] would even include language granting rights back to [assignor], much less engage in subsequent amendments carving out additional rights, if [assignor] had retained them all along.  Thus, the Court concludes that [assignee] was the title holder at the time it filed suit.

*Princeton Dig. Image,* 2013 WL 1454945, *4; *see also IPXPharma LLC v. Millenium Pharma. Inc.,* No. 3:14-cv-1545, 2014 WL 6977662, *8 n. 12 (M.D. Tenn. Dec. 9, 2014) (license-back provisions were not a carve-out of assigned rights but a promise to license in exchange for the assignment).

████████████████████████████████████

██████████████████████████████ in the inapposite *Clouding, King Pharmaceuticals* and *Acceleration Bay* cases that LG heavily relies on.  LG Br., pp. 18-23.  In *Clouding,* the court stated that it "must look to the provision of the contract that is legally operative in effectuating the transfer and determine what was actually granted," and found this conditional language in the grant provision to evidence the parties' intent to effect less than a full assignment:

> Seller agrees to sell, assign, transfer and convey to Purchaser, ***subject to the terms of this Agreement*** including the License set forth in Section 4.5 of this Agreement, all of Seller's right, title, and interest in and to the Assigned Patent Rights[.]

*Clouding IP, LLC v. Google Inc.*, 61 F. Supp. 3d 421, 432 (D. Del. 2014). (emphasis in original).  The court distinguished the equivocal language in this

grant provision with the unequivocal conveyance of "all right, title and interest" that the Federal Circuit found to confer prudential standing in the *Speedplay* decision.  61 F. Supp. 2d at 432, citing *Speedplay Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000).

In *King Pharmaceuticals,* the grant clause "assign[ed] and transfer[red] … ***subject to the conditions of the [Asset] Transfer Agreement and other Related Agreements*** … an undivided right, title and interest in and to the … Patent Rights… to be held for [King's] own use and benefit … ***subject only to the conditions of the Transfer Agreement and the Related Agreements***."  *King Pharma., Inc. v. Teva Pharma. USA, Inc.*, Civ. Action No. 05-3855 (JAP), 2006 WL 3933091, *4, *6 (D.N.J. Jan. 22, 2007) (emphasis added).

And in *Acceleration Bay,* the grant provision expressly stated the assignment of "all right, title and interest" was "subject to" the license in another section. *Acceleration Bay LLC v. Activision Blizzard, Inc.*, Civ. Action Nos. 15-228-RGA, 15-282-RGA, 15-311-RGA, 2016 WL 3186890, *2 (D. Del. June 30, 2016).[8]

---

[8] *Acceleration Bay* is also distinguishable because unlike here, the assignor received an exclusive field-of-use license, rights to sue to enforce those exclusive rights, to direct the plaintiff's licensing and litigation activities, and to force an assignment back of the patents. *Id.* at 3.  The Federal Circuit has held that field-of-use exclusive licensees are necessary parties in an infringement action because of the risk of a multiplicity of lawsuits. *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1278 (Fed. Cir. 2007). ████████████████████

In each case, the courts found this "subject to" language, in the very provisions purporting to grant all right, title and interest, showed the parties intended less than an assignment. ███████████████████████Indeed, the patent at issue was issued by the PTO directly to Mondis, evidencing the parties' mutual intent for Mondis to become the legal owner. ████████████████████ ███████████████████. Issuance of a patent by the PTO is *prima facie* proof of a patentee's legal title. *Astra Aktiebolag v. Andrx Pharma., Inc.*, 222 F. Supp. 2d 423, 514 n. 50 (S.D.N.Y. 2002). The recording of a patent assignment with the PTO (as happened here. Ex. 15) also raises a presumption of a valid assignment. *SiRF Tech., Inc. v. Int'l Trade Com'n*, 601 F.3d 1319, 1327-28 (Fed. Cir. 2010).

## 2.   LG's *Mann* Analysis is Flawed

All parties agree that Mondis has constitutional standing and is therefore a proper party to the suit. LG's analysis of the *Mann* factors (LG Br. pp. 25-34) really goes to whether Hitachi has a sufficient interest in the proceedings that it should be joined as a party. Whether considered under a lofty "prudential standing" analysis or simply as a matter of Rule 19 joinder, the question is the same: do we need Hitachi to resolve this dispute? And the answer is a resounding

---

████████████████████████████████████████████████ ███████████████████████████████████████

no.

Crucially, LG fails to address the status of the parties on the date of suit, which was four months after expiration of the '180 patent. The correct temporal frame is critical because expired, terminated or ineffective contractual patent rights are irrelevant to standing. For example, in *Adaptix, Inc. v. T-Mobile USA, Inc.*, a defendant moved to dismiss for lack of standing based on the plaintiff's presuit grant to a third party of an option to sublicense the moving defendant. No. 6:13cv49 and 6:13cv50, 2012 WL 12607777, *1 (E.D. Tex. Nov. 5, 2014). The court found that the lapse of the option during the litigation rendered it irrelevant to standing. *Id.* at **1-2. Similarly, a court held that the expiration of an assignor's option to license 20 specified third parties rendered it irrelevant to standing. *Patent Harbor, LLC v. Twentieth Century Fox Home Entertainment*, Civ. Action No. 6:10-cv-607, 2012 WL 12842300, *7 (E.D. Tex. Aug. 17, 2012). *See also Mobilemedia Ideas, LLC v. Research In Motion Ltd.*, Civ. No. 3:11-cv-2353-N, 2013 WL 12124319, *5 (N.D. Tex. June 18, 2013) (holding that because patent assignor's contractual reversionary rights no longer existed, they did not affect plaintiff having all substantial rights in the patents); *Princeton Digital Image*, 2013 WL 1454945 at *6 (holding that after patent expiration, assignor's rights to practice patent and license and sue infringers did not undermine plaintiff's standing); *Speedplay*, 211 F.3d at 1251 (licensors' illusory right to sue did not

24

preclude prudential standing).



      **a.**      **LG Br. pp. 26-28: "The 'licensee's purported right to bring suit, together with … any right to sue purportedly retained by the licensor'"**



*Alvarado Ortho. Res., L.P. v. Linvatec Corp.*, No. 11-CV-246-IEG (RBB), 2013 WL 2351814, *6 (S.D. Cal. May 24, 2013).

*Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1193 (Fed. Cir. 2007); *Applied Interact, LLC v. Vermont Teddy Bear Co.*, No. 04 Civ. 8713 HB, 2005 WL 1785115, *5 (S.D.N.Y. July 28, 2005) (rejecting argument that third-party licensee's right to sue infringers defeated prudential standing where license's nonexclusive nature made exercise of that right doubtful); *Princeton Digital Image*, 2013 WL 1454945 at *6

(denying Rule 12(b)(1) motion to dismiss for lack of standing where patent assignor who received nonexclusive rights to practice patents, and rights to enforce, sue and license patents against numerous infringers lacked standing to sue after patent expiration and was not a necessary party).



**b.** **LG BR. PP. 27-28: "THE 'TRANSFER OF THE EXCLUSIVE RIGHT TO MAKE, USE, AND SELL PRODUCTS OR SERVICES UNDER THE PATENT'"**

(1) **HITACHI'S POST-PSALA RIGHTS**

*Luminara*, 814 F.3d at 1351; *Patent Harbor,* 2012 WL 12842300 at \*5, *citing*

*Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005).



f

814 F.3d at 1351 ("Although Disney Enterprises retains the right for it and its Affiliates to practice the patents, this is not a substantial right requiring joinder…. The retained right to practice a patent is not the same as a

retained right to exclude others from doing so.").

(2)  **MONDIS' POST-PSALA RIGHTS**

By operation of the Patent Act, upon issuance, Mondis obtained the

exclusive right to practice – *i.e.* make, use, offer, sell and import – the patented

invention.  35 U.S.C. §§ 100(d), 154(a)(1).  Those rights are the essence of

standing in a patent case.  *Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261

U.S. 24, 36 (1923). ████████████████████████████████

unlike in *Diamond Coating*, where the court placed great weight on an odd

provision prohibiting the plaintiff from practicing the patents.  *Diamond Coating*,

823 F.3d at 620. ████████████████████████████

In light of Mondis' § 154(a)(1) rights, LG's argument that Mondis received

only a bare license to sue – a "hunting license" – is wrong, and LG's citation to the

*Crown Die & Tool* and *Fairchild* cases are inapposite.  There, the plaintiffs had no

exclusionary rights to practice the patents, and had only the right to sue the

defendant.  *Crown Die & Tool*, 261 U.S. at 26, 36-39; *Fairchild Semiconductor*

*Corp. v. Power Integrations, Inc.*, 630 F. Supp. 2d 365, 371 (D. Del. 2007).

LG's citation to *Toshiba v. Wistron* opinion is also unavailing.  LG Br., pp.

38-39, citing *Toshiba Corp. v. Wistron Corp.*, 270 F.R.D. 538 (C.D. Cal. 2010).

There, the absent party was a co-owner, which the Federal Circuit has held nearly

always requires its joinder.  *STC.UNM v. Intel Corp.*, 754 F.3d 940, 945-46 (Fed.

Cir. 2014).  The *Toshiba* co-owner also had an annual "unilateral and absolute right to terminate the agreement," and the plaintiff was required to exploit the patents in the co-owner's interests.  270 F.R.D. at 543.  The Federal Circuit has held that hard termination dates and "best interests" obligations cut against a finding that a plaintiff has all substantial patent rights.  *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1342-43 (Fed. Cir. 2006) (hard termination date years before patent expiration);  *Diamond Coating,* 823 F.3d at 620 (noting the agreement conditioned plaintiff's litigation and enforcement activities on the absent party's "best interests").

To the extent that LG argues that the existence of prior Hitachi nonexclusive licenses with third parties undermines Mondis' prudential standing, LG is wrong. *Mobilemedia Ideas,* 2013 WL 12124319 at *4 (holding that existence of prior nonexclusive licenses did not defeat a transfer of all substantial patent rights, citing cases); *InternetAd Sys., LLC v. Opodo Ltd.*, 481 F. Supp. 2d 596, 606-607 (N.D. Tex. 2007) (finding that exclusive license provision preserving rights under prior nonexclusive licenses did not derogate from transfer of all substantial rights to licensee; concluding plaintiff had prudential standing to sue without patentee). Were this not the case, a patentee would lose standing upon granting the first nonexclusive license, a perverse result.

Finally, LG's reliance on the *Abbott Labs.* decision is misplaced.  LG Brief

30

p. 28, discussing *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995). *Abbott* involved an unusual situation where the plaintiff, an exclusive licensee, was opposing the intervention of its licensor, the patent owner, who asserted that it had substantial interests at risk in its absence. The Federal Circuit sided with the licensor, finding the licensee was not the effective patent assignee where the licensor retained significant rights, including (1) to sell patented inventions to existing customers and licensees, (2) to sue infringers if the licensee did not; (3) to have its patent rights protected by the licensee; (4) to participate in the licensee's lawsuits, and (5) to prevent the licensee from transferring its license rights to anyone but a successor in business. *Id.* at 1132. As the district court in *InternetAd* noted, while the Federal Circuit cited the preexisting licenses as one factor it considered, the *Abbott* decision does not stand for the proposition that prior nonexclusive licenses, with the assignor or third parties, per se detract from a patent assignment of all substantial patent rights. 481 F. Supp. 2d at 606-07 (noting that nonexclusive licensees, who lack standing to sue, would not detract from a transfer of all substantial rights). *See also Luminara,* 814 F.3d at 1351.

        **c.**      **LG Br. pp. 28-30: "The 'scope of the licensee's right to sublicense'"**

███████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████ *Propat*, 473 F.3d at 1194

(holding that licensee holding unlimited right to license and sue infringers but not

right to practice the patents was nonexclusive licensee who lacked standing to sue,

even with patentee); *Princeton Digital Image.*, 2013 WL 1454945 at *6 (denying

defendant's standing motion, finding absent assignor with nonexclusive right to

practice, exclusive right to license and sue 17 enumerated companies, and the

exclusive right to "enforce" against any entity for certain infringing activity was

not a necessary party because it lacked standing to enforce the patents); *Patent*

*Harbor*, 2012 WL 12842300 at *7 (licensee's right to sublicense 20 third parties

during an option period was not a substantial right derogating from plaintiff's

retention of all substantial rights).

      Moreover, this is not a case in which the assignor retained the right to

license as it saw fit without direction or control from the assignee. ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████ *Delano Farms Co.*

*v. California Table Grade Com'n*, 655 F.3d 1337, 1342 (Fed. Cir. 2011), *citing*

*Intellectual Prop. Dev.*, 248 F.3d at 1344-45; *Vaupel Textilmaschinen KG v.*

*Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875-76 (Fed. Cir. 1991). ██████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████

      **d.**    **LG BRIEF PP. 30-31: "THE 'RIGHT OF THE LICENSOR TO RECEIVE A PORTION OF THE RECOVERY IN INFRINGEMENT SUITS BROUGHT BY THE LICENSEE'"**

Contrary to LG, ████████████████████████████████████

███████████████████████████████████████████████

█████ [9]  *Vaupel*, 944 F.2d at 875 ("[T]he right to receive infringement damages was merely a means of compensation under the agreement; this was not inconsistent with an assignment[,]" *citing Rude v. Westcott*, 130 U.S. 152, 162-63 (1889)); *Luminara*, 814 F.3d at 1351 (licensor's financial interest in patent's exploitation not a substantial right).

LG cites the *Propat* decision, but there the compensation the plaintiff paid was just one factor among many that the Court found important to its holding, and was not the sole or even most important factor.  More important were that the agreement specified that the absent party was the patent's owner, that the plaintiff lacked the right (let alone the exclusive right) to practice the patent, that the owner would control related patent prosecution and pay maintenance fees, had a right to

---

[9] ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████

notice of and a veto over plaintiff's licensing and litigation decisions, the right to veto any assignment of plaintiff's contract rights even arbitrarily, and the right to terminate the agreement if plaintiff missed certain performance benchmarks. 472 F.3d at 1190-93. 

      **e.**      **LG BR. PP. 31-32: "THE 'DURATION OF THE LICENSE RIGHTS GRANTED TO THE LICENSEE' AND THE 'NATURE OF LICENSE PROVISIONS REGARDING THE REVERSION OF RIGHTS'"**

By the time of suit, the '180 patent had expired.

f.    **LG BR. P. 32: "THE 'ABILITY OF THE LICENSOR TO SUPERVISE AND CONTROL THE LICENSEE'S ACTIVITIES'"**

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████ *See*, *e.g.*, *Luminara*, 814 F.3d at 1351 (licensor's right to notice of litigation and licensing activities was not a substantial right affecting licensee's prudential standing); *Patent Harbor*, 2012 WL 12842300 at *8 (license's requirements that plaintiff use best efforts to maximize patent revenue, its list of 84 potential licensees, assignor's right to audit plaintiff's books and plaintiff's obligation to confer with assignor about its patent activities did not constitute sufficient control to be a substantial right stripping plaintiff of prudential standing).

        **g.**    **LG BR. PP. 32-33: "THE 'OBLIGATION OF THE LICENSOR TO CONTINUE PAYING PATENT MAINTENANCE FEES'"**

This obligation to pay maintenance fees for the '180 patent expired when Mondis paid the last such fee on June 29, 2012.  Ex. 18. ████████████████

████████████████████████████████████████████████

████████████████████████ *Patent Harbor*, 2012 WL 12842300 at *6. ████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████. *Speedplay*, 211 F.3d at 1251-52.

37

**h.   LG BR. PP. 33-34: "THE 'NATURE OF ANY LIMITS ON THE LICENSEE'S RIGHT TO ASSIGN ITS INTERESTS IN THE PATENT'"**



*Speedplay*, 211 F.3d at 1251-52 (provision requiring exclusive licensors' reasonable consent to assignment of license rights was proper measure protecting licensors' consideration for entering license, and did not prevent licensee from having all substantial rights for prudential standing); *Luminara*, 814 F.3d at 1350 (counting licensee's right to assign its license rights with licensor's reasonable consent among the substantial rights held by that licensee).

---

[11] *Au New Haven, LLC v. TKK Corp.*, 210 F. Supp. 3d 549, 554-55 (S.D.N.Y. 2016).

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███ The PSALA and PLA did not significantly restrict Mondis' assignment rights in a way that affects its standing in this case.

## V.   PRUDENTIAL STANDING DEFECTS ARE CURABLE, AND MONDIS SHOULD BE PERMITTED TO JOIN ANY NECESSARY PARTY

LG seeks dismissal of the action, which is plainly inappropriate.  Even the cases LG relies on demonstrate that courts routinely allow plaintiffs to cure a lack of prudential standing by joining the absent party.  *See, e.g., Diamond Coating Techs., LLC v. Hyundai Motor America,* Nos. 8:13-cv-01480-MRP, 8:13-cv-01481-MRP (DFM), 2015 WL 2088892, *6 (C.D. Cal. Apr. 1, 2015) (affording plaintiff opportunity to join patentee); *Acceleration Bay,* 2016 WL 3186890 at *5 (same).

Should the Court find that LG's motion has any merit, the Court should conduct a Rule 19 analysis to determine which, if any, parties should be joined. *Alfred E. Mann Found.*, 604 F.3d at 1363 (after holding agreement did not convey all substantial patent rights, remanding for indispensable party analysis under Rule 19); *Aspex Eyewear*, 434 F.3d at 1344 (same).  LG should be forced to identify any party it wants joined to the suit immediately, and the Court can then perform

the required analysis under Rules 17, 19 and 21.  While Mondis believes that

absence of a Hitachi entity does not implicate either of the two policy rationales

behind prudential standing – the risk of multiple lawsuits or risks to any Hitachi

patent property right – there is certainly no basis for putting Mondis out of court.

## CONCLUSION

For the reasons stated above, Mondis respectfully requests that the Court

deny LG's motion.

Respectfully submitted,

DATED:  November 21, 2018           By:  /s/ *Brian M. Goldberg*

Martin J. Black
Brian M. Goldberg
Jeffrey S. Edwards (*pro hac vice*)
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19106
Tel.: (215) 994-4000
Fax: (215) 994-2222
martin.black@dechert.com
brian.goldberg@dechert.com
jeffrey.edwards@dechert.com

Jeffrey B. Plies (*pro hac vice*)
DECHERT LLP
300 W. 6th Street, Suite 2010
Austin, TX 78701
Tel.: (512) 394-3000
Fax: (512) 394-3001
jeff.plies@dechert.com

*Attorneys for Plaintiff Mondis Technology
Ltd.*