# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MONDIS TECHNOLOGY LTD., HITACHI MAXELL, LTD., n/k/a MAXELL HOLDINGS, LTD., and MAXELL, LTD., | Civil Action No. 15-04431(SRC/CLW) |
| Plaintiffs, |  |
| v. | *Electronically Filed* |
| LG ELECTRONICS INC. and LG ELECTRONICS U.S.A., INC., | **REDACTED VERSION** |
| Defendants. |  |

## LG'S OPPOSITION TO PLAINTIFFS' MOTION FOR PREJUDGMENT AND POSTJUDGMENT INTEREST (D.E. 495)

*Of Counsel:*

Michael J. McKeon (*pro hac vice*)
Christian A. Chu (*pro hac vice*)
R. Andrew Schwentker (*pro hac vice*)
Jared Hartzman (*pro hac vice*)
Ryan Teel (*pro hac vice*)
FISH & RICHARDSON P.C.
1000 Maine Ave. SW, Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Liza M. Walsh
Selina M. Ellis
WALSH PIZZI O'REILLY
FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
Phone: (973) 757-1100
Fax: (973) 757-1090

*Attorneys for Defendants*
*LG Electronics Inc. and*
*LG Electronics U.S.A., Inc.*

# TABLE OF CONTENTS

I.      INTRODUCTION .............................................................................1

II.     DISCUSSION REGARDING PREJUDGMENT INTEREST ......................2

    A.      Plaintiffs Unduly Delayed Bringing this Suit and Should Thus Be Precluded from any Prejudgment Interest.............................................2

        1.      *Feather* Factor 1: Plaintiffs Unduly and Prejudicially Delayed .4

            a.      Plaintiffs Could Have Filed Suit Since April of 2009......5

            b.      Plaintiffs' Five-Year Delay Prejudiced LG....................10

            c.      Plaintiffs Fail the First *Feather* Prong.............................13

        2.      *Feather* Factor 2: LG Would Not Be Unjustly Enriched .........14

        3.      *Feather* Factor 3: Awarding Prejudgment Interest Would Not Be Compensatory....................................................................16

        4.      *Feather* Factor 4: Equitable Considerations Militate Against a Surcharge .......................................................................17

    B.      If Prejudgment Interest Is Permitted, the Court Should Reject Plaintiffs' Proposed Interest Amount as Inflated and Improper .........19

        1.      The Amount of Principal Is Improper.....................................19

        2.      Plaintiffs' ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Rate Is Inflated ....19

        3.      Plaintiffs' Request for Prejudgment Interest on Attorneys' Fees Is Improper .......................................................................24

    C.      If Prejudgment Interest Is Permitted, the Court Should Use the One-Year Treasury Rate and Decline to Compound .................................27

        1.      If Prejudgment Interest Is Permitted, the Treasury Bill Is the Appropriate Rate ................................................................27

        2.      If Prejudgment Interest Is Permitted, the Court Should Not Compound the Prejudgment Interest .......................................29

        3.      The Proper Prejudgment Interest Calculation...........................30

III.    DISCUSSION REGARDING POSTJUDGMENT INTEREST...................31

IV.     CONCLUSION...............................................................................31

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acticon Tech. v. Heisei Elec. Co., Ltd.*,
  2008 WL 356872 (S.D.N.Y. Feb. 5, 2008) .......................................29

*Apple Inc. v. Samsung Elec. Co., Ltd.*,
  926 F. Supp. 2d 1100 (N.D. Cal. 2013) ...........................................21

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
  2014 WL 1320154 (W.D. Pa. Mar. 31, 2014) ...................3, 13, 16, 17

*Century Wrecker Corp. v. E.R. Buske Mfg. Co.*,
  913 F. Supp. 1256 (N.D. Iowa 1996) ...............................................29

*Conceptus, Inc. v. Hologic, Inc.*,
  2012 WL 44064 (N.D. Cal. Jan. 9, 2012) .........................................18

*Cornell Univ. v. Hewlett-Packard Co.*,
  2009 WL 1405208 (N.D.N.Y. May 15, 2009) ...................................27

*Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*,
  246 F.3d 1336 (Fed. Cir. 2001) ...........................................3, 4, 12, 13

*Datascope Corp. v. SMEC, Inc.*,
  879 F.2d 820 (Fed. Cir. 1989) ..........................................................28

*Elmer v. ICC Fab., Inc.*,
  67 F.3d 1571 (Fed. Cir. 1995) .............................................................2

*Enzo Biochem, Inc. v. Applera Corp.*,
  2014 WL 29126 (D. Conn. Jan. 3, 2014) .........................................29

*Feather v. United Mine Workers of Am.*,
  711 F.2d 530 (3d Cir. 1983) ......................................................*passim*

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  2016 WL 3880774 (N.D. Cal. July 18, 2016) ...................................28

*Gen. Motors Corp. v. Devex Corp.*,
  461 U.S. 648 (1983) .............................................................3, 4, 17

*Gyromat Corp. v. Champion Spark Plug Co.*,
735 F.2d 549 (Fed. Cir. 1984) ..................................................................29

*Intex Plastics Sales Co. v. Hall*,
1991 WL 270167 (N.D. Cal. July 10, 1991) ...................................................28

*Johnston v. Standard Mining Co.*,
148 U.S. 360 (1893)..................................................................................5

*Joyal Prod., Inc. v. Johnson Elec. N. Am., Inc.*,
2009 WL 512156 (Feb. 27, 2009) ................................................................26

*Judkins v. HT Window Fashions Corp.*,
704 F. Supp. 2d 470 (W.D. Pa. 2010).........................................................22

*Kaneka Corp. v. SKC Kolon PI, Inc.*,
198 F. Supp. 3d 1089 (C.D. Cal. 2016) ...................................................12, 13

*Kearns v. Chrysler Corp.*,
32 F.3d 1541 (Fed. Cir. 1994) ..................................................................30

*Laborers' Int'l Union v. Foster Wheeler Corp.*,
26 F.3d 375 (3d Cir.1994) .......................................................................20

*Laitram Corp. v. NEC Corp.*,
115 F.3d 947 (Fed. Cir. 1997) ..................................................................21

*Mars, Inc. v. Coin Acceptors, Inc.*,
513 F. Supp.2d 128 (D.N.J. 2007).......................................................21, 27, 28

*Mars, Inc. v. Conlux USA Corp.*,
818 F. Supp. 707 (D. Del. 1993)................................................................20

*Mathis v. Spears*,
857 F.2d 749 (Fed. Cir. 1988) ..............................................................24, 25

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*,
288 F. Supp. 3d 872 (E.D. Wis. 2017) ...................................................9, 10, 13

*Minemyer v. R-Boc Representatives, Inc.*,
2012 WL 2423102 (N.D. Ill. June 26, 2012)....................................................17

*Muniauction, Inc. v. Thomson Corp.*,
   502 F. Supp. 2d 477 (W.D. Pa. 2007)...................................................19

*Nat'l Presto Indus., Inc. v. Black & Decker Inc.*,
   1992 WL 125559 (N.D. Ill. May 27, 1992)........................................28

*Oiness v. Walgreen Co.*,
   88 F.3d 1025 (Fed. Cir. 1996) .............................................................23

*Phillips Petroleum Co. v. Rexene Corp.*,
   1997 WL 781856 (D. Del. Sept. 4, 1997).............................................22

*Plant Genetic Sys., N.V. v. Mycogen Plant Sci., Inc.*,
   2012 WL 4511263 (M.D.N.C. Sept. 28, 2012) ...................................25

*Rentrop v. Spectranetics Corp.*,
   2007 WL 4224388 (S.D.N.Y. Nov. 26, 2007)......................................20

*Rite-Hite Corp. v. Kelley Co., Inc.*,
   56 F.3d 1538 (Fed. Cir. 1995) (en banc) ............................................29

*Sabinsa Corp. v. Olive Lifesci. Pvt., Ltd.*,
   D.I 30 (D.N.J. Apr. 5, 2018).........................................................25, 26

*Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*,
   707 F. Supp. 2d 737 (N.D. Ohio 2010) ...............................................13

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*,
   862 F.2d 1564 (Fed. Cir. 1988) ....................................................20, 21

*Sugartown Worldwide, LLC v. Shanks*,
   2016 WL 7203513 (E.D. Pa. Apr. 7, 2016).........................................3

*Sys. Council U-3 of Int'l Broth. of Elec. Workers v. Jersey Central Power & Light Co.*,
   2009 WL 497661 (D.N.J. Feb. 25, 2009) ..........................................3, 4

*Tannas v. Multichip Display, Inc.*,
   2018 WL 1033219 (C. D. Cal. Feb. 21, 2018) ...................................25

*Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*,
   2006 WL 3227315 (S.D. Tex. Nov. 6, 2006) ...............................23, 29

iv

*Valmet Paper Machinery, Inc. v. Beloit Corp.*,
   895 F. Supp. 1158 (W.D. Wisc. 1995) ............................................................22

*Wanlass v. Gen. Elec. Corp.*,
   148 F.3d 1334 (Fed. Cir. 1998) .......................................................................5

*Whitserve, LLC v. Computer Packages, Inc.*,
   694 F.3d 10 (Fed. Cir. 2012) ..........................................................................3

*Yeda Research v. Mylan Pharms. Inc.*,
   906 F.3d 1031 (Fed. Cir. 2018) ......................................................................20

**Statutes**

28 U.S.C. § 1961 ...............................................................................................28, 31

## LIST OF COMMON ABBREVIATIONS

| '180 patent | U.S. Patent No. 7,475,180 |
|---|---|
| **FSB** | Feature support byte |
| **Hitachi** | Hitachi Ltd. and its alleged successors-in-interest Hitachi Maxell, Ltd. (now known as Maxell Holdings, Ltd.) and Maxell, Ltd. |
| **JMOL** | Judgment as a matter of law |
| **LG** | Defendants LG Electronics Inc. and LG Electronics U.S.A., Inc. |
| **LG-Mondis Agreement** | Mondis-LG Settlement and Patent License Agreement, dated Sept. 22, 2009 (admitted as exhibit LG-410) |
| **MIL** | Motion *in Limine* |
| **Mondis** | Plaintiff Mondis Technology Ltd. |
| **Plaintiffs** | Mondis and Hitachi |
| **Tr.** | Transcript of April 2-3, 5, 8-12, 2019 Jury Trial proceeding |

**NOTE: All emphases in this brief have been added, unless otherwise noted.**

LG respectfully submits this opposition to Plaintiffs' Motion for Prejudgment and Postjudgment Interest.  [D.E. 495.]

## I.    INTRODUCTION

The jury's award of $45 million in damages is grossly excessive by any measure and overcompensates Plaintiffs for two bits that modern devices do not even use, because the award rests on an incorrect royalty base, an inflated royalty rate, and an improper penalty multiplier.  Yet, Plaintiffs now seek to enlarge their windfall by piling on $19 million in prejudgment interest, constituting a nearly 50% surcharge on the $45 million verdict.  The Court should reject this overreach.

The Court should deny the request for prejudgment interest in its entirety, because Plaintiffs unduly delayed in filing suit.  Plaintiffs possessed the information that formed the basis of their complaint in this case since at least April 2009, but they waited over five years until June 2014 (after the patent expired) to file suit against LG's televisions.  Now, Plaintiffs seek to increase their damages award by almost 50 percent by way of prejudgment interest.  It violates basic principles of fairness to make LG pay nearly twenty million dollars in accrued interest when Plaintiffs could have sued LG earlier but instead chose to sit on their rights and wait for damages and interests to grow.  Worse yet, had Plaintiffs timely filed suit, LG could have avoided any alleged infringement by simply switching the two FSB bits, which are not used in modern devices, to "undefined" or just stuffing the FSB with

incoherent data.  By withholding their allegations and delaying filing suit, Plaintiffs

unfairly ran up LG's potential damages.  It would be wholly unjust to now further

increase that excessive amount with an award of prejudgment interest.

If the Court is inclined to grant any prejudgment interest, it should reject

Plaintiffs' ██████████████████████████████████████████████████

██████████████████. Not only have Plaintiffs failed to present any legal support for

their proposed rate, but courts have consistently rejected such a contract-based rate

as violating the compensatory policy of prejudgment interest.   Accordingly, if

Plaintiffs are to be awarded prejudgment interest notwithstanding their delay, they

should only receive interest using the non-compounded Treasury Bill rate.

## II.     DISCUSSION REGARDING PREJUDGMENT INTEREST

At the threshold, if the Court grants any of LG's post-trial motions, [D.E. 486,

487, 489], Plaintiffs' motion for prejudgment and postjudgment interest can be

denied as moot.  *E.g., Elmer v. ICC Fab., Inc.*, 67 F.3d 1571, 1578 (Fed. Cir. 1995)

(reversing prejudgment interest award after reversing denial of noninfringement

JMOL).   Should the Court deny LG's motions under Rules 50(b) or 59, LG

respectfully requests that the Court exercise its discretion to deny or limit the

requested prejudgment interest.

### A.     Plaintiffs Unduly Delayed Bringing this Suit and Should Thus Be Precluded from any Prejudgment Interest

In their brief, Plaintiffs conclusorily assume that they are entitled to an award

2

of prejudgment interest, and thus skip any justification for such an award.[1]   [D.E. 496 at 1-2.]   Contrary to their assumption, whether to award prejudgment interest rests within this Court's discretion.   *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656-57 (1983) ("*Devex*") ("[A] decision to award prejudgment interest will only be set aside if it constitutes an abuse of discretion.").   The burden to justify the Court's exercise of its discretion rests on Plaintiffs.   *Sugartown Worldwide, LLC v. Shanks*, 2016 WL 7203513, at * 2 (E.D. Pa. Apr. 7, 2016) ("The burden is on [the plaintiff] to show these factors entitle it to prejudgment interest.").

In the Third Circuit, courts consider the four-factor *Feather* test in determining whether to exercise their discretion to award or deny prejudgment interest in cases arising under federal law.   *See Feather v. United Mine Workers of Am.*, 711 F.2d 530, 540 (3d Cir. 1983) (affirming denial of prejudgment interest); *Sugartown*, 2016 WL 7203513, at * 2 (denying prejudgment interest after applying *Feather* test); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 2014 WL 1320154, at *6-8 (W.D. Pa. Mar. 31, 2014) (analyzing the *Feather* factors in a patent

---

[1] Although Plaintiffs suggest a rule requiring an award of prejudgment interest, D.E. 496 at 1], their cited case does not stand for the proposition that such an award is mandatory.   *See Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 36 (Fed. Cir. 2012) (vacating denial of prejudgment interest where the district court did not provide any explanation for its denial).   No such rule exists, as shown by the many cases denying prejudgment interest.   *See, e.g.*, *Crystal Semiconductor*, 246 F.3d at 1361-62 (affirming denial of prejudgment interest); *Sugartown*, 2016 WL 7203513, at * 2-3 (denying prejudgment interest award); *Carnegie Mellon*, 2014 WL 1320154, at *4-8 (same); *Sys. Council U-3*, 2009 WL 497661, at *7 (same).

3

case and denying prejudgment interest), *rev'd in part on other grounds*, 807 F.3d 1283 (Fed. Cir. 2015); *Sys. Council U-3 of Int'l Broth. of Elec. Workers v. Jersey Central Power & Light Co.*, 2009 WL 497661, at *7 (D.N.J. Feb. 25, 2009) (Chesler, J.) (exercising discretion under *Feather* and denying prejudgment interest request).

Under *Feather*, courts must consider "(1) whether the claimant has been less than diligent in prosecuting the action; (2) whether the defendant has been unjustly enriched; (3) whether an award would be compensatory; and (4) whether countervailing equitable considerations militate against a surcharge." *Feather*, 711 F.2d at 540. Under this test, Plaintiffs are not entitled to prejudgment interest.

### 1. *Feather* Factor 1: Plaintiffs Unduly and Prejudicially Delayed

Prejudgment interest on a damages award "merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the foregone use of the money between the time of infringement and the date of the judgment." *Devex*, 461 U.S. at 656. But the law does not "requir[e] the award of prejudgment interest whenever infringement is found." *Id.* "For example, it may be appropriate to limit prejudgment interest, or perhaps even ***deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit***." *Id.* at 657. A patentee's undue delay in prosecuting its case justifies denying an award of prejudgment interest. *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1361-62 (Fed. Cir. 2001).

4

In determining whether a delay is undue, the Federal Circuit has held, in a related context, that "[t]he period of delay begins at the time the patentee has actual or constructive knowledge of the defendant's potentially infringing activities." *Wanlass v. Gen. Elec. Corp.*, 148 F.3d 1334, 1337 (Fed. Cir. 1998). This rule imposes upon the patent holder the duty to police its own rights when "the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." *Id*. at 1338 (quoting *Johnston v. Standard Mining Co*., 148 U.S. 360, 370 (1893)). Here, Plaintiffs were in possession of the information necessary to file suit since at least April 2009, and their prejudicial five-year delay in filing suit until 2014 precludes an award of prejudgment interest.

### a.      Plaintiffs Could Have Filed Suit Since April of 2009

At trial, Plaintiffs took the position that they had actual knowledge of possible infringing activities related to televisions since at least April 2, 2009,[2] such that the period of delay started no later than on this date. *See Wanlass*, 148 F.3d at 1337.

This April 2, 2009 date corresponds to a meeting between Mr. Spiro and LG in which he allegedly "notif[ied] LG during the meeting that ***their televisions infringed [his] DDC patents***." [Tr. (Spiro) at 114:18-115:3; MON-1527 at MONLG

---

[2] To streamline the issues for trial, LG agreed to stipulate that the damages period started on April 2, 2009, the date Plaintiffs allegedly gave notice that LG's televisions may infringe. [D.E. 469 (Stip.); Tr. (Jury Instr.) at 1292:17-18 ("The damages period in this case runs from April 2nd of 2009 to February 3rd of 2014.").]

634892-93 (Spiro notes).]  At this meeting, Mr. Spiro "brought with [him] some of the data sheet from the LG's website . . . that said that the TVs are using the DDC technology."  [Tr. (Spiro) at 115:18-25; *see also id.* at 237:15-21.]  According to Mr. Spiro, this television data sheet, which was actually a television owner manual for certain "LCD TV and plasma TVs[,]" indicated that "'[t]his TV provides Plug-N-Play capability,' meaning that this PC adjusts automatically to the TV settings." [*Id.* at 116:9-16 (quoting MON-1527 at MONLG 634897-98).]  One page of this manual showed VGA and HDMI connections that, according to Mr. Spiro, contain "the DDC channel that handles Plug-N-Play communication in both the RGB and HDMI cables."[3]  [*Id.* at 116:25-117:3; *see also id.* at 238:5-8.]  The manual further stated: "This TV uses a VESA Plug-N-Play solution.  The TV provides EDID data to the PC system with a DDC protocol."  [*Id.* at 117:4-9 (quoting MON-1527 at MONLG 634900).]  Mr. Spiro also testified that, in discussing televisions with LG during the meeting, he was "referring to the EDID data" of the television.  [*Id.* at 239:8-12.]  This left no doubt in Mr. Spiro's mind that he explicitly accused LG's televisions of infringement at this April 2, 2009 meeting:

> Q.  Is there ***any doubt in your mind that LG understood that you were***

---

[3] As the undisputed evidence at trial showed, LG independently developed and began manufacturing televisions with HDMI ports—the feature accused of infringement—no later than 2005.  [Tr. (Alessi) at 721:4-7.]  Had Plaintiffs been diligent in investigating alleged infringement, they could have accused LG's televisions in their original complaint in the Texas case, filed in 2007, and certainly by the time they added the '180 patent in 2009.  [Tr. (Spiro) at 188:13-191:4.]

> ***making an accusation against products***, whether they were called monitors or ***televisions*** or something else, if they could function as a computer monitor using DDC technology?
>
> A.   None whatsoever.  ***It was explicitly discussed at our meeting. There was no doubt.***

[*Id.* at 238:22-239:3.]  But he "defer[red] the television discussions in the interest of time," because he wanted pricing information from LG.  [*Id.* at 117:15-118:13.] Regardless of why he deferred the discussion, Mr. Spiro's testimony makes clear that, by the April 2, 2009 meeting, Plaintiffs had actual knowledge that LG's televisions might infringe, as shown by Mr. Spiro's allegations at that meeting.

Given the information provided by the manual and in light of Plaintiffs' infringement position in this case, there was no additional information needed to file suit on the televisions.  As Mr. Lamm (who also served as Plaintiffs' technical expert in the Texas case) testified, "all of the elements that are listed on this chart as requirement for Claim 14 are ***met simply by the practice of the HDMI specification***."  [Tr. (Lamm) at 366:6-12, 366:24-25.]  "[I]f a display unit implements the VESA Plug-N-Play standard," Mr. Lamm asserted that "it will necessarily infringe, in practice, Claim 14 of the '180 patent."  [*Id.* at 366:13-18.] For Mr. Lamm, Plaintiffs only needed to show HDMI compliance or incorporation of the Plug-N-Play feature, [*id.*], and the owner manual presented by Mr. Spiro during the April 2009 meeting amply satisfied this need.  But Plaintiffs did not even need the manuals to bring suit, because according to Mr. Lamm, "the accused TVs

in this case infringe for the same reasons as LG's computer monitors in the previous case" as "they are structurally identical." [*Id.* at 367:1-368:2; *see also id.* at 461:13-18.]  Hence, by April 2, 2009, Plaintiffs had actual knowledge and the evidence, at least under their incorrect infringement theory, to file suit on LG's televisions.[4]

This actual knowledge is even more apparent from the parties' September 2009 settlement of the Texas litigation.  In the LG-Mondis Agreement, the parties included ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████    There would be no reason to ███████████████████

███████████    if Mr. Spiro and Plaintiffs did not have actual knowledge that the televisions might possibly infringe the '180 patent under their infringement theory.

Even though they had everything needed to initiate an infringement suit in April 2009, Plaintiffs deliberately delayed the filing of their complaint in this case for over five years.  [D.E. 1 (June 21, 2014 Complaint).]  As Plaintiffs admitted at trial, there was no discussion between the parties from 2009 to 2011 because "***both sides were waiting to see what was going to happen*** in litigation" against Innolux,

---

[4] If there were any doubt about HDMI compliance, Plaintiffs could have simply looked at the back of LG's televisions to see if there is an HDMI port.  [Tr. (Spiro) at 194:7-13.]  And while there was no need to collect EDID data to have actual or constructive knowledge of allegedly infringing activities, Mr. Lamm had extracted EDID data from certain LG televisions by October 2012.  [*Id.* at 201:22-202:11.] There was no further basis to delay filing suit at that point.

and "[h]ad we lost the [Innolux] trial, we would not be here because LG would have gotten a free license for its televisions." [Tr. (Pl. Remedy Op'g) at 945:4-18.] Mr. Spiro confirmed that the parties were waiting because there was "***still uncertainty in the case***[.]" [Tr. (Spiro) at 991:18-992:2.] While he sought to restart negotiations after the Innolux trial, LG explained to him that it was still probable that the asserted patents, including the '180 patent, would be invalidated on appeal. [*Id.* at 996:16-21.] Recognizing that negotiations were pointless until after the remaining Innolux uncertainties were resolved, he stopped the negotiations until after he settled with Innolux. [*Id.* at 996:22-997:6.] And although he contacted LG in December 2013, there was no meeting until two months after the patent expired. [*Id.* at 997:4-13.]

While Plaintiffs may argue that their delay in filing suit was justified because they were litigating the Innolux case, another court rejected a similar attempt to justify a delay during a comparable period (June 2009-October 2014), where the plaintiffs there "were involved in other litigation, settlement negotiations, reexaminations, and other post-issuance proceedings relating to the patents-in-suit." *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 288 F. Supp. 3d 872, 906 (E.D. Wis. 2017) (denying pre-complaint, prejudgment interest). Although recognizing that the patentees "argue[d] that they were busy pursuing other litigation during the five-year period before they sued" the defendant, the *Milwaukee* court emphasized that "the fact that Plaintiffs were busy with other matters is not *carte blanche* to ignore their

potential dispute with" the defendant.  *Id.* at 907 (italics in original).  As here, the *Milwaukee* patentees failed to present "any affirmative reason that they could not have filed suit before October 2014, or at the least informed [the defendant] of the infringement allegations."  *Id.*  Thus, as in *Milwaukee*, merely because Plaintiffs here were busy litigating against Innolux does not justify their prejudicial delay.

In sum, the information that formed the basis of their 2014 Complaint was readily available no later than April of 2009.  Plaintiffs should have quickly and diligently enforced their rights at that time, if not earlier, to avoid undue delay.

### b. Plaintiffs' Five-Year Delay Prejudiced LG

This significant delay caused material prejudice to LG.  In the earlier Texas case, Plaintiffs' infringement contentions did ***not*** point to bits 3 and 4 of the Feature Support Byte ("FSB") to satisfy the "identification number" limitation of claim 14.  [Tr. (Lamm) at 461:19-24 (agreeing that Plaintiffs' Texas infringement contentions "accused different fields than [he] did").]  As Mr. Lamm admitted, Plaintiffs' Texas contentions asserted that "the basic display parameters and features which contain the feature support byte in [sic: and] those two bits, they're saying here that's ***characteristic information*.*"  [*Id.* at 464:15-22 (responding "I believe that's what they're saying, yes."); *see also id.* at 463:24-464:14 (agreeing that the "basic display parameters and features" field "contains the feature support byte," which is "the byte that contains the two bits").]  Because the Texas infringement contentions described

these two FSB bits as characteristic information, they could not be identification numbers. [*Id.* at 420:5-12 (admitting that "if something is characteristic information, it can't be an identification number for identifying a type of display unit").]

Rather than pointing to the FSB bits as their "identification numbers," Plaintiffs' Texas infringement contentions accused the ID Product Code field in the EDID data table. [*Id.* at 465:19-466:9; Tr. (Stevenson) at 577:20-578:10.] Under these Texas contentions, LG did not need to worry about allegations against its televisions because, in contrast to monitors, the televisions' ID Product Code field is not populated and does not identify anything. [Tr. (Stevenson) at 548:9-17, 578:1-17, 607:13-21.] As Dr. Stevenson explained, the external video source, like a DVD player, "does not care about what sort of model television you have hooked up." [*Id.* at 578:18-25.] Since the ID Product Code is not a mandatory field of the standard, [Tr. (Lamm) at 452:16-25], LG's televisions "do not fill that field with useful information." [Tr. (Stevenson) at 578:11-13.] These facts were not disputed at trial.

Although their Texas infringement contentions alleged that the ID Product Code was the claimed "identification number," Plaintiffs changed position with respect to televisions and rebranded the characteristic information of FSB bits 3 and 4 as their new "identification number." As Mr. Lamm admitted, now that televisions are at issue in this case, the Texas infringement contentions became "garbage, because today it's the feature support byte that contains an ID number." [Tr. (Lamm)

11

at 464:23-465:8 (responding "[t]hat is correct."); *see also id.* at 466:5-14.]

Plaintiffs did not notify LG about their changed position on the accused "identification number" until 2015. As Mr. Spiro readily admitted about the television-related pre-suit meetings with LG between 2009 and 2014, he never presented LG with a claim chart comparing the '180 patent to a LG television and "***never*** told [LG] specifically what the allegations were with respect to the '180 patent." [Tr. (Spiro) at 1015:17-1016:5.] LG "didn't find out about those allegations until this lawsuit was filed." [*Id.* at 1016:6-8.] But even after filing the complaint in June 2014, it would take seven additional months before Plaintiffs finally revealed their newly accused "identification number" when they served their infringement contentions against LG's televisions on January 30, 2015. [D.E. 460 at 2; D.E. 460-1, Ex. 1 (Jan. 30, 2015 Contentions).] By then, over five years had passed, damages had accrued in the intervening years, and the '180 patent had expired in February of 2014. *See Crystal Semiconductor*, 246 F.3d at 1362 (affirming denial of prejudgment interest where the plaintiff's "two year delay in initiating the present suit caused the damages owed by [defendants] to escalate"); *Kaneka Corp. v. SKC Kolon PI, Inc.*, 198 F. Supp. 3d 1089, 1124 (C.D. Cal. 2016) (denying prejudgment interests for patent on which plaintiff delayed filing suit for four years after learning about infringement and thus "caused damages owed by Defendants to escalate").

Had Plaintiffs timely presented their infringement contentions, LG would

have had the opportunity to consider alternative courses of action, such as switching all of the FSB bits 3 and 4 to "undefined," stuffing the FSB with incoherent data, or even asking VESA to revise the EDID standard to remove FSB bits 3 and 4 entirely. By withholding their allegations and delaying filing suit, Plaintiffs prejudicially ran up LG's potential damages, both in terms of damages and prejudgment interest. *See Milwaukee*, 288 F. Supp. 3d at 907 (denying interest because "[t]hat massive amount of potential pre-judgment interest [of $5.5 million] is prejudice enough").

### c.   Plaintiffs Fail the First *Feather* Prong

Plaintiffs therefore fail the first prong of the *Feather* test, since they have been "less than diligent in prosecuting the action." *Feather*, 711 F.2d at 540.  Indeed, courts have denied prejudgment interest based on much shorter delays than the five years in this case.  *E.g.*, *Crystal Semiconductor*, 246 F.3d at 1362 (affirming denial of prejudgment interest where patentee waited two years to file suit, and rejecting excuse that patentee spent those two years building its case and investigating infringement); *Kaneka*, 198 F. Supp. 3d at 1124 (denying prejudgment interests due to four-year delay); *Carnegie Mellon*, 2014 WL 1320154, at *5-7 (denying prejudgment interest after plaintiff delayed filing the case for more than five years despite having information about infringing activities); *Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc*., 707 F. Supp. 2d 737, 766-67 (N.D. Ohio 2010) (denying prejudgment interest after plaintiff waited four years to bring suit despite

having knowledge of infringing activity). Hence, the first *Feather* factor weighs very strongly against awarding prejudgment interest.

## 2. *Feather* Factor 2: LG Would Not Be Unjustly Enriched

The second *Feather* factor—"whether the defendant has been unjustly enriched"—similarly weighs against prejudgment interest. *Feather*, 711 F.2d at 540.

The record is clear that the damages were not based on LG's use of, or any value derived by LG from, the allegedly infringing "identification number." Although the '180 patent allegedly enables the "generat[ion of] compatible video signals," [Tr. (Lamm) at 369:15-25], Dr. Stevenson's testing results showed that the two bits in the FSB field are not used to generate compatible video signals in the modern devices at issue in this case. [Tr. (Stevenson) at 585:11-597:11 (testing results showing that modifying the FSB bits did not affect videos' colors).]

Mr. Lamm likewise confirmed that modern devices do not use the two FSB bits to generate video signals. Specifically, when Plaintiffs' counsel asked him if there was any display unit in the courtroom that used these two FSB bits to generate compatible video signals, Mr. Lamm did ***not*** point to the accused LG television sitting at counsel's table; he instead pointed to "[t]he CRT display that's on the table over there[,]" referring to a 1993 Apple CRT monitor that was sitting next to the LG television. [Tr. (Lamm) at 1039:18-24.] He pointed to the 1993 CRT monitor because "the inventors realized that using type information was eventually going to

run out of types . . . [so] they wanted to transition over to using characteristic information instead." [*Id.* at 1040:6-14.] Instead of the so-called Display Type (the two FSB bits), today's devices "***use the characteristic information*** to have the video source generate compatible signals[,]" and "that is in general a more prevalent use today." [*Id.* at 1039:25-1040:5.] Because characteristic information is the primary way of generating compatible signals, an identification number is "not necessary to be able to generate compatible signals"; it is indeed "superfluous." [*Id.* at 422:4-16.]

Instead of the unused FSB bits, LG's sales, revenues, and profits from its televisions flowed from a host of non-accused components and features—like brand name, screen size, price, and picture quality—which drove consumer demand for these products. [Tr. (Alessi) at 715:22-716:4.] In fact, LG's televisions contain a multitude of non-accused innovative technologies, features, and components like OLED panels, SmartTV feature, or WebOS operating system, that differentiate its superior products from the competition. [*Id.* at 707:7-710:8.] The success of LG's televisions came from LG's own innovations, not from the '180 patent.

There is thus no evidence that LG was "enriched" by using the '180 patent. The evidence actually suggests the opposite—Plaintiffs are the ones who are being unjustly enriched by withholding their revised infringement allegations for years and then suing LG on an expired patent with no technical value after it was too late for LG to consider alternative courses of action. As with the first factor, this second

15

*Feather* factor weighs strongly against an award of prejudgment interest.

### 3. *Feather* Factor 3: Awarding Prejudgment Interest Would Not Be Compensatory

Plaintiffs would be unjustly enriched through prejudgment interest since, by sitting on their hands for years, they precluded LG from considering alternative courses of action (such as making any possible changes to its products) while allowing damages to continue to accrue.   [*See* Part II.A.1, *supra*.]   An award of prejudgment interest would reward their indolence, instead of being compensatory under the third *Feather* factor.   *See Carnegie Mellon*, 2014 WL 1320154, at *7 (finding defendant's profits offset by the fact that the "requested prejudgment interest on this award has increased significantly because of the lengthy period of time wherein [the plaintiff] took no affirmative action to protect its rights").

Like the patentee in *Carnegie Mellon*, Plaintiffs "did not act like a reasonable patentee because it was unwilling to timely invest and pursue infringement allegations." *Id*. at *8.  Given the easily discernible presence of HDMI ports in LG's televisions since 2005, [Tr. (Alessi) at 721:4-7], if Plaintiffs had been reasonably diligent in pursuing their infringement allegations, they would have included LG's televisions in the Texas case when they initially filed suit in 2007, or at least in 2009 when they added the '180 patent.  Given this inaction, it would be wrong to assume that Plaintiffs would have "aggressively invested the royalties." *Carnegie Mellon*, 2014 WL 1320154, at *8.   Instead, the $19 million that Plaintiffs now request

"demonstrates that an award of prejudgment interest would represent an unearned windfall" that is punitive rather than compensatory. *Id.* This third factor thus weighs against awarding prejudgment interest. *Id.*

### 4. *Feather* Factor 4: Equitable Considerations Militate Against a Surcharge

The last *Feather* factor also favors LG, because the equitable considerations clearly militate against a surcharge. *Feather*, 711 F.2d at 540.

**First**, as demonstrated above, there is no evidence that LG benefited in any way from Plaintiffs' delay in filing suit or from the use of the '180 patent. To the contrary, LG has been prejudiced by Plaintiffs' delay, because a timely-filed suit would have afforded LG the opportunity to consider alternative courses of action. [*See* Part II.A.1, *supra*.] Despite this, Plaintiffs now ask the Court to increase the damages by almost 50 percent. It is "unfair for the meter to run on the [defendant's] tab due to the plaintiff's conduct." *Minemyer v. R-Boc Representatives, Inc.*, 2012 WL 2423102, at *4 (N.D. Ill. June 26, 2012) (denying prejudgment interest).

**Second**, "the category of cases in which an infringer, although ultimately unsuccessful in litigation, may have been sufficiently justified in its challenge to a particular patent to make it appropriate for the District Court to exercise its discretion to deny prejudgment interest . . . should not be overlooked." *Devex*, 461 U.S. at 659 (Stevens, J., concurring). This case falls into such a category. For example, as discussed in LG's post-trial motion on noninfringement, LG presented compelling

evidence at trial showing that it does not infringe the claimed "communication controller" and "identification number" limitations.   [D.E. 487-1.]   LG also demonstrated, without any rebuttal from Plaintiffs' technical expert, that the asserted claims are invalid for lack of written description support.  [D.E. 486-1 at 5-29.]  And LG successfully convinced the PTO to cancel the asserted claims of the other four patents previously asserted in the 2014 complaint, as well as all the claims of the '180 patent except for claims 14-16.[5]  [D.E. 115, 122, 124-126, 128, 130-131, 133 (status reports).]   Thus, LG's defenses, although unsuccessful with the jury, were justified, and prejudgment interest should not be imposed.

*Third*, Plaintiffs received a major and unjustified windfall from the grossly excessive jury award of $45 million.  If the Court declines to grant LG's post-trial motions, it should not further reward Plaintiffs with prejudgment interest where the jury award already generously compensated them, and then some.  *See Conceptus, Inc. v. Hologic, Inc.*, 2012 WL 44064, at *4 (N.D. Cal. Jan. 9, 2012) (denying prejudgment interest because "[t]he jury award was generous enough").

*            *            *

Here, all four *Feather* factors weigh decisively in LG's favor.  The Court should therefore reject Plaintiffs' request for prejudgment interest in its entirety.

---

[5] Although the PTO eventually confirmed claims 14-16 of the '180 patent, it had rejected these claims on many occasions.  [D.E. 334-1 (Pl. MILs) at 25 ("During reexamination the patent office rejected claims to all of the patents, although eventually, it confirmed claims 14-16 of the '180 patent.").]

**B.**     **If Prejudgment Interest Is Permitted, the Court Should Reject Plaintiffs' Proposed Interest Amount as Inflated and Improper**

**1.**     **The Amount of Principal Is Improper**

Plaintiffs and Mr. Bratic incorrectly use the jury's excessive award of $45 million as the amount upon which to base prejudgment interest. [D.E. 496 at 4; D.E. 496-1 (Bratic Decl.) at ¶¶ 4-7.] The Court should reject this amount because, if the Court grants JMOL and/or a new trial based on noninfringement, invalidity, or remedy, the present motion can be denied as moot. [D.E. 486, 487, 489.]

Alternatively, if the Court affirms the jury's liability verdict but grants remittitur as requested in LG's post-trial motion on remedy, the Court should use the amount of $1,904,998 as the basis for prejudgment interest if Plaintiffs accept a remittitur in that amount. [D.E. 489-1 at 34; Tr. (Hansen) at 1217:25-1218:6.] If Plaintiffs elect a new trial on damages, then the Court should defer ruling until after the new trial on damages. Thus, under any circumstance, the Court should not calculate prejudgment interest based on the jury's excessive award of $45 million.

**2.**     **Plaintiffs' ███████████████████████ Rate Is Inflated**

In their brief, Plaintiffs urged the Court to adopt an inflated ██████████ ████████████████████████. [D.E. 496 at 2-4.] They are wrong.

***First***, ***none*** of Plaintiffs' cited cases adopted a rate based on a license agreement; these cases instead looked at the plaintiff's actual cost of borrowing money. [*Id.* at 2-3 (citing *Muniauction, Inc. v. Thomson Corp.*, 502 F. Supp. 2d 477,

484 (W.D. Pa. 2007) ("Plaintiff borrowed money at the prime rate, plus one percent. Awarding plaintiff prejudgment interest at its borrowing rate compensates plaintiff for what it actually lost as a result of defendants' infringement."), *rev'd and vacated in part on other grounds*, 532 F.3d 1318 (Fed. Cir. 2008); *Rentrop v. Spectranetics Corp.*, 2007 WL 4224388, at *3 (S.D.N.Y. Nov. 26, 2007) (using plaintiff's actual "marginal borrowing rate" that plaintiff used through his professional corporation and limited liability company); *Mars, Inc. v. Conlux USA Corp.*, 818 F. Supp. 707, 720-21 (D. Del. 1993) (using patentee's "cost of borrowing money" as interest rate))]; *see also Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1579-80 (Fed. Cir. 1988) (leaving interest rate to the court's discretion and noting that "[n]or do we intend to establish any rule that prejudgment interest at the prime rate should be awarded as a matter of course in every case").

In contrast to these cited cases, Plaintiffs do not offer any evidence—and do not even argue—that they were forced to borrow funds to litigate or that they lacked a surplus of capital to operate.[6]  [*See generally* D.E. 496 at 1-6.]  Nor have they alleged that they suffered any financial harm whatsoever as a result of their inability

---

[6] Having failed to present any evidence or argument on this issue in their opening brief, Plaintiffs cannot backfill the record by presenting new information in their reply brief.  *See Yeda Research v. Mylan Pharms. Inc.*, 906 F.3d 1031, 1044 (Fed. Cir. 2018) ("At the outset, we note that this argument was raised by Yeda for the first time in its reply brief, and thus is waived."); *Laborers' Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir.1994) (ruling that "[a]n issue is waived unless a party raises it in its opening brief").

to use the royalties awarded by the jury or that they suffered "costs of funds" at the prime rate or any other rate. [*Id.*] And they have certainly not shown entitlement to the prime rate, which is the benchmark for commercial loans. [*Id.*]

Where, as here, Plaintiffs failed to meet their burden, courts have denied any prejudgment interest rate higher than the rate of the Treasury Bill (or "T-Bill" as used in some opinions). *See, e.g.*, *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997) (affirming the use of the Treasury Bill rate when "there was no evidence that [patentee] borrowed money at a higher rate, what that rate was, or that there was a causal connection between any borrowing and the loss of the use of the money awarded" due to the infringement); *Apple Inc. v. Samsung Elec. Co., Ltd*., 926 F. Supp. 2d 1100, 1107-08 (N.D. Cal. 2013) (using one-year Treasury Bill rate instead of prime rate because patentee "maintains substantial cash reserves and there is no evidence that [it] borrowed any money because it was deprived of the damages award"), *vacated on other grounds*, 786 F.3d 983 (Fed. Cir. 2015); *Mars, Inc. v. Coin Acceptors, Inc*., 513 F. Supp.2d 128, 132-37 (D.N.J. 2007) (applying Treasury Bill rate where plaintiff "failed to even argue that it either borrowed or invested at a rate higher than the T-Bill rate" and discussing in depth why the Treasury Bill rate was more appropriate than the prime rate).

***Second***, it is telling that Plaintiffs were unable to cite a single patent infringement case where a court has awarded prejudgment interest based on a

contract. [D.E. 496 at 2-4.] In fact, the courts that have addressed this argument have repeatedly rejected it. For example, in *Judkins v. HT Window Fashions Corp.*, the district court declined to award prejudgment interest "calculated based on the 16.07% per year interest rate applied to late royalty payments under the Nien Made licensing agreement." 704 F. Supp. 2d 470, 479 (W.D. Pa. 2010), *aff'd,* 416 F. App'x 903 (Fed. Cir. 2011). In rejecting the patentee's proposal, the court ruled that "Judkins's proposal is admittedly based on a punitive interest rate, which, as we have set forth above, is an improper basis for the awarding of prejudgment interest." *Id.*

Likewise, the patentee in *Phillips Petroleum Co. v. Rexene Corp.*, advanced the same argument by "assert[ing] that the appropriate interest rate is the rate set forth in the License Agreement in section 4.4 for late payments of two percentage points over the prime interest rate, compounded quarterly." 1997 WL 781856, at *28 (D. Del. Sept. 4, 1997). In adopting the Treasury Bill rate instead, the district court agreed with the defendant's argument that "the rate set forth in the License Agreement was intended, in part, to punish a licensee for late payments." *Id.*

As a third example, the district court in *Valmet Paper Machinery, Inc. v. Beloit Corp.*, rejected the plaintiff's proposed rate based on the defendant's contract because "it is clear that the 16% in the contract is intended to be a penalty to inspire Valmet to perform its part of the contract in a timely fashion." 895 F. Supp. 1158, 1177 (W.D. Wisc. 1995), *rev'd on other grounds*, 105 F.3d 1409 (Fed. Cir. 1997);

*see also Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*, 2006 WL 3227315, at *5 (S.D. Tex. Nov. 6, 2006) (rejecting rate used in plaintiffs' contracts because there was no showing that this rate was "necessary to fully compensate it for GSF's infringement").

The reasoning used by the courts in *Judkins*, *Phillips*, and *Valmet* applies with equal force here. The  . [*Id.*] To award prejudgment interest using such a punitive rate would contravene the goal of compensating the plaintiff, rather than punishing the defendant. *See Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996) (reversing award of prejudgment interest, and indicating that "[p]rejudgment interest has no punitive, but only compensatory, purposes").

In addition to having no legal support, this ███████████████ rate makes no economic sense. The rate ████████████████████ ties the interest to factors unique to LG. By that logic, the amount needed to compensate Plaintiffs would depend on the identity of the defendant. A television manufacturer with no prior relationship with Plaintiffs would pay less in prejudgment interest than LG for allegedly infringing the same patents using the same kind of products, thus

removing incentives to settle disputes for fear that settlement agreements could be later used to inflate damages.  This would allow a plaintiff to receive a windfall based on its past history with a defendant, rather than simply making that plaintiff whole.  The amount needed to compensate Plaintiffs here should not depend on who the accused infringer is, any more than the amount needed to compensate a tort victim depends on the identity of the tortfeasor.

For these reasons, the Court should deny Plaintiffs' proposal to use the inflated ███████████████████████████████.

### 3. Plaintiffs' Request for Prejudgment Interest on Attorneys' Fees Is Improper

Plaintiffs also requested prejudgment interest on any attorneys' fees recovery that the Court may award.  [D.E. 496 at 5-6.]  Although the Federal Circuit has recognized that a district court may award prejudgment interest on § 285 fees, the Court of Appeals limited this option to "cases of bad faith or other exceptional circumstances[.]" *Mathis v. Spears*, 857 F.2d 749, 760-61 (Fed. Cir. 1988) (internal quotation marks omitted).  The Circuit warned that this rule does not allow "prejudgment interest on all attorney fee awards to all prevailing [parties] in all exceptional cases" because it would be "unnecessarily broad." *Id.* at 760.

Here, the Court should decline Plaintiffs' invitation to award prejudgment interest on attorneys' fees. ***First***, as discussed in LG's concurrently-filed opposition to Plaintiffs' fees motion, this is not an exceptional case warranting a fees award.

*Second*, Plaintiffs have not shown any evidence that this case meets *Mathis*'s "bad faith or other exceptional circumstances" standard.  [D.E. 496 at 5-6.]  Despite bearing the burden of proof, Plaintiffs' demand is merely conclusory, [*id.*], and their expert did not even provide any calculation establishing the amount of requested interest on these fees, [D.E. 496-1 (Bratic Decl.).]  Courts have denied requests for further prejudgment interest where, as here, the "Plaintiff has not submitted additional facts to support its request for prejudgment interest above and beyond the facts it submitted for its attorney fees request."  *Tannas v. Multichip Display, Inc.*, 2018 WL 1033219, at *6 (C. D. Cal. Feb. 21, 2018) ("The Court, in its discretion declines to award prejudgment interest on attorney fees in this case."); *see also Plant Genetic Sys., N.V. v. Mycogen Plant Sci., Inc.,* 2012 WL 4511263, *9 (M.D.N.C. Sept. 28, 2012) (denying prejudgment interest on attorneys' fees despite awarding fees against plaintiffs, and despite plaintiffs having committed inequitable conduct).

*Third*, Plaintiffs' only basis for demanding interest on an award of attorneys' fees is their assertion that the Court should be consistent with two other cases in this district.  [D.E. 496 at 5.]  But these two cases involve distinctly different circumstances.  *Sabinsa Corp. v. Olive Lifesci. Pvt., Ltd.*, D.I 30 (D.N.J. Apr. 5, 2018), involved a default judgment where the defendant never appeared and never opposed the patentee's request for $12,479 in prejudgment interest on the requested fees.  [D.E. 495-2 (*Sabinsa* slip op.) at 19.]  In contrast, LG appeared and presented

meritorious arguments of noninfringement, invalidity, and remedy. [D.E. 486, 487, 489.] Further, instead of requesting just ████████ in attorneys' fees as in *Sabinsa*, Plaintiffs are seeking over ████████ more by requesting a grossly excessive ████████ in attorneys' fees and nontaxable costs, [*Compare* D.E. 495-2 (*Sabinsa*) at 14, *with* D.E. 492-5 (Plies Decl. re fees) at ¶ 28], thus making any additional interest on such fees punitive rather than compensatory.

In the second cited case, the defendant stipulated to willful infringement and lost on its invalidity argument on summary judgment. *See Joyal Prod., Inc. v. Johnson Elec. N. Am., Inc.*, 2009 WL 512156, at *1 (Feb. 27, 2009). The defendant also undisputedly "used machines made by Joyal to copy Joyal's patented fusing method without a license," admitted that it had "no good faith basis to dispute" infringement, did not dispute the extensive and frivolous litigation misconduct identified by the plaintiff, "did not mount a serious challenge to the validity" of the asserted patent, and concealed its ongoing infringement while misrepresenting its actions. *Id.* at *4-9. As Judge Pisano noted, "this was not a close case." *Id.* at *8. In contrast, none of these egregious facts is at issue here, as extensively discussed in LG's concurrently-filed opposition to Plaintiffs' motion for enhanced damages, with LG's arguments from that opposition brief incorporated herein.

For these reasons, the Court should deny Plaintiffs' request for prejudgment interest on any award of attorneys' fees.

### C. If Prejudgment Interest Is Permitted, the Court Should Use the One-Year Treasury Rate and Decline to Compound

#### 1. If Prejudgment Interest Is Permitted, the Treasury Bill Is the Appropriate Rate

As former Federal Circuit Chief Judge Rader sitting by designation as a trial judge explained, "prejudgment interest should be calculated using the average, one-year T- bill rate," because "the T-Bill rate has been accepted and employed by many courts in patent cases as a reasonable method of placing a patent owner in a position equivalent to where it would have been had there been no infringement." *Cornell Univ. v. Hewlett-Packard Co*., 2009 WL 1405208, at *3 (N.D.N.Y. May 15, 2009) (Rader, Circuit J., sitting by designation) (collecting cases and rejecting the higher prime rate in favor of the lower Treasury Bill rate).

Judges in this District have reached the same conclusion, explaining that "courts, including the Federal Circuit, have applied the sensible approach that the T-Bill rate should be used as a baseline investment rate, absent evidence that the patent holder is entitled to a better rate, either because it had to borrow at a higher rate to cover the lost funds, or because it would have invested at a better rate." *Mars*, 513 F. Supp. 2d at 136. As a benefit, "because T-Bills are a virtually risk-free investment, using the T-Bill rate permits the Court to avoid the speculation involved with determining whether possibly higher-yielding, but riskier, investments would have been successful for the patent holder." *Id.* at 136-37.

The use of the Treasury Bill rate in calculating prejudgment interest is particularly appropriate because that is the same rate used to calculate postjudgment interest under 28 U.S.C. § 1961.  *Id.* at 137 ("[T]he 52-week T-Bill rate is the statutorily prescribed measure for *post-judgment* interest.  Courts have found this fact persuasive in utilizing the T-Bill rate for pre-judgment interest as well." (internal citations omitted; italics in original)); *see also Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 829 (Fed. Cir. 1989) (affirming use of Treasury Bill rate because "we are unconvinced here that the Treasury bill rate of section 1961 fails to 'adequately compensate'" the plaintiff); *Nat'l Presto Indus., Inc. v. Black & Decker Inc.*, 1992 WL 125559, at *8 (N.D. Ill. May 27, 1992) (ruling that plaintiff would "be fully compensated by being given the interest rate it could have earned if it had the money to invest, the interest rate that is statutorily established for post-judgment interest: the Treasury Bill rate"); *Intex Plastics Sales Co. v. Hall*, 1991 WL 270167, at *5 (N.D. Cal. July 10, 1991) (concluding that "the statutorily sanctioned [T-Bill] rate has a far more reasoned basis," and rejecting patentee's speculation that he would have invested at a higher rate), *aff'd*, 960 F.2d 155 (Fed. Cir. 1992).

That is why, when courts decide to award prejudgment interest, they normally apply the one-year Treasury Bill rate.  *See, e.g.*, *Datascope*, 879 F.2d at 829 (affirming prejudgment interest at the one-year Treasury Bill rate); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2016 WL 3880774, at *18 (N.D. Cal. July 18, 2016) (rejecting

prime rate and using Treasury Bill rate where there was no evidence that patent holder borrowed money during the infringement period), *rev'd in part on other grounds*, 879 F.3d 1299 (Fed. Cir. 2018); *Transocean*, 2006 WL 3227315, at *6 (using Treasury Bill rate where patentee offered no evidence that a higher rate was necessary for full compensation); *Acticon Tech. v. Heisei Elec. Co., Ltd*., 2008 WL 356872, at *4 (S.D.N.Y. Feb. 5, 2008) (using Treasury Bill rate).[7]

In his declaration submitted in support of LG's present opposition, Mr. Hansen has presented the historical Treasury Bill rates, along with the average annual rate for each year, for the relevant period.  [Hansen Decl. at ¶ 6.]

## 2.    If Prejudgment Interest Is Permitted, the Court Should Not Compound the Prejudgment Interest

"[T]he determination whether to award simple or compound interest similarly is a matter largely within the discretion of the district court."  *Gyromat Corp. v. Champion Spark Plug Co*., 735 F.2d 549, 557 (Fed. Cir. 1984) (declining to rule that prejudgment interest must be compounded as a matter of law, and affirming use of simple interest rate); *see also Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1555-56 (Fed. Cir. 1995) (en banc) (affirming award of "interest at a simple rather than a

---

[7] Several courts have also applied the Treasury Bill rate where a plaintiff unreasonably delayed bringing suit, because any higher rate would reward the delay. *See, e.g.*, *Enzo Biochem, Inc. v. Applera Corp*., 2014 WL 29126, at *4-5 (D. Conn. Jan. 3, 2014) (limiting prejudgment interest to the Treasury Bill rate because the plaintiff should not be "financially rewarded" for its delay); *Century Wrecker Corp. v. E.R. Buske Mfg. Co*., 913 F. Supp. 1256, 1282-83 (N.D. Iowa 1996) (same).

compound rate"); *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1549 & 1552 (Fed. Cir. 1994) (affirming award "at simple interest rather than 2% above the prime rate").

Compounding is unnecessary to adequately compensate Plaintiffs given the grossly excessive $45 million award.  Thus, if prejudgment interest is permitted, only simple interest should be awarded.  This is particularly appropriate here, because Plaintiffs have not provided any basis for awarding compound interest despite bearing the burden of proof.  [D.E. 496 at 4-5.]  Nor should such an award occur given their unreasonable delay in bringing this suit.  [*See* Part II.A.1, *supra*.]

### 3.     The Proper Prejudgment Interest Calculation

As calculated by Mr. Hansen, applying the customary Treasury Bill rate results in a non-compounded prejudgment interest of $106,443.00 on the proposed $1,904,998 remittitur amount through the date of the jury verdict, and $133 for each subsequent day until the Court enters judgment.  [Hansen Decl. at ¶ 9-10.]  Should the Court prefer to compound the interest on an annual basis[8] based on the remittitur amount, the prejudgment interest is $107,593.00 through the date of the jury verdict, and $136 for each subsequent day until the Court enters judgment.  [*Id.* at ¶ 11.]

If the Court, however, is inclined to award prejudgment interest on the grossly excessive $45 million jury award, the non-compounded interest based on the Treasury Bill rate is $2,519,328.00 through the date of the jury verdict, and $3,135

---

[8] Plaintiffs' calculations use compounding on an annual basis.  [D.E. 496 at 4-5.]

for each subsequent day until the Court enters judgment. [*Id.* at ¶¶ 6-7.] The annually-compounded interest on the $45 million jury award based on the same rate is $2,547,704.00 through the date of the jury verdict, and $3,215 for each subsequent day until the Court enters judgment. [*Id.* at ¶ 8.]

## III.   DISCUSSION REGARDING POSTJUDGMENT INTEREST

Postjudgment interest is set by statute. 28 U.S.C. § 1961(a). "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield[.]" *Id.* If judgment is entered in Plaintiffs' favor, LG does not dispute their statutory entitlement to postjudgment interest based on the one-year Treasury Bill rate. *See id.*

## IV.   CONCLUSION

For the reasons above, LG respectfully requests that the Court deny the motion for prejudgment interest, and set postjudgment interest at the statutory rate.

Dated: June 28, 2019                    Respectfully submitted,


                                        s/ Liza M. Walsh
                                        Liza M. Walsh
                                        Selina M. Ellis
                                        WALSH PIZZI O'REILLY
                                        FALANGA LLP
                                        Three Gateway Center
                                        100 Mulberry Street, 15th Floor
                                        Newark, NJ 07102
                                        Phone: (973) 757-1100
                                        Fax: (973) 757-1090

                                        *Of Counsel:*

                                        Michael J. McKeon (*pro hac vice*)
                                        Christian A. Chu (*pro hac vice*)
                                        R. Andrew Schwentker (*pro hac vice*)
                                        Jared Hartzman (*pro hac vice*)
                                        Ryan Teel (*pro hac vice*)
                                        FISH & RICHARDSON P.C.
                                        1000 Maine Ave. SW, Suite 1000
                                        Washington, D.C. 20024
                                        Telephone: (202) 783-5070
                                        Facsimile: (202) 783-2331

                                        *Attorneys for Defendants*
                                        *LG Electronics Inc. and*
                                        *LG Electronics U.S.A., Inc.*