UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONDIS TECHNOLOGY LTD. et al., | |
| Plaintiffs, | Civil Action No. 15-4431 (SRC) |
| v. | **OPINION & ORDER** |
| LG ELECTRONICS, INC. et al., | |
| Defendants. | |

**CHESLER**, **U.S.D.J.**

This matter comes before the Court on the motion to strike the Bratic Supplement by LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively, "LG").[1]  Plaintiffs Hitachi Maxell, Ltd., n/k/a Maxell Holdings, Ltd., Maxell, Ltd., and Mondis Technology Ltd. (collectively, "Mondis") oppose the motion.  In the Opinion and Order dated July 15, 2020 ("the Strike Opinion"), the Court granted in part and reserved decision in part on this motion, pending supplementary briefing.  In today's decision, this Court continues its consideration of this motion to strike.

The Court begins with a careful account of the history of the present motion.  This is particularly important in considering this motion, because the Mondis supplementary brief appears significantly out of touch with that history.  Mondis expressly seeks leave to revise the

---

[1] In its motion to strike, LG filed as an exhibit the "Supplemental Expert Report of Walter Bratic," dated June 19, 2020.  (Docket Entry No. 635, Ex. B, hereinafter, the "Bratic Supplement.")

1

Bratic Supplement, but also tacitly seems to try to revise the history of this case. Specifically, Mondis tries to erase its submission of the intertwined Bratic and Lamm supplemental reports, and the Court's partial grant of LG's motion to strike which followed.

In the motion to strike, LG asked the Court to strike the supplemental expert report of Mr. Lamm (the "Lamm Supplement"), as well as:

> (2) any opinions in Mr. Bratic's new damages expert report that rely on Mr. Lamm's new report; and (3) any remaining new damages theories in Mr. Bratic's new report.

(Defs.' Br. 23.) In considering this motion, this Court noted that, on April 22, 2020, this Court issued an Opinion and Order which stated:

> This Court grants LG's motion for a new trial, subject to the following limitations. At the new trial, the parties may not offer evidence that was not presented at the previous trial, with one potential exception: should Mondis seek to offer the expert testimony of Mr. Bratic, based solely on the evidence presented at the previous trial, Mondis may submit an updated expert report, which this Court will consider in a Daubert hearing.

(Opinion & Order of April 22, 2020 at 9.) In the Strike Opinion, this Court held that the Lamm Supplement, submitted by Mondis, violated the Order of April 22, 2020, and granted LG's motion to strike that supplementary report. (Strike Opinion at 2.)

As to the Bratic Supplement, LG had moved to strike parts of the report on two grounds: 1) some parts relied on Mr. Lamm's unauthorized supplementary report; and 2) some parts contain new theories. In the Strike Opinion, this Court held: "To the extent that Mr. Bratic's supplementary report contains opinions that rely, even in part, on Mr. Lamm's unauthorized supplementary report, the motion to strike those opinions is granted, as they are in clear violation of this Court's Order." (Strike Opinion at 2.) This Court also held: "Mr. Bratic may express expert opinions about reasonable royalties to the extent that such opinions are based on the

2

existing trial record *only*." (Id.)  This Court recognized, however, that the parties were likely to differ about the application of these rulings to the Bratic Supplement, and it Ordered supplementary briefing "[t]o assist the Court in making a ruling that provides clarity." (Id. at 3.) The Court directed Mondis to "submit supplementary briefing, with certifications, as needed, which precisely document the supporting evidentiary basis of every element of Mr. Bratic's proposed expert opinions in the trial record," with LG to submit a responsive brief. (Id.)  This Court stated: "The Court will then determine what parts, if any, of Mr. Bratic's supplementary report it will strike." (Id.)

Two rounds of supplementary briefing followed. In each round, Mondis asked this Court to accept a revised Bratic Supplement. The Court rejected the first round of supplementary briefing,[2] explaining that Mondis had not focused on the Bratic Supplement, and the Court directed the parties to rebrief. Mondis asked for clarification, and this Court issued the Order dated August 18, 2020, which stated:

> In the first Order issued on July 16, 2020, all the Court wanted was for Mondis to delete those portions of Mr. Bratic's supplementary report , as it existed in the record on that date, that relied on Mr. Lamm's unauthorized supplementary report. Also, if Mondis believes that any portions of the Bratic Supplement are not supported by the evidence presented at trial, Mondis may delete those portions.

(Order of August 18, 2020 at 1.)  The Court now has a second round of supplementary briefs and another proposed revised Bratic report from Mondis.

The Court denies the requests from Mondis to admit a revised version of the Bratic

---

[2] The Court having rejected the first round of supplementary briefing in its entirety, all of the references to supplementary briefs in this Opinion refer to the second set of briefs, except as otherwise noted.

3

Supplement. The Court, in its Order of August 18, 2020, permitted Mondis to submit a version of the Bratic Supplement solely as a demonstrative exhibit to illustrate those parts of the Bratic Supplement that, in view of the Strike Opinion, it now chooses to abandon. When this Court granted the motion for a new trial, this Court stated: "Mondis may submit *an* updated expert report." (Opinion & Order of April 22, 2020 at 9 (emphasis added).)

This Court did give Mondis the opportunity to submit *an* updated expert report – but the Court has not given Mondis leave to further revise the report it submitted. Mondis submitted the updated expert report that appears in the record as Exhibit B of Docket Entry No. 635. The alternate versions that Mondis filed on August 28, 2020 are recognized only as exhibits demonstrating what parts of the Bratic Supplement Mondis proposes to abandon. The record contains only one Bratic Supplement.

This is a crucial point. In its supplementary brief, Mondis skips over the fact that this Court already granted the motion to strike those parts of the Bratic Supplement that rely on the Lamm Supplement, even in part. Mondis argues as if the fact that the Bratic Supplement relied on the Lamm Supplement was something that can be erased or undone; it is not. Mondis has not objected that the document filed by LG as Exhibit B is not a correct copy of the updated Bratic expert report that Mondis transmitted to LG. This Court does not intend its consideration of the Bratic Supplement to be an iterative process in which Mondis has multiple opportunities to further revise the Bratic Supplement based on the Court's feedback. Mondis cannot undo what was already done: the Bratic Supplement contains opinions that rely on the Lamm Supplement, and the motion to strike those opinions was granted months ago. As to the issue of the Bratic Supplement's reliance on the Lamm Supplement, all that presently remains is to precisely define

4

the set of such opinions.

The Mondis supplementary brief begins by mischaracterizing the relevant history: "In its orders . . ., the Court ruled that the Bratic supplemental report would be admitted to the extent that its evidentiary basis lay in the pre-existing trial record." (Pl.'s Supp. Br. at 1.) This is substantially inaccurate, on two grounds. First, in fact, this Court ruled that the Bratic Supplement would be *considered* for admission, not that it would be guaranteed admission. (Opinion & Order of April 22, 2020 at 9.) Second, the quote from the Mondis brief omits a material condition. This Court has ruled that the Bratic Supplement will be considered, to the extent that two preliminary conditions are satisfied: 1) it does not rely, even in part, on the Lamm Supplement; **and** 2) it does not rely on evidence which is not in the pre-existing trial record.

The Court has already granted-in-part the motion to strike the Bratic Supplement. The Court presently has two remaining questions before it: 1) what parts of the Bratic Supplement will the Court strike because they contain opinions that rely, even in part, on Mr. Lamm's unauthorized supplementary report; and 2) what parts of the Bratic Supplement will the Court strike because they contain opinions that are based on evidence that was not presented at the previous trial?

**I.     What parts of the Bratic Supplement will the Court strike because they contain opinions that rely, even in part, on Mr. Lamm's unauthorized supplementary report?**

As just discussed, despite this Court's Orders, Mondis submitted a supplementary brief that overlooked this question and did not address it.

The Bratic Supplement cited the Lamm Supplement in the following paragraphs: 11, 12, 16, 22(b), 22(g), and 49. The Court strikes in their entirety paragraphs 11, 12, 16, 22(b), and

5

22(g), because they contain opinions that expressly rely on the Lamm Supplement. Paragraph 49, however, contains only a *de minimis* reference which states: "see also" the Lamm Supplement. Because paragraph 49 does not contain any opinion that relies on the Lamm Supplement, the Court strikes only the reference to the Lamm Supplement in paragraph 49.

The next question is: what parts of the Bratic Supplement rely on the Lamm Supplement but do not contain any express citation to the Lamm Supplement? This Court finds that every reference to the approach which Mondis terms "Alessi Apportionment," relying on the proposition that the '180 patent holds the value of 82.4% of the '090 patent family, as expressed in Bratic Supplement ¶ 22(g), relies in part on the Lamm Supplement. The following paragraphs cite ¶ 22(g): 27, 35, and footnote 24. The Court strikes paragraphs 27 and 35 as well as footnote 24, because they rely in part on the Lamm Supplement.

The Bratic Supplement contains paragraphs that do not expressly cite either the Lamm Supplement or ¶ 22(g), but nonetheless describe royalty models, or aspects of royalty models, that rely in part on the concept of Alessi Apportionment. Mondis' brief contains a section, on pages fourteen through eighteen, which attempts to justify Alessi Apportionment without referring to the Lamm Supplement. Mondis' argument appears to be that, if it can now imagine a method that Bratic *might* have used to derive the 82.4% without the Lamm Supplement, this Court should not strike it.

Mondis offers nothing to justify this exercise in using imagination to revise history; it is unauthorized by this Court. Mondis summarizes the elements of this fantasy calculation of 82.4% and states: "This calculation is not based upon any matter in Mr. Lamm's stricken supplemental report." (Pls.' Supp. Br. 15.) The calculation referred to, however, is a fantasy

6

calculation; it is not the calculation of 82.4% that Bratic described in paragraph 22 of the Bratic Supplement, which expressly relied on the Lamm Supplement. Instead, it is an imaginary, alternative calculation. Mondis further asserts:

> In the original report, he cross-referenced the identical calculation in Lamm II, the reference to which has now been removed. There is no basis for striking the calculation simply because Mr. Lamm repeated it.

(Pls.' Supp. Br. 17.) This is a revisionist fantasy about history: Mondis now casts Bratic's use of the Lamm Supplement as a mere "cross-reference" and – remarkably – states that "Mr. Lamm repeated it."[3] In this alternate reality, Mondis suggests that – never mind what Bratic actually wrote – Bratic originated Alessi Apportionment and Lamm just repeated it. Thus, Mondis proposes not only to revise the Bratic Supplement, but to revise history itself and make Bratic the independent originator of the Alessi Apportionment calculations.

The Court is not persuaded, for three principle reasons.

A. <u>On Alessi Apportionment: Reason 1</u>

First, the revisionist fantasy is contradicted by the plain language of the Bratic Supplement. The first paragraph of the Bratic Supplement states: "In forming my opinions in this report, I have reviewed and relied on the Supplemental Expert Report of Joseph Lamm dated June 18, 2020 (the 'Lamm Supplemental Report')." This pulls the rug out from under the entire Mondis revisionist effort. The first supplemental brief filed by Mondis, now rejected by the Court, claimed: "The proposed Lamm supplement was expository rather than essential, and removing it has no material impact on the proposed Bratic supplement." (Docket Entry No. 649

---

[3] Never mind that the Lamm Supplement is dated one day *before* the Bratic Supplement and that Bratic wrote that he relied on the Lamm Supplement.

at 2.) This statement is contradicted by Bratic's statement of reliance; both cannot be true. The Court credits the contemporaneous statement by Bratic that he relied on the Lamm Supplement and does not credit Plaintiffs' revisionist fantasy, which was imagined after the Court's decision to strike all parts of the Bratic Supplement that relied, even in part, on the Lamm Supplement.

Furthermore, Plaintiffs' opposition brief to LG's motion to strike makes plain that Mondis' subsequent contention that Bratic's use of the Lamm Supplement was merely as a "cross-reference" is a revisionist fantasy. In that opposition brief, Mondis wrote:

> Mr. Lamm's supplemental opinion in paragraph 5 that the '090 and '342 patents have value that comes into play when the display is connected to a computer is a new opinion. . . .
>
> With respect to paragraph 6, . . . to the extent anything about Mr. Lamm's opinion is new, it is concise and solely offered to address the court's concerns about apportionment.
>
> Mr. Lamm's quantitative calculation of the relative values of the three patents in paragraph 7 was not presented at the earlier trial . . .
>
> In sum, Mr. Lamm's supplemental report contains an opinion on the relative quantitative value of the three patents in the Innolux verdict – the '180 patent-in-suit, and the '342 and '090 patents . . .
>
> Both Mr. Lamm and Mr. Bratic observed that the '180 patent had more value to televisions, which are typically connected to STBs and similar video sources, but only occasionally to computers. . . .
>
> What Bratic could not do is explain why. That is a technical question within Lamm's expertise.

(Docket Entry No. 639 at 31-33.) With these statements – made by Mondis *before* this Court granted-in-part the motion to strike – Mondis conceded that: 1) in the Lamm Supplement, Lamm stated <u>new</u> opinions on the relative quantitative value of the three patents in the Innolux verdict; and 2) Bratic relied on Lamm's technical expertise to support an inference about the relative

8

value of the '180 patent for televisions.   Bratic needed Lamm's expertise to provide a basis for his inferences about the relative technical value of the patents in the '090 family.

These concessions are swept under the rug in Plaintiffs' latest supplemental brief, which imagines the history quite differently, as if Bratic simply read Alessi's trial testimony and did some easy calculations with the numbers.   Now, Mondis has deleted any reference to Bratic's reliance on Lamm's new opinions for his inferences about the relative value of the three patents in the Innolux verdict.

B. On Alessi Apportionment: Reason 2

Second, the proposed revision of history is contradicted by the details of the Alessi Apportionment analysis, as stated in paragraph 22 of the Bratic Supplement.   The Bratic Supplement describes the following analysis.   Bratic first points to the fact, in evidence at trial, that the Innolux jury awarded damages in the amount of .75% for televisions that infringed three patents, the '180, '090 and '342 patents.   (Bratic Supplement at ¶ 22(a).)   Applying Hansen's patent counting approach, each patent has an equal value of .25% in the verdict.   (Id.)

The next paragraph, 22(b), plays a crucial role in the analysis: it is here that Bratic relies on the Lamm Supplement for the proposition that the technology covered by the '090 and '342 patents has little value when use in televisions is considered.   The paragraph, in relevant part, states:

> By contrast, the principal value of the '090 and '342 patents pertained to computer monitors, not TVs. According to Mr. Lamm, the '090 patent was important to computer monitors because monitors are typically connected to computers, such as those running Microsoft Windows operating systems, which makes limited use of the EDID serial number to recognize the monitor and restore persisted display settings. Lamm Supplemental Report, ¶¶ 3, 5, and 6. Similarly, the '342 patent was significantly more important for computer monitors since such monitors are again likely to be connected to computers running a Microsoft

9

> operating system that is able to make limited use of the product ID code to recognize the model of monitor and to load appropriate drivers. Lamm Supplemental Report, ¶¶ 3, 5, and 6. Thus, both the '090 and '342 patents provided substantial value for computer monitors, but provided little value for TVs because TVs are connected to computers with far less frequency than are computer monitors.

(Bratic Supplement at ¶ 22(b).) The quoted text relies on the Lamm Supplement to provide the technical basis to support the proposition that the technologies disclosed in the '090 and '342 patents have little value for use in televisions.

Paragraph 22(b) cites only the Lamm Supplement. It contains no citations to any evidence from trial. Therefore, paragraph 22(b) relies only on the Lamm Supplement and does not rely on evidence presented at trial. The key question, then, is: is paragraph 22(b) superfluous? Does the Alessi Apportionment theory, as stated in the Bratic Supplement, rely on paragraph 22(b)? If the Alessi Apportionment theory has adequate support from the evidence at trial, without paragraph 22(b), then Mondis may be correct.

Paragraph 22(c) cites the Alessi testimony about the data from the marketing study of flat panel televisions. This paragraph cites two pieces of evidence: 1) exhibit MON-2936; and 2) the following trial testimony:

> Q. LG has done some studies in which it has asked consumers how often they connect their televisions to different types of devices. Correct?
> A. Yes, we have.
> Q. And those studies showed that in living rooms, eight percent of the customers reported having connected their television to a computer. Correct?
> A. Yes, that's my recollection.
> Q. And in great rooms, the number was ten percent. Correct?
> A. I believe that's true.
> Q. And if one thinks an Xbox or a set-top box is a computer, then basically close to a hundred percent of your televisions are going to be connected to a computer. Isn't that right?
> A. I can't agree with that.
> Q. What percentage of your televisions are connected to digital set-top boxes,

> approximately?
> A. I believe it was somewhere in the high 70s to 80 percent.
> Q. And do you recall what percentage are connected to gaming devices like the Xbox?
> A. I don't remember the number specifically but it would have been probably less than the set-top box, but a reasonably large amount.

(Tr. 737:9-738:8.) In the first round of supplementary briefing, LG objected to the citation to exhibit MON-2936 on the ground that it was not formally admitted into evidence at trial and, in response, Mondis deleted the reference. (Pls.' Supp. Br. at 18 n.5.) This leaves paragraph 22(c) relying only on the Alessi testimony quoted above.

The next three paragraphs, 22(d-f), contain the heart of the Alessi Apportionment analysis:

> (d)   Based on this information, it is possible to calculate the relative values of the '180, '090, and '342 patents based on how often these inventions were used by TVs when connected to various video sources. Assuming the mid-point of Mr. Alessi's usage ranges, 75% (= 70% + 80% /2) of TVs were connected at least to a STB, which could implement PnP technology and used the '180 patent; and 9% (= 8% + 10% / 2) of TVs were connected to a computer which could also implement PnP technology and used the invention of the '180 patent. Therefore, out of every 100 TVs, there were approximately 84 instances of use of the invention of the '180 patent.
>
> (e)   By the same token, for every 100 TVs, on average there were 9 instances in which a connected video source would be a computer that could make use of a stored serial number that practiced the '090 patent. Since out of 100 TVs there would be 84 instances of use of the '180 patent and only up to 9 instances of use of the '090 patent, the relative value of the '090 patent would be 10.7% (= 9/84).
>
> (f)   Similarly, the 9% of TVs connected to a computer could also make use of the product ID information in the EDID to locate and load drivers for the display. Thus, for every 100 TVs, on average 9 of them could implement the '342 patent when the connected video source was a computer. As a result, the relative value of the '342 patent would be 10.7% of the relative value of the '180 patent (9/84).

(Bratic Supplement at ¶ 22(d-f).) The key question is: do these paragraphs have an adequate foundation if paragraph 22(b) is deleted? Do these paragraphs have adequate support in the

11

evidence presented at trial alone?

Two different approaches to answering these questions produce the same answer: no, they do not have adequate support in the evidence presented at trial alone.   First, consider this simply as a textual question.   The Alessi testimony quoted above says nothing about patents – not one word.   The testimony describes only study findings about percentages of use of televisions with various devices.   Paragraph 22(d), on the other hand, links these findings to inferences about patent use: "STB, which could implement PnP technology and used the '180 patent" and "computer which could also implement PnP technology and used the invention of the '180 patent."   What is the evidentiary support for this linking of particular device types to particular patents?   It is paragraph 22(b), which relies on the Lamm Supplement.   If paragraph 22(b) is removed, the inferences stated in paragraph 22(d) lack a foundation in the evidence at trial.   Bratic cited no other basis for linking the devices in the Alessi testimony to particular patents.

Second, consider the substance of Bratic's theory of Alessi Apportionment.   As noted, the Alessi testimony described study findings about percentages of use of televisions with various devices: set-top boxes, gaming devices, and computers.   In paragraph 22, Bratic does not make use of the data about gaming devices.   Bratic categorizes connections between a television and a set-top box as having "used the '180 patent," and a connection between a television and computers as having "used the invention of the '180 patent."   (Bratic Supplement at ¶ 22(d).)   Paragraph 22(e) categorizes connections between a television and a computer as also having "practiced the '090 patent."   (Id. at ¶ 22(e).)   Paragraph 22(f) categorizes connections between a television and a computer as also being able to "implement the '342

12

patent." (Id. at ¶ 22(f).) Last, paragraph 22(g) puts the three paragraphs together, finding that 82.4% of the connections would have practiced the '180 patent, while 8.8% of the connections would have practiced each of the '090 and '342 patents. (Id. at ¶ 22(g).)

Again, the key question is: what is the evidentiary basis for the propositions which are used to link survey results about particular devices to particular patents? As already established, that is set forth in paragraph 22(b). Delete paragraph 22(b), and the Alessi Apportionment theory loses an essential element. This Court concludes that the Alessi Apportionment theory in the Bratic Supplement relies on the Lamm Supplement. The Alessi Apportionment theory does not have an evidentiary foundation solely in the evidence at trial.

### C. On Alessi Apportionment: Reason 3

The third reason to strike the Alessi Apportionment theory is the law of the case. This Court already granted-in-part the motion to strike and struck the parts of the Bratic Supplement which state "opinions that rely, even in part, on Mr. Lamm's unauthorized supplementary report." (Strike Opinion at 2.) Paragraph 22 of the Bratic Supplement, which derives the 82.4% calculation, cites the Lamm Supplement and expressly relies on it. Mondis did not move for reconsideration of that decision, and it is now the law of the case. If Mondis truly believed that this Court had misinterpreted the relationship between the Bratic Supplement and the Lamm Supplement in its decision to grant in part the motion to strike, it might have moved for reconsideration, but it did not do so. Instead, Mondis has now twice attempted to revise the Bratic Supplement to excise the Lamm Supplement. If the Bratic Supplement truly independently originated the 82.4% calculation, and Lamm merely repeated it, why was such revision even necessary? Would it not have been simpler to just move for reconsideration on

13

the ground that the Court had misread Bratic, if indeed it had? The decision to grant the motion to strike those parts of the Bratic Supplement that rely on the Lamm Supplement was made by this Court months ago. Today's decision simply determines that paragraph 22, and others, rely on the Lamm Supplement.

This Court thus grants the motion to strike with regard to every mention of the Alessi Apportionment theory in the Bratic Supplement. The Court strikes paragraphs 22, 27, and 35, as well as footnote 24.

II. **What parts of the Bratic Supplement will the Court strike because they contain opinions that are based on evidence that was not presented at the previous trial?**

The Court has addressed the first of the two questions before it, and turns to the second. The Court now examines the Bratic Supplement to determine whether any parts contain opinions that are based on evidence that was not presented at the previous trial.

In paragraph 6, Mondis has offered to change "The other patents" to "Other patents." This improves accuracy, and that change will be made. Paragraph 11 has already been struck.

As to the two theories in the Bratic Supplement based on the Hon Hai license, LG contends that an element of both theories is the average sales price ("ASP") of Hon Hai televisions, $280, which was not in evidence at trial. In Bratic Supplement paragraph 26(c), Bratic adjusts the Hon Hai royalty rate of $.70 by multiplying by the ratio of the LG television ASP to the Hon Hai Television ASP. Mondis does not point to anywhere in the trial that the $280 ASP of Hon Hai televisions was entered into evidence. Instead, Mondis calls it "trivial" to calculate the $280 ASP from evidence of record, and urges: "Surely, Mr. Bratic can be permitted to do that elementary calculation." (Pls.' Supp. Br. at 22.)

While the Court does not doubt that an elementary calculation can generate the $280

14

ASP, the problem for Mondis, here, is the push to literally revise history: there would have been no issue had, in fact, Bratic done the allegedly elementary calculation and put it in his updated report before he submitted it, but he did not do so. Mondis submitted Bratic's updated report, but now feels it should be permitted to further revise it. This Court has made clear that the Bratic Supplement was submitted once and once only; it will not be amended or revised.

Mondis also argues that the Hon Hai analysis could have been done without any use of the $280 ASP whatever, to which the Court gives the same response: perhaps it could have been done that way, but it wasn't. The Bratic Supplement will not be revised.

The ASP of Hon Hai televisions was not in evidence at trial. Bratic's analysis based on the Hon Hai license contains an element that relies on evidence not in the trial record. The Court strikes paragraph 26(c), as well as the paragraphs which rely on that paragraph, 26(d), 27, and 28.

Next, LG argues that two of Bratic's theories contain an adjustment derived from the now-vacated jury award itself. In paragraphs 27 and 36, Bratic applies an 80% uplift that he attributes to an alleged observation by the Court, made in the decision to vacate the jury award. This is in no way evidence presented at trial. It is a comment by the Court in an Opinion, and it was characterized by the Court as speculation about the question of how the jury came up with its damages award. The Court's speculative comments in *dicta* after trial – about a jury verdict that the Court vacated – are not evidence at trial. The Court strikes paragraphs 27 and 36 because they present analysis based on evidence that is not in the trial record.

LG next argues that three of Bratic's damages theories rely on the Innolux jury verdict, which is not in the trial record. The parties dispute the effect of this Court's *in limine* rulings on

the admission of the Innolux jury verdict, but this Court need not reach that dispute. There is no real dispute that, in fact, the jury at trial heard testimony that the Innolux jury reached a verdict that the Innolux televisions infringed three patents, the '090, '342 and '180 patents, and awarded damages based on a royalty rate of .75%. LG concedes that Mr. Spiro stated this in his testimony. (Def.'s Supp. Br. 26-27.) As to Bratic's statements based on the Innolux verdict royalty rate of .75%, for infringement of those three patents, the motion to strike will be denied.

LG asks that, should the Court deny the motion to strike the theories which rely on these facts about the Innolux verdict, it be allowed to supplement the record. This should be the subject of a formal motion.

LG also argues that Bratic makes an improper assertion that the Innolux jury award contained a tripling uplift related to the uncertainty discount. The Court need not reach this issue because it is moot: the Court has already granted the motion to strike the paragraphs at issue, 26(d), 27, and 28. As to this issue, the motion to strike will be denied as moot.

In three theories in the Bratic Supplement, Bratic uses an element which is the Innolux verdict royalty rate divided by 3, based on the evidence that the Innolux jury verdict awarded a royalty for the infringement of three patents. LG argues that this is improper, but not on the ground that it has no basis in the evidence at trial. This Court today has found that the evidence at trial included testimony about the royalty rate in the Innolux jury verdict, and the three patents the jury found to have been infringed. This Court has already decided that Bratic's references to the Innolux jury verdict divided by three has sufficient basis in the evidence at trial.

LG makes additional arguments about the Bratic Supplement's use of the Innolux case which raise issues that are in part within the scope of the motion to strike, but also raise broader

16

questions about the validity and reliability of Bratic's theories; such aspects should be raised on a <u>Daubert</u> motion. LG contends that Bratic refers to the invalidation of the '088 and '970 patents in the Innolux case, which was not in evidence at trial. Mondis agreed. (Pls.' Supp. Br. at 8 n.3.) References to the invalidation of patents in the Innolux case appear in paragraphs 11 and 44. This Court has already decided to strike paragraph 11 in its entirety. As for paragraph 44, the Court strikes the reference to the invalidation of patents in the Innolux case.

LG appears to argue that *any* reference by Bratic to the evidence that the Innolux jury found infringement of three patents somehow implicates the invalidation of the '088 and '970 patents in the Innolux case, but has not persuaded this Court that this is true. This Court does not discern how a reference to the evidence that the Innolux jury found infringement of three specific patents implicates the jury's decision to invalidate two other patents, which is not in evidence. Again, this may be a question to raise on a <u>Daubert</u> motion.

LG also asserts that Bratic completely ignores two other patents in the '090 family, the '845 and '147 patents. LG argues that this silence is equivalent to the expression of a technical opinion that the '845 and '147 patents have no value. This is meritless. Bratic's silence on any matter falls outside the scope of the issue presently before this Court: presently before this Court is a motion to strike, and this Court cannot strike Bratic's silence. Moreover, this argument appears to go to the validity of Bratic's theories and method and might be better raised in a challenge pursuant to Federal Rule of Evidence 702.

LG also asks the Court to strike the reference in paragraph 31 to an *amicus* brief which, according to the citation in the Bratic Supplement, was written on October 30, 2019. The damages trial in the instant case reached its conclusion when the jury issued its verdict on April

17

12, 2019.  As LG contends, that *amicus* brief could not have been referenced at trial.  The Court strikes the portion of paragraph 31 that begins with, "As the United States," through the end of paragraph 31, because it is based on matter not in evidence in the trial record.

LG argues that paragraphs 15 and 16, on the subject of blocking patents, should be struck for lack of a basis in the evidence at trial.  LG argues that this Court has mandated that all of Bratic's opinions must be based on evidence at trial, and these opinions lack such a basis.  LG has interpreted this Court's Orders more broadly than the Court intended.  While LG has accurately quoted this Court's Order filed on July 15, 2020, LG has not provided the context which gives the Order meaning.  At issue was the definition of the "new theory of damages" that would not be permitted, and, in that context, this Court stated: "Mr. Bratic may express expert opinions about reasonable royalties to the extent that such opinions are based on the existing trial record *only*."  (Opinion and Order of July 15, 2020 at 2.)  After vacating the jury damages verdict, this Court has consistently held that, at the retrial on damages, Mondis may not present new evidence, except that Bratic may update his expert opinion.  The point of the Order of July 15 was not to require an evidentiary basis for every element in Bratic's updated report, but to strictly limit the new evidence that could be presented at retrial.  The Court's Order, just quoted, was intended to preclude something like, for example, the Bratic Supplement's use of the Lamm Supplement – wherein Bratic expressed expert opinions based on evidence *not* presented at trial.  That was the line this Court was drawing.  LG has not pointed to any use of new evidence in paragraphs 15 and 16.  The motion to strike paragraphs 15 and 16 is denied.

Similarly, LG moves to strike the opinions about standardization in paragraphs 47 through 51 in the Bratic Supplement.  The motion is denied for the same reason: LG has not

18

pointed to any use of new evidence in paragraphs 47 through 51.  LG's challenges to Bratic's opinions about blocking patents and standardization implicate questions that might be better raised on a <u>Daubert</u> motion.

Last, LG moves to strike paragraphs 52 through 55 in the conclusion section of the Bratic Supplement.  LG argues that these paragraphs contain numerous references to matter that violates this Court's Orders.  Because this Court has now decided to strike much of the matter in the Bratic Supplement that the conclusion summarizes, this Court agrees that the conclusion section violates this Court's Orders.  The conclusion includes much matter that has been derived by application of Alessi Apportionment, which this Court has found to be in reliance on the Lamm Supplement.  The conclusion thus relies in part on the Lamm Supplement, and this Court strikes paragraphs 52 through 55 in their entirety.

In summary, the Court now completes its decision on LG's motion to strike the supplemental reports, as to the issues on which decision was reserved in the Strike Opinion. The motion to strike the Bratic Supplement is further granted in part and denied in part.  The Court strikes in their entirety paragraphs 11, 12, 16, 22, 26(c), 26(d), 27, 28, 35, 36, and 52 through 55.  The Court strikes footnote 24, but not the paragraph that spawned it.  In paragraph 44, the Court strikes a single sentence which contains the reference to the invalidation of patents in the Innolux case, the sentence which contains the phrase "invalidated in the Innolux litigation."  In paragraph 49, the Court strikes only the reference to the Lamm Supplement.  In paragraph 6, Mondis has offered to change "The other patents" to "Other patents," and the Court accepts that change.  The Court strikes the portion of paragraph 31 that begins with, "As the United States," through the end of paragraph 31.  As to the remainder of the Bratic Supplement,

the motion to strike is denied.

For these reasons,

**IT IS** on this 2nd day of October, 2020

**ORDERED** that, as to those aspects on which this Court **RESERVED** decision in the Opinion and Order filed July 15, 2020 (Docket Entry No. 644), LG's motion to strike (Docket Entry No. 634) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that, as to the Bratic Supplement, the Court strikes in their entirety paragraphs 11, 12, 16, 22 (including all subparagraphs), 26(c), 26(d), 27, 28, 35, 36, and 52 through 55; the Court strikes footnote 24, but not the paragraph that spawned it; in paragraph 44, the Court strikes a single sentence which contains the reference to the invalidation of patents in the Innolux case, the sentence which contains the phrase "invalidated in the Innolux litigation;" in paragraph 49, the Court strikes only the reference to the Lamm Supplement; in paragraph 6, Mondis has offered to change "The other patents" to "Other patents," and the Court accepts that change; the Court strikes the portion of paragraph 31 that begins with, "As the United States," through the end of paragraph 31; and it is further

**ORDERED** that, as to the remaining issues, the motion to strike is **DENIED**.

                                                s/ Stanley R. Chesler
                                                Stanley R. Chesler, U.S.D.J.